ORAL ARGUMENT NOT YET SCHEDULED
————————————————

# No. 16-3076
————————————————

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
————————————————

**UNITED STATES OF AMERICA,**
Appellee,

v.

**JAMES WENDELL BROWN,**
Appellant.
————————————————

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
————————————————

## JOINT APPENDIX
————————————————

Barbara E. Kittay, Esquire
Counsel for Appellant
(Appointed by the Court)
D.C. Bar Number 414216

11140 Rockville Pike
Suite 100-284
Rockville, Maryland  20852
(301) 468-1817
bkittay@verizon.net

Crim. No. 12-CR-155 (RJL)



## CONTENTS

Docket (District Court Case No. 12-155(RJL) . . . . . 1

Criminal Information . . . . . . . . . . . . . . . .

Plea Agreement (amended, dated Apr. 29, 2013) . . . .

Statement of Offense . . . . . . . . . . . . . . . .

Government's Mem. in Aid of Sentencing . . . . . . .

Defendant's Mem. in Aid of Sentencing (remand) . . .

Judgment . . . . . . . . . . . . . . . . . . . . . .

Statement of Reasons . . . . . . . . . . . . . . . .

Notice of Appeal . . . . . . . . . . . . . . . . . .


Transcripts:

Guilty Plea (June 19, 2013) . . . . . . . . . . . . .

Original Sentencing (June 26, 2013) . . . . . . . . .

Sentencing on Remand (June 8, 2016) . . . . . . . . .

APPEAL,CAT A,CLOSED

# U.S. District Court
## District of Columbia (Washington, DC)
### CRIMINAL DOCKET FOR CASE #: 1:12-cr-00155-RJL All Defendants

Case title: USA v. BROWN
Magistrate judge case number: 1:12-mj-00292-JMF

Date Filed: 07/06/2012

Assigned to: Judge Richard J. Leon

Appeals court case numbers: 13-3062,
16-3076

#### Defendant (1)

| | |
|---|---|
| **JAMES WENDELL BROWN**<br>*also known as*<br>JIMMY | represented by **Barbara E. Kittay**<br>LAW OFFICES OF BARBARA E. KITTAY<br>11140 Rockville Pike<br>Suite 100-284<br>Rockville, MD 20852<br>(301) 468-1817<br>Fax: (301) 468-1817<br>Email: bkittay@verizon.net<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |
| | **Lara Gabrielle Quint**<br>FEDERAL PUBLIC DEFENDER FOR THE<br>DISTRICT OF COLUMBIA<br>625 Indiana Avenue, NW<br>Suite 550<br>Washington, DC 20004<br>(202) 208-7500 ext. 133<br>Fax: (202) 208-7515<br>Email: lara_quint@fd.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender or Community<br>Defender Appointment* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:2252A(a)(2); ACTIVITIES RE<br>MATERIAL<br>CONSTITUTING/CONTAINING<br>CHILD PORNO; Distribution of Child<br>Pornography. | RESENTENCED on 06/08/16 - Defendant<br>resentenced to One Hundred Forty-Four (144)<br>months incarceration, followed by Two<br>Hundred Forty (240) months supervised<br>release. Special Assessment of $100.00. |

1

| 03/28/2012 | | | ORAL MOTION to Appoint Counsel by JAMES WENDELL BROWN. (ldc, ) [1:12-mj-00292-JMF] (Entered: 03/28/2012) |
|---|---|---|---|
| 03/28/2012 | | | ORAL MOTION for Speedy Trial Waiver by JAMES WENDELL BROWN. (ldc, ) [1:12-mj-00292-JMF] (Entered: 03/28/2012) |
| 03/28/2012 | | | Minute Entry for proceedings held before Magistrate Judge John M. Facciola: Initial Appearance as to JAMES WENDELL BROWN held on 3/28/2012. Arrest warrant returned executed dated 03/28/12. Oral Motion to Appoint Counsel and Oral Motion for Speedy Trial Waiver excluding time from 03/28/12 – 04/10/12, 13 (thirteen) days in the interest of justice X–T by JAMES WENDELL BROWN (1) heard and granted. Oral Motion by USA for Temporary Detention (3 day hold) as to JAMES WENDELL BROWN (1) heard and granted. Preliminary/Detention Hearing set for 4/10/2012 01:30 PM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. Medical/Mental Health Alert issued to the Department of Corrections Medical Unit as to JAMES WENDELL BROWN. Bond Status of Defendant: Defendant held without bond; Defendant committed/commitment issued; Court Reporter: Bowles Reporting Services; Defense Attorney: Lara Quint; US Attorney: David Last; Pretrial Officer: Vaughn Wilson; (ldc, ) [1:12-mj-00292-JMF] (Entered: 03/28/2012) |
| 04/10/2012 | | | ORAL JOINT MOTION to Continue Preliminary/Detention Hearing by JAMES WENDELL BROWN. (lm, ) [1:12-mj-00292-JMF] (Entered: 04/12/2012) |
| 04/10/2012 | | | Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Status Conference as to JAMES WENDELL BROWN held on 4/10/2012. Oral Motion to Continue Preliminary/Detention Hearing as to JAMES WENDELL BROWN (1) heard and granted. Preliminary/Detention Hearing set for 4/23/2012 at 01:30 PM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. Court grants Waiver of Speedy Trial from 4/10/12 to 04/23/12 in the Interest of Justice. Bond Status of Defendant: committed/commitment issued; Court Reporter: Bowles Reporting Defense Attorney: Lara Quint, Michelle Peterson; US Attorney: David Last; (lm ) [1:12-mj-00292-JMF] (Entered: 04/12/2012) |
| 04/12/2012 | 3 | | ORDER TO CONTINUE – Ends of Justice as to JAMES WENDELL BROWN Time excluded from 4/12/12 until 4/23/12. Signed by Magistrate Judge Deborah A. Robinson on 4/10/12. (lm, ) [1:12-mj-00292-JMF] (Entered: 04/12/2012) |
| 04/23/2012 | | | ORAL Joint MOTION for Waive Preliminary Hearing and Waive Speedy Trial by JAMES WENDELL BROWN. (lm) [1:12-mj-00292-JMF] (Entered: 04/30/2012) |
| 04/23/2012 | | | Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Oral Jiont Motion for Waiver of Speedy Trial from 4/23/12 – 5/29/12 as to JAMES WENDELL BROWN(1) heard and granted. Detention Hearing as to JAMES WENDELL BROWN held on 4/23/2012. Court ordered defendant held without bond. Bond Status of Defendant: committed/commitment issued; Court Reporter: Bowles Reporting; Defense Attorney: Michelle Peterson for Lara Quint; US Attorney: Julliane Himestein for David Last. (lm) [1:12-mj-00292-JMF] (Entered: 04/30/2012) |
| 04/23/2012 | 8 | | WAIVER of Preliminary Hearing as to JAMES WENDELL BROWN (lm, ) [1:12-mj-00292-JMF] (Entered: 04/30/2012) |

3

| 04/23/2012 | 9 | ORDER TO CONTINUE – Ends of Justice as to JAMES WENDELL BROWN Time excluded from 4/23/12 until 5/29/12. Signed by Magistrate Judge Deborah A. Robinson on 4/23/12. (lm) [1:12-mj-00292-JMF] (Entered: 04/30/2012) |
| --- | --- | --- |
| 05/29/2012 | 10 | MEMORANDUM OF FINDINGS OF FACT AND STATEMENT OF REASONS IN SUPPORT OF ORDER OF DETENTION as to JAMES WENDELL BROWN. Signed by Magistrate Judge Deborah A. Robinson on 05/29/2012. (lcdar3) [1:12-mj-00292-JMF] (Entered: 05/30/2012) |
| 06/06/2012 | | Set/Reset Hearings as to JAMES WENDELL BROWN:Status Conference/Speedy Trial Waiver set for 6/11/2012 09:30 AM in Courtroom 6 before Magistrate Judge John M. Facciola. (ldc, ) [1:12- mj-00292-JMF] (Entered: 06/06/2012) |
| 06/08/2012 | 11 | ENTERED IN ERROR ....NOTICE OF SUBSTITUTION OF COUNSEL as to JAMES WENDELL BROWN. Attorney Ari B. Redbord for USA added. (mac) Modified on 6/19/2012 (zmac) [1:12-mj-00292-JMF] (Entered: 06/11/2012) |
| 06/11/2012 | | ORAL MOTION to Continue Status Hearing, ORAL MOTION for Speedy Trial Waiver by JAMES WENDELL BROWN. (ldc, ) [1:12-mj-00292-JMF] (Entered: 06/11/2012) |
| 06/11/2012 | | Minute Entry for proceedings held before Magistrate Judge John M. Facciola: Status Conference as to JAMES WENDELL BROWN held on 6/11/2012. Parties continue to negotiate a plea agreement. Oral Motion to Continue Status Hearing and Oral Motion for Speedy Trial Waiver excluding time from 06/11/12 – 06/18/12 (one week) in the interest of justice X–T by JAMES WENDELL BROWN (1) heard and granted. Status Hearing continued to 6/18/2012 09:30 AM in Courtroom 6 before Magistrate Judge John M. Facciola. Bond Status of Defendant: Defendant committed/commitment issued; Court Reporter: Bowles Reporting Services: Defense Attorney: Lara Quint; US Attorney: Ari Redbord; (ldc, ) [1:12-mj-00292-JMF] (Entered: 06/11/2012) |
| 06/15/2012 | | Set/Reset Hearings as to JAMES WENDELL BROWN: Preliminary Hearing/Status Hearing set for 6/18/2012 01:45 PM in Courtroom 6 before Magistrate Judge John M. Facciola. (ldc, ) [1:12-mj-00292-JMF] (Entered: 06/15/2012) |
| 06/18/2012 | | JOINT ORAL MOTION to Continue Status Hearing, JOINT ORAL MOTION for Speedy Trial Waiver as to JAMES WENDELL BROWN. (ldc, ) [1:12-mj-00292-JMF] (Entered: 06/18/2012) |
| 06/18/2012 | | Minute Entry for proceedings held before Magistrate Judge John M. Facciola: Status Hearing as to JAMES WENDELL BROWN held on 6/18/2012. Parties continue to discuss a plea agreement. Joint Oral Motion to Continue Status Hearing and Joint Oral Motion for Speedy Trial Waiver excluding time from 06/18/12 – 07/11/12 in the interest of justice X–T as to JAMES WENDELL BROWN (1) heard and granted. Status Hearing continued to 7/11/2012 09:30 AM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. Bond Status of Defendant: Defendant committed/commitment issued; Court Reporter: Bowles Reporting Services: Defense Attorney: Lara Quint; US Attorney: Ari Redbord; (ldc, ) [1:12-mj-00292-JMF] (Entered: 06/18/2012) |
| 06/18/2012 | 12 | NOTICE OF SUBSTITUTION OF COUNSEL as to USA. Attorney Redbord, Ari B. added. Substituting for attorney David Last (Redbord, Ari) |

| | | [1:12-mj-00292-JMF] (Entered: 06/18/2012) |
|---|---|---|
| 07/06/2012 | 13 | INFORMATION as to JAMES WENDELL BROWN (1) count(s) 1. (hsj, ) (Entered: 07/10/2012) |
| 07/31/2012 | 14 | Unopposed MOTION for Hearing by USA as to JAMES WENDELL BROWN. (Redbord, Ari) (Entered: 07/31/2012) |
| 09/12/2012 | | Set/Reset Hearings as to JAMES WENDELL BROWN:Status Conference set for 9/25/2012 04:00 PM in Courtroom 18 before Judge Richard J. Leon. (kc ) (Entered: 09/12/2012) |
| 09/26/2012 | | Set/Reset Hearings as to JAMES WENDELL BROWN: Plea Agreement Hearing set for 10/11/2012 02:30 PM in Courtroom 18 before Judge Richard J. Leon. (kc) (Entered: 09/26/2012) |
| 10/11/2012 | | Terminate Hearing as to JAMES WENDELL BROWN: The Plea Agreement Hearing scheduled for October 11, 2012 is vacated and will be rescheduled at a date and time to be determined. (jth) (Entered: 10/12/2012) |
| 12/11/2012 | | Set/Reset Hearings as to JAMES WENDELL BROWN:Status Conference set for 12/18/2012 04:00 PM in Courtroom 18 before Judge Richard J. Leon. (kc ) (Entered: 12/11/2012) |
| 12/18/2012 | | Minute Entry for proceedings held before Judge Richard J. Leon: Status Conference as to JAMES WENDELL BROWN held on 12/18/2012. Speedy Trial waived from 12/18/2012 until 1/16/2013 in the Interest of Justice (START XT). Plea Agreement Hearing is scheduled for 1/16/2013 at 11:00 AM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: Defendant Committed –Commitment Issued; Court Reporter: Crystal Pilgrim; (Present – Defendant;Defense Attorney: Lara Gabrielle Quint; U.S. Attorney: Ari B. Redbord) (jth) (Entered: 12/18/2012) |
| 01/14/2013 | | Set/Reset Hearings as to JAMES WENDELL BROWN:Plea Agreement Hearing set for 1/16/2012 has been converted into a Status Conference set for 1/16/2013 11:00 AM in Courtroom 18 before Judge Richard J. Leon. (kc) (Entered: 01/14/2013) |
| 01/14/2013 | | Terminate Hearings: The 1/16/2013 plea agreement hearing converted into a Status Conference. (kc ) (Entered: 01/14/2013) |
| 01/16/2013 | | Minute Entry: Status Conference as to JAMES WENDELL BROWN held on 1/16/2013 before Judge Richard J. Leon: Plea Agreement Hearing set for 1/30/2013 11:30 AM in Courtroom 18 before Judge Richard J. Leon. The defendant waives speedy trial from 01/16/13 through 01/30/13 Defendant committed; commitment issued. Court Reporter: Theresa Sorensen Defense Attorney: Lara Quint; US Attorney: Ari Redbord. (tb, ) (Entered: 01/16/2013) |
| 01/30/2013 | | VACATED PURSUANT TO ORAL ORDER FILED 06/19/13.....Minute Entry: Arraignment/Plea Agreement as to JAMES WENDELL BROWN (1) on Count 1 held on 1/30/2013 before Judge Richard J. Leon: Plea of GUILTY entered by JAMES WENDELL BROWN (1) as to Count 1. REFERRAL TO PROBATION OFFICE for Presentence Investigation as to JAMES WENDELL BROWN. Sentencing set for 4/23/2013 11:30 AM in Courtroom 18 before Judge Richard J. Leon. Defendant committed; commitment issued. Court Reporter: Patty Gels Defense Attorney: Lara Quint; US Attorney: Ari Redbord. (tb, ) Modified on |

5

| | | | 6/20/2013 (jth). (Entered: 01/31/2013) |
|---|---|---|---|
| 01/30/2013 | 15 | | WITHDRAWN PURSUANT TO ORAL ORDER FILED 06/19/13.....WAIVER of Right to Trial by Jury as to JAMES WENDELL BROWN. Signed by Judge Richard J. Leon on 01/30/13. (tb, ) Modified on 6/20/2013 (jth). (Entered: 01/31/2013) |
| 01/30/2013 | 16 | | WITHDRAWN PURSUANT TO ORAL ORDER FILED 06/19/13.....WAIVER OF INDICTMENT by JAMES WENDELL BROWN. Signed by Judge Richard J. Leon on 01/30/13. (tb, ) Modified on 6/20/2013 (jth). (Entered: 01/31/2013) |
| 01/30/2013 | 17 | | WITHDRAWN PURSUANT TO ORAL ORDER FILED 06/19/2013.....STATEMENT OF OFFENSE by JAMES WENDELL BROWN. (tb,) Modified on 6/20/2013 (jth). (Entered: 01/31/2013) |
| 01/30/2013 | 18 | | WITHDRAWN PURSUANT TO ORAL ORDER FILED 06/19/13.....PLEA AGREEMENT as to JAMES WENDELL BROWN. (tb, ) Modified on 6/20/2013 (jth). (Entered: 01/31/2013) |
| 02/27/2013 | | | Set/Reset Hearings as to JAMES WENDELL BROWN: Sentencing originallly set for 4/23/2013 is rescheduled for for 4/24/2013 at 03:00 PM in Courtroom 18 before Judge Richard J. Leon. (kc ) (Entered: 02/27/2013) |
| 04/15/2013 | 20 | | SENTENCING MEMORANDUM by USA as to JAMES WENDELL BROWN (Redbord, Ari) (Entered: 04/15/2013) |
| 04/16/2013 | 22 | | Recommendation of PSI Report as to JAMES WENDELL BROWN. Not for public disclosure per Judicial Conference Policy.(Stevens–Panzer, Deborah) (Entered: 04/16/2013) |
| 04/16/2013 | 23 | | SENTENCING MEMORANDUM by JAMES WENDELL BROWN (Attachments: # 1 Exhibit Letters in Aid of Sentencing)(Quint, Lara) (Entered: 04/16/2013) |
| 04/17/2013 | 24 | | SENTENCING MEMORANDUM by JAMES WENDELL BROWN (Attachments: # 1 Exhibit Letters in Aid of Sentencing)(Quint, Lara) (Entered: 04/17/2013) |
| 04/17/2013 | 25 | | RESPONSE by USA as to JAMES WENDELL BROWN *Sentencing Memorandum* (Redbord, Ari) (Entered: 04/17/2013) |
| 04/24/2013 | | | Minute Entry for proceedings held before Judge Richard J. Leon: Case called for Sentencing but not held. Status Conference as to JAMES WENDELL BROWN held on 4/24/2013. Status Conference set for 5/6/2013 at 12:00 PM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: Patty A. Gels; Defense Attorney: Lara Gabrielle Quint; US Attorney: Ari B. Redbord; Probation Officer: Crystal Lustig. (jth) (Entered: 04/24/2013) |
| 05/06/2013 | | | Set/Reset Hearings as to JAMES WENDELL BROWN: The Status Conference set for 5/6/2013 at 12:00 PM is RESCHEDULED to a date to be determined. (lcrjl1) (Entered: 05/06/2013) |
| 05/13/2013 | | | Set/Reset Hearings as to JAMES WENDELL BROWN: Plea Agreement Hearing set for 5/16/2013 12:00 PM in Courtroom 18 before Judge Richard J. Leon. (kc ) (Entered: 05/13/2013) |

6

| 05/16/2013 | | | Set/Reset Hearings as to JAMES WENDELL BROWN: Hearing currently set for Thursday, May 16th will be continued to a date to be determined. (tb, ) (Entered: 05/16/2013) |
|---|---|---|---|
| 06/13/2013 | | | Set/Reset Hearings as to JAMES WENDELL BROWN: Plea Agreement Hearing set for 6/19/2013 11:30 AM in Courtroom 18 before Judge Richard J. Leon. (kc ) (Entered: 06/13/2013) |
| 06/13/2013 | 26 | | Unopposed MOTION to Continue *Plea Hearing* by USA as to JAMES WENDELL BROWN. (Redbord, Ari) (Entered: 06/13/2013) |
| 06/14/2013 | | | MINUTE ORDER granting 26 Motion to Continue Plea Agreement Hearing as to JAMES WENDELL BROWN. The Plea Agreement Hearing is reset for 6/19/2013 at 12:00 PM in Courtroom 18 before Judge Richard J. Leon. Signed by Judge Richard J. Leon on 6/14/2013. (jth) (Entered: 06/14/2013) |
| 06/17/2013 | 27 | | Unopposed MOTION to Continue *Plea Hearing* by JAMES WENDELL BROWN. (Attachments: # 1 Text of Proposed Order)(Quint, Lara) (Entered: 06/17/2013) |
| 06/17/2013 | | | MINUTE ORDER denying 27 Motion to Continue as to JAMES WENDELL BROWN. It is hereby ORDERED that the motion is DENIED. Signed by Judge Richard J. Leon on 6/17/13. (lcrjl1) (Entered: 06/17/2013) |
| 06/19/2013 | 28 | | SENTENCING MEMORANDUM by USA as to JAMES WENDELL BROWN (Redbord, Ari) (Entered: 06/19/2013) |
| 06/19/2013 | | | Minute Entry for proceedings held before Judge Richard J. Leon: Plea Agreement Hearing as to JAMES WENDELL BROWN held on 6/19/2013. Plea Of Guilty and Plea Agreement previously held on 1/30/2013 were vacated. Plea of Guilty as to Count 1 entered by JAMES WENDELL BROWN. Sentencing is scheduled for 6/26/2013 at 11:30 AM in Courtroom 18 before Judge Richard J. Leon. Updated Sentencing Memoranda from the parties are due by the Close of Business on 6/21/2013. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: Patty A. Gels; Defense Attorney: Lara Gabrielle Quint; US Attorney: Ari B. Recbord. (jth) (Entered: 06/19/2013) |
| 06/19/2013 | 29 | | WAIVER OF INDICTMENT by JAMES WENDELL BROWN. Signed by Judge Richard J. Leon on 6/19/2013. (jth) (Entered: 06/19/2013) |
| 06/19/2013 | 30 | | WAIVER of Right to Trial by Jury as to JAMES WENDELL BROWN. Approved by Judge Richard J. Leon on 6/19/2013. (jth) (Entered: 06/19/2013) |
| 06/19/2013 | 31 | | PLEA AGREEMENT as to JAMES WENDELL BROWN. (jth) (Entered: 06/19/2013) |
| 06/19/2013 | 32 | | STATEMENT OF OFFENSE by USA as to JAMES WENDELL BROWN. (jth) (Entered: 06/19/2013) |
| 06/20/2013 | 33 | | SENTENCING MEMORANDUM by JAMES WENDELL BROWN (Attachments: # 1 Exhibit Letters on Behalf of Mr. Brown)(Quint, Lara) (Entered: 06/20/2013) |
| 06/26/2013 | | | Minute Entry for proceedings held before Judge Richard J. Leon: Sentencing held on 6/26/2013 as to JAMES WENDELL BROWN. Count 1: sentenced to |

| | | | One Hundred Forty-Four (144) months incarceration, followed by Two Hundred Forty (240) months supervised release. Special Assessment of $100.00 was imposed. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: Cathryn Jones; Defense Attorney: Lara Gabrielle Quint; US Attorney: Ari B. Redbord; Probation Officer: Crystal Lustig. (jth) (Entered: 06/26/2013) |
|---|---|---|---|
| 07/02/2013 | 35 | | JUDGMENT as to JAMES WENDELL BROWN. Statement of Reasons Not Included. Signed by Judge Richard J. Leon on 6/27/2013. (hsj, ) (Entered: 07/02/2013) |
| 07/02/2013 | 36 | | STATEMENT OF REASONS as to JAMES WENDELL BROWN re 35 Judgment Not for public disclosure per Judicial Conference Policy. Signed by Judge Richard J. Leon on 6/27/2013. (hsj, ) (Entered: 07/02/2013) |
| 07/08/2013 | 37 | | NOTICE OF APPEAL - Final Judgment by JAMES WENDELL BROWN Fee Status: No Fee Paid. Parties have been notified. (Quint, Lara) (Entered: 07/08/2013) |
| 07/09/2013 | 38 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. Defendant is represented by Federal Public Defender's Office. Docketing Statement Not Received as to JAMES WENDELL BROWN re 37 Notice of Appeal - Final Judgment. No Fee Paid (hsj, ) (Entered: 07/09/2013) |
| 07/10/2013 | | | USCA Case Number as to JAMES WENDELL BROWN 13-3062 for 37 Notice of Appeal - Final Judgment filed by JAMES WENDELL BROWN. (hsj, ) (Entered: 07/11/2013) |
| 08/12/2013 | 39 | | TRANSCRIPT OF PROCEEDINGS in case as to JAMES WENDELL BROWN before Judge Richard J. Leon held on June 26, 2013; Page Numbers: 1 - 47. Court Reporter/Transcriber Cathryn Jones, Telephone number 202 354-3246, Court Reporter Email Address : cathryjns1@aol.com.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<P>NOTICE RE REDACTION OF TRANSCRIPTS: The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 9/2/2013. Redacted Transcript Deadline set for 9/12/2013. Release of Transcript Restriction set for 11/10/2013.(Jones, Cathryn) (Entered: 08/12/2013) |
| 08/24/2013 | 40 | | TRANSCRIPT OF Return on Arrest Warrant and Initial Appearance PROCEEDINGS in case as to JAMES WENDELL BROWN before Magistrate Judge John M. Facciola held on 3/28/12. Page Numbers: 1 - 7. Date of Issuance: 8/24/13. Court Reporter/Transcriber: Bowles Reporting Service, Telephone number (860) 464-1083. |
| | | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced |

8

| | | | |
|---|---|---|---|
| | | | above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<br><br>Redaction Request due 9/14/2013. Redacted Transcript Deadline set for 9/24/2013. Release of Transcript Restriction set for 11/22/2013.(mlp) (Entered: 08/27/2013) |
| 08/24/2013 | 41 | | TRANSCRIPT OF Preliminary/Detention Hearing PROCEEDINGS in case as to JAMES WENDELL BROWN before Magistrate Judge Deborah A. Robinson held on 4/10/12; Page Numbers: 1 – 13. Date of Issuance: 8/24/13. Court Reporter/Transcriber: Bowles Reporting Service. Telephone number (860) 464–1083.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<br><br>Redaction Request due 9/14/2013. Redacted Transcript Deadline set for 9/24/2013. Release of Transcript Restriction set for 11/22/2013.(mlp) (Entered: 08/27/2013) |
| 08/24/2013 | 42 | | TRANSCRIPT OF Preliminary/Detention Hearing PROCEEDINGS in case as to JAMES WENDELL BROWN before Magistrate Judge John M. Facciola held on 04/23/12. Page Numbers: 1 – 31. Date of Issuance: 8/24/13. Court Reporter/Transcriber: Bowles Reporting Service. Telephone number (860) 464–1083.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to |

| | | | |
|---|---|---|---|
| | | | redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<br><br>Redaction Request due 9/14/2013. Redacted Transcript Deadline set for 9/24/2013. Release of Transcript Restriction set for 11/22/2013.(mlp) (Entered: 08/27/2013) |
| 08/24/2013 | 43 | | TRANSCRIPT OF Status Hearing PROCEEDINGS in case as to JAMES WENDELL BROWN before Magistrate Judge John M. Facciola held on 06/18/12. Page Numbers: 1 - 6. Date of Issuance: 8/24/13. Court Reporter/Transcriber: Bowles Reporting Service. Telephone number (860) 464-1083.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<br><br>Redaction Request due 9/14/2013. Redacted Transcript Deadline set for 9/24/2013. Release of Transcript Restriction set for 11/22/2013.(mlp) (Entered: 08/27/2013) |
| 09/17/2013 | 44 | | TRANSCRIPT OF PROCEEDINGS in case as to JAMES WENDELL BROWN before Judge Richard J. Leon held on 12/18/12; Page Numbers: 1-11. Date of Issuance:09/17/13. Court Reporter/Transcriber Crystal M. Pilgrim, Telephone number 202.354.3127, Court Reporter Email Address : crystalpilgrim@aol.com.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<br><br>Redaction Request due 10/8/2013. Redacted Transcript Deadline set for 10/18/2013. Release of Transcript Restriction set for 12/16/2013.(Pilgrim, |

| | | | |
|---|---|---|---|
| | | | Crystal) (Entered: 09/17/2013) |
| 09/18/2014 | 45 | | TRANSCRIPT OF PROCEEDINGS in case as to JAMES WENDELL BROWN before Judge Richard J. Leon held on 1-16-13; Page Numbers: 1-8. Date of Issuance:9-18-14. Court Reporter/Transcriber Theresa Sorensen, Telephone number 202-354-3044, Court Reporter Email Address : theresams@erols.com.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 10/9/2014. Redacted Transcript Deadline set for 10/19/2014. Release of Transcript Restriction set for 12/17/2014.(Foradori, Lisa) (Entered: 09/18/2014) |
| 02/10/2016 | 46 | | MANDATE of USCA (certified copy) as to JAMES WENDELL BROWN re 37 Notice of Appeal – Final Judgment. The Sentencing Judgment of the District Court Appealed From in this Cause be Vacated and the Case is hereby Remanded for Resentencing. USCA Case Number 13-3062. (hsj) (Entered: 02/11/2016) |
| 02/24/2016 | | | Set/Reset Hearings as to JAMES WENDELL BROWN:Status Conference set for 3/2/2016 at 12:00 PM in Courtroom 18 before Judge Richard J. Leon. (tb) (Entered: 02/24/2016) |
| 03/02/2016 | | | Minute Entry: Status Conference as to JAMES WENDELL BROWN held on 3/2/2016 before Judge Richard J. Leon: The request to file supplemental sentencing memorandum taken under advisement. Defendant presenced waived. Defendant remains incarcerated.; Court Reporter: William Zaremba; Defense Attorney: Barbara Kittay; US Attorney: Ari Redbord. (tb) Modified on 3/3/2016 (tb). (Entered: 03/03/2016) |
| 03/31/2016 | 48 | | NOTICE OF ATTORNEY APPEARANCE: Barbara E. Kittay appearing for JAMES WENDELL BROWN (Kittay, Barbara) (Entered: 03/31/2016) |
| 03/31/2016 | 49 | | Unopposed MOTION for Hearing *Sentencing* by JAMES WENDELL BROWN. (Kittay, Barbara) (Entered: 03/31/2016) |
| 04/13/2016 | | | MINUTE ORDER as to JAMES WENDELL BROWN. Granting Defendant's Unopposed 49 Motion Requesting the Scheduling of a Re-Sentencing Hearing. Re-Sentencing in this matter is scheduled for 6/8/2016 at 2:30 PM in Courtroom 18 before Judge Richard J. Leon. Sentencing Memoranda from the parties, if any, are due by 6/1/2016. SO ORDERED. By Judge Richard J. Leon on 04/13/2016. (jth) (Entered: 04/13/2016) |
| 05/19/2016 | 50 | | SENTENCING MEMORANDUM by JAMES WENDELL BROWN (Kittay, Barbara) (Entered: 05/19/2016) |
| 05/20/2016 | | | NOTICE OF ERROR re 50 Sentencing Memorandum ; emailed to bkittay@verizon.net, cc'd 3 associated attorneys -- The PDF file you docketed |

11

| | | | |
|---|---|---|---|
| | | | contained errors: 1. Docket Entry 50 Modified to Correct Entry as a Supplemental Sentencing Memorandum. Do Not Refile. (zhsj, ) (Entered: 05/20/2016) |
| 06/08/2016 | | | Minute Entry: Resentencing as to JAMES WENDELL BROWN held on 6/8/2016 before Judge Richard J. Leon: Defendant resentenced to One Hundred Forty-Four (144) months incarceration, followed by Two Hundred Forty (240) months supervised release. Special Assessment of $100.00. Defendant committed; commitment issued. Court Reporter: William Zaremba; Defense Attorney: Barbara Kittay; US Attorney: Ari Redbord; Prob Officer: Crystal Lustig. (tb) (Entered: 06/09/2016) |
| 06/16/2016 | 51 | | NOTICE OF APPEAL - Final Judgment by JAMES WENDELL BROWN Fee Status: No Fee Paid. Parties have been notified. (Kittay, Barbara) (Entered: 06/16/2016) |
| 06/17/2016 | 52 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Fee remains to be paid and another notice will be transmitted when the fee has been paid in the District Court or motion to proceed In Forma Pauperis has been filed as to JAMES WENDELL BROWN re 51 Notice of Appeal - Final Judgment. (hsj) (Entered: 06/17/2016) |
| 07/05/2016 | | | USCA Case Number as to JAMES WENDELL BROWN 16-3076 for 51 Notice of Appeal - Final Judgment filed by JAMES WENDELL BROWN. (hsj) (Entered: 07/07/2016) |
| 07/06/2016 | 53 | 13 | JUDGMENT as to JAMES WENDELL BROWN. Statement of Reasons Not Included. Signed by Judge Richard J. Leon on 7/5/2016. (hsj) (Entered: 07/07/2016) |
| 07/06/2016 | 54 | 19 | STATEMENT OF REASONS as to JAMES WENDELL BROWN re 53 Judgment Access to the PDF Document is restricted per Judicial Conference Policy. Access is limited to Counsel of Record and the Court. Signed by Judge Richard J. Leon on 7/5/2016. (hsj) (Entered: 07/07/2016) |

12

11

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO.** |
| | : | |
| **v.** | : | **MAGISTRATE NO. 12-MJ-292** |
| | : | |
| | : | **VIOLATION:** |
| **JAMES WENDELL BROWN,** | : | **18 U.S.C. § 2252A(a)(2)** |
| **DOB: 08/17/1961** | : | **(Distribution of Child Pornography)** |
| | : | |

## INFORMATION

The United States Attorney charges that:

## COUNT ONE

On or about March 5, 2012, in the District of Columbia, the defendant, **JAMES WENDELL BROWN**, did knowingly distribute three images of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), which items depicted prepubescent minors or minors under the age of twelve years, which items were shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, and which items were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

(**Distribution of Child Pornography**, in violation of Title 18, United States Code, Section 2252A(a)(2))

RONALD C. MACHEN JR.
United States Attorney
D.C. Bar No. 498610

/s/
ARI B. REDBORD
Assistant United States Attorney
DC Bar No.476998
U.S. Attorney's Office
555 4th Street, N.W., Room 10-413
Washington, D.C. 20530
202-252-7018
ari.redbord@usdoj.gov

2

13

U.S. Department of Justice

Ronald C. Machen Jr.
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

April 29, 2013

By Electronic Mail

Lara Quint, Esq.
Shelli Peterson, Esq.
Assistant Federal Public Defenders
625 Indiana Avenue, Suite 550
Washington D.C. 20004

**FILED**

**JUN 19 2013**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

   *Re:*  <u>United States v. James Wendell Brown</u>
      *Case No. 12-155(RJL)*

Dear Counsel:

  This letter sets forth the full and complete plea offer to your client, James Wendell Brown, from the Criminal Division of the Office of the United States Attorney for the District of Columbia (hereinafter also referred to as "the Government" or "this Office"). If your client accepts the terms and conditions of this offer, please have your client execute this document in the space provided below. Upon receipt of the executed document, this letter will become the Plea Agreement. The terms of the offer are as follows:

### Charges and Statutory Penalties

  1. Your client agrees to plead guilty to one count of Distribution of Child Pornography in a criminal Information, a copy of which is attached, in violation of 18 U.S.C. § 2252A(a)(2).

  2. Your client understands that pursuant to 18 U.S.C. § 2252A(b)(1), the charge carries a maximum sentence of 20 years of imprisonment (with a mandatory minimum of 5 years imprisonment), a fine of $250,000 or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made and a supervised release term of between 5 years and life pursuant to 18 U.S.C. § 3583(k). In addition, your client agrees to pay a special assessment of $100 per felony conviction to the Clerk of the United States District Court for the District of Columbia prior to the date of sentencing. Your client also understands that pursuant to 18 U.S.C. § 3572 and § 5E1.2 of the Sentencing Guidelines, the Court may also impose a fine that is sufficient to pay the federal government the costs of any imprisonment, term of supervised release and period of probation. Further, your client understands that if your client has two or

14

more convictions for a crime of violence or felony drug offense, your client may be subject to the substantially higher guideline penalties provided for in the career offender statutes and provisions of the Sentencing Guidelines.

3.      In consideration of your client's plea to the above offense, your client will not be further prosecuted criminally by this Office for the conduct set forth in the attached Statement of Offense.  In addition, the United States' Attorney's Office for the Eastern District of Virginia agrees not to prosecute your client for the offenses of possession and/or receipt of child pornography, however it does not preclude the U.S. Attorney's Office for the Eastern District of Virginia from prosecuting the offense of production of child pornography should such evidence be found during the search of your client's seized computers.  Moreover, the Commonwealth Attorney for Fauquier County, Virginia agrees not to prosecute your client for the offenses of possession or receipt of child pornography in connection with materials found during the search of your client's seized computer and further agrees not to prosecute your client based on allegations of child sexual abuse made by the defendant's daughter or grand-daughters as set forth in the Statement of the Offense.

### Factual Stipulations

4.      Your client agrees that the attached "Statement of the Offense" fairly and accurately describes your client's actions and involvement in the offense to which your client is pleading guilty.  It is anticipated that prior to or during the plea hearing, your client will adopt and sign the Statement of the Offense as a written proffer of evidence.

### Sentencing Guidelines

5.      Your client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the guidelines and policies promulgated by the United States Sentencing Commission, Guidelines Manual 2011 (hereinafter "Sentencing Guidelines" or "U.S.S.G").  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties stipulate to the following. However, nothing in this agreement is to be read as precluding either party from arguing for or against the applicability of any other specific offense characteristic and/or adjustment to the defendant's base offense level that is not specifically referenced in the agreement.

### A.      Offense Level under the Guidelines

#### Section 2G2.2

| | |
|---|---|
| Estimated Base Offense Level | 22 |
| Applicable Specific Offense Characteristics | |
| 2G2.2(b)(2) offense involved prepubescent minors or minors under 12 | + 2 |
| 2G2.2(b(3)(F) distribution other than described in A through E | +2 |
| 2G2.2(b)(6) offense involved the use of a computer | + 2 |

15

2G2.2(b)(5) offense involved pattern of activity involving the sexual abuse or exploitation of a minor     +5

| **Acceptance of Responsibility** | -3 |
|---|---|
| **Total** | **30(97-121 months)** |

**B.** **Adjustment for Acceptance of Responsibility:** Assuming your client clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through your client's allocution and subsequent conduct prior to the imposition of sentence the Government agrees that a 2-level reduction would be appropriate, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming your client has accepted responsibility as described in the previous sentence and that your client's base offense level is 16 or greater, the Government agrees that an additional 1-level reduction would be appropriate, pursuant to § 3E1.1(b), U.S.S.G., because your client has assisted authorities by providing timely notice of your client's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

### Agreement as to Sentencing Allocution

8.     The parties further agree that a sentence within the applicable Guidelines Range established by the Sentencing Guidelines, if determined in accordance with the parties' stipulations in this Agreement, would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, § 3553(a). However, the parties agree that your client may seek a sentence outside of the Guideline Range established by the Sentencing Guidelines and may suggest that the Court consider a sentence outside of the Guidelines range based upon the factors to be considered in imposing sentence pursuant to Title 18, United States Code, § 3553(a).

9.     Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G., § 3E1.1, and/or imposition of an adjustment for obstruction of justice, *see* U.S.S.G., § 3C1.1, regardless of any stipulation set forth above, should your client move to withdraw your client's guilty plea after it is entered, or should it be determined that your client has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) engaged in additional criminal conduct after signing this Agreement.

10.     In addition, the Government reserves its right to full allocution in any post-sentence litigation in order to defend the Court's ultimate decision on such issues. Your client further understands that the Government retains its full right of allocution in connection with any post-sentence motion which may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons. In addition, your client acknowledges that the Government is not obligated and does not intend to file any downward departure sentencing motion under § 5K1.1 of the Sentencing Guidelines, or any post-sentence downward departure motion in this case pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.

3

16

**Court Not Bound by the Plea Agreement**

11.     It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B) the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Guidelines range, or other sentencing issues. In the event that the Court considers any Guidelines adjustments, departures, or calculations different from any stipulations contained in this Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in Title 18, United States Code, § 3553(a), the parties reserve the right to answer any related inquiries from the Court.

**Court Not Bound by the Non-Mandatory Sentencing Guidelines**

12.     It is understood that the sentence to be imposed upon your client is determined solely by the Court. It is understood that the Sentencing Guidelines are not binding on the Court. Your client acknowledges that your client's entry of a guilty plea to the charged offense authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence, which may be greater than the applicable Guidelines range. The Government cannot, and does not, make any promise or representation as to what sentence your client will receive. Moreover, it is understood that your client will have no right to withdraw your client's plea of guilty should the Court impose a sentence outside the Guidelines range.

**Restitution**

12.     Your client understands that in addition to the other penalties provided by law, pursuant to 18 U.S.C. §§ 2259 and 3664, it is mandatory that the Court order your client to make restitution for the full amount of any victim(s)' compensable losses. Because the government may not yet have identified all victims of your client's crime or know whether restitution will be requested, your client understands that the government will request that the Court order restitution for any identified victim for the full amount of his/her losses that were caused by your client's crime that is the subject of this plea agreement.

13.     Your client understands that an unanticipated request for restitution by a victim(s) or an unanticipated amount of a restitution ordered by the Court will not serve as grounds to withdraw your client's guilty plea. Your client also understands that the Court may not decline to order restitution because of your client's economic circumstances or the fact that the victim(s) have, or may be entitled to, receive compensation for any losses from any other source. Restitution is payable immediately at the time of sentencing unless ordered otherwise by the Court.

14.     Your client further agrees to identify all assets over which he exercises control, directly or indirectly, (or has exercised such control, within the past five years). Your client also agrees to identify all assets in which he has or had during that time any financial interest. Your client agrees to take all steps as requested by the Government to obtain from any other parties by

4

any lawful means any records of assets owned at any time by your client and to provide and/or consent to the release of your client's tax returns for the previous five years.

## Forfeiture

15. The United States of America and the defendant hereby agree that the following computers, computer media, computer peripherals, and other items seized from the defendant on March 27, 2012, and currently in the custody and/or control of the Federal Bureau of Investigation were properly seized and were involved in or used in violation of Federal law by defendant:

      A.    Toshiba Satellite A-665 laptop, S/N: 9A022382K
      B.    HP Hard Drive Enclosure S/N: WCAV5C664412
      C.    Kingston 1GB USB Drive

The defendant agrees that such items are subject to seizure and forfeiture by the United States, and that no defense exists to the seizure and forfeiture of that property by the United States. As such, the defendant hereby relinquishes all claim, title, and interest he has in the above-referenced property to the United States of America and agrees not to oppose any civil, administrative, or judicial forfeiture of the property. In addition, defendant acknowledges that the government is continuing to analyze other items seized as part of this case on March 27, 2012. He agrees that, if the analysis determines that those items are forfeitable, he will not contest forfeiture or destruction by the government by any means it chooses and at any time. The defendant knowingly and voluntarily waives any right to timely notice provided for in 18 U.S.C. Section 983. In the event that the law enforcement agency having custody of the property decides not to pursue forfeiture of the property due to its minimal value, the defendant hereby abandons any interest he has in such property and consents to its destruction by the law enforcement agency.

## Waiver of Rights

16. In entering this plea of guilty, your client understands and agrees to waive certain rights afforded to your client by the Constitution of the United States and/or by statute, including: the right against self-incrimination with respect to the offense to which your client is pleading guilty; the right to be tried by a jury, or by a judge sitting without a jury; the right to be assisted by an attorney at trial; and the right to confront and cross-examine witnesses. Your client further agrees that the District Judge should make any Sentencing Guidelines determinations.

17. Your client is aware that federal law, specifically 18 U.S.C. § 3742, affords your client the right to appeal the sentence in this case. Your client is aware that the Government's factual stipulations and predictions about the calculation of the sentencing guidelines are not binding on the sentencing judge. Knowing that, your client waives the right to appeal his

5

sentence or the manner in which it was determined pursuant to 18 U.S.C. § 3742, except to the extent that (a) the Court sentences your client to a period of imprisonment longer than the statutory maximum, or (b) the Court departs upward from the applicable Sentencing Guideline range pursuant to the provisions of U.S.S.G. §5K.2 or based on a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). Further, your client reserves the right to make a collateral attack upon your client's sentence pursuant to 28 U.S.C. § 2255, if new and currently unavailable information becomes known to him. In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement.

### Release/Detention

18.    Your client agrees not to object to the Government's recommendation to the Court at the time of the plea of guilty in this case that, pursuant to 18 U.S.C. § 3143, your client be detained without bond pending your client's sentencing in this case and that if a term of incarceration is imposed that he will not seek to be released after sentencing.

### Sexual Offender Registration

19.    Your client acknowledges and agrees that pursuant to the Sex Offender Registration and Notification Act, 18 U.S.C § 2250, 42 USC §§ 16911(2), 16915(a)(1), he is required to register as a sex offender for a minimum period of 25 years and to keep the registration current in jurisdictions where he resides, where he is employed and where he is a student. He understands that the requirements for registration include providing his name, residence address, and the names and addresses of any places where he will be employed or a student, among other information. Your client understands that should he knowingly fail to comply with his obligations under the Sex Offender Registration and Notification Act, pursuant to 18 U.S.C. Code § 2250, he could be prosecuted for the offense of failure to register and subject to a term of up to ten years imprisonment, a fine or both. He further understands that compliance with the requirements of the Sex Offender Registration and Notification Act is a specific condition of supervised release pursuant to 18 U.S.C. § 3583 and that failure to comply with his obligations under the Act could subject him to revocation of supervised release in addition to prosecution for the felony offense of failure to register.

6

**Breach of Agreement**

20.     Your client understands and agrees that if, after entering this Plea Agreement, your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this Plea Agreement, or engages in any criminal activity prior to sentencing, your client will have breached this Plea Agreement. In the event of such a breach: (a) the Government will be free from its obligations under the Agreement; (b) your client will not have the right to withdraw the guilty plea; (c) your client shall be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the Government will be free to use against your client, directly and indirectly, in any criminal or civil proceeding, all statements made by your client and any of the information or materials provided by your client, including such statements, information and materials provided pursuant to this Agreement or during the course of any debriefings conducted in anticipation of, or after entry of this Agreement, including your client's statements made during proceedings before the Court pursuant to Fed. R. Crim. P. 11.

21.     Your client acknowledges discussing with you Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410, rules which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. Your client knowingly and voluntarily waives the rights which arise under these rules.

22.     Your client understands and agrees that the Government shall only be required to prove a breach of this Plea Agreement by a preponderance of the evidence. Your client further understands and agrees that the Government need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

23.     Nothing in this Agreement shall be construed to permit your client to commit perjury, to make false statements or declarations, to obstruct justice, or to protect your client from prosecution for any crimes not included within this Agreement or committed by your client after the execution of this Agreement. Your client    understands and agrees that the Government reserves the right to prosecute your client for any such offenses. Your client further understands that any perjury, false statements or declarations, or obstruction of justice relating to your client's obligations under this Agreement shall constitute a breach of this Agreement. However, in the event of such a breach, your client will not be allowed to withdraw this guilty plea.

**Waiver of Statute of Limitations**

24.     It is further agreed that should the conviction following your client's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any

7

counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against your client, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.  It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

### Complete Agreement

25.     No other agreements, promises, understandings, or representations have been made by the parties or their counsel than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, defense counsel, and an Assistant United States Attorney for the District of Columbia.

26.     Your client further understands that this Agreement is binding only upon the Criminal and Superior Court Divisions of the United States Attorney's Office for the District of Columbia. This Agreement does not bind the Civil Division of this Office or any other United States Attorney's Office, nor does it bind any other state, local, federal, or military prosecutor. Specifically, it does not preclude the U.S. Attorney's Office for the Eastern District of Virginia from prosecuting the offense of production of child pornography should such evidence be found during the search of your client's seized computers.

27.     If the foregoing terms and conditions are satisfactory, your client may so indicate by signing the Agreement in the space indicated below and returning the original to me once it has been signed by your client and by you or other defense counsel.

RONALD C. MACHEN JR.
United States Attorney

BY:

ARI B. REDBORD
Assistant United States Attorney
D.C. Bar 476998
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7018

8

21

## DEFENDANT'S ACCEPTANCE

I have read this Plea Agreement and have discussed it with my attorneys Lara Quint and Shelli Peterson, Esquires. I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully. I am pleading guilty because I am in fact guilty of the offense identified in this Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Plea Agreement. I am satisfied with the legal services provided by my attorney in connection with this Plea Agreement and matters related to it.

Date: 6/19/2013

James Wendell Brown
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this Plea Agreement, reviewed them with my client, and discussed the provisions of the Agreement with my client, fully. These pages accurately and completely sets forth the entire Plea Agreement. I concur in my client's desire to plead guilty as set forth in this Agreement.

Date: 6/19/2013

Lara Quint, Esquire
Shelli Peterson, Esquire
Attorney for the Defendant

9

22

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,:          CRIMINAL NO. 12-155(RJL)

      v.

JAMES WENDELL BROWN
     Defendant.

# FILED

JUN 1 9 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## STATEMENT OF THE OFFENSE

The parties in this case, the United States of America and the defendant, James Wendell Brown, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

1.    Leading up to March 5, 2012, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, Detective Palchak ("UC") created an online profile on a predicated social network site which is a site frequented by individuals that have a sexual interest in children.

2.    On March 5, 2012, at approximately 1:05 p.m., an individual using the screen name "justluckyjwb" initiated a private instant message chat with the UC. During the early portion of the instant message chat, "justluckyjwb" – who was later identified as the defendant, James Wendell Brown (hereinafter "BROWN") – identified himself as a 50-year-old male from Warrenton, Virginia and asked the UC, "[W]hat age range do you like[?]" When the UC responded that his preference was for under 12, BROWN responded, "3-8 best . . . love them flat

Case 1:12-cr-00155-RJL  Document 32   Filed 06/19/13   Page 2 of 5

and smooth." When the UC inquired if BROWN had "any exp[erience]," BROWN responded, "I used to enjoy my grand daughter but she was taken from me a year ago . . . I only got her to do oral on me . . . her grandma was always to close to do anymore." BROWN added that he "started m[]ine at 2 ½ training her . . . at 3 ½ she could deep throat me . . .she had no gag reflex . . . I used her mouth until 5 when she was taken from me."

3.     During the course of the March 5, 2012, online conversation, the UC indicated that he was "active with [his] 12 year-old," to which BROWN replied, "thats very sweet" and asked if the child was a boy or girl. BROWN stated, "I'm looking for a new playmate . . .is she petite or a big girl."

4.     As the online exchange continued, the UC sent BROWN a morphed, clothed picture of the purported child, to which BROWN responded, "[V]ery pretty girl . . . does she like to receive oral or give[?]" When the UC stated that it had been a fantasy to see the purported child perform oral sex on a "strange cock," BROWN responded, "[L]ike I said I'm only an hour away." The UC and BROWN thereafter discussed the possibility of meeting on Friday, March 9, 2012, for purposes of engaging in sexual acts with the purported 12-year-old girl. During the online chat, BROWN noted that it had been approximately one year since he had engaged in sexual acts with his grand-daughter. BROWN also noted that he missed it "more than you can dream."

5.     As the online exchange continued, BROWN sent the UC three images of child pornography. The first image sent by BROWN depicted a close-up view of a female vagina that appears to be of a child under the age of 18. When the UC asked if the image depicted "how your grand-daughter's looked," BROWN replied, "[Y]es but that is not her." The second image

2

24

sent by BROWN depicted two prepubescent female children masturbating an adult male penis. The third image sent by BROWN depicted two prepubescent female children, both nude with an adult male, with one performing oral sex on the adult male's penis and the other kissing the adult male on the mouth. After sending the third image, BROWN stated, "I love that little mouth tight around that cock."

6.       In discussing his grand-daughter again, BROWN noted that "she would only suck me . . . I was never alone long enuff to do anything more." When asked if he ever ejaculated, BROWN responded, "[N]ot in her . . . her grandma was always in the next room." He also explained, "[M]y grand daughter could deep throat me . . . she had no gag reflex . . . every time I could I would pull it out and she would just run up and take it in her little mouth."

7.       Towards the end of the March 5, 2012, online chat, BROWN inquired, "Are you looking to get your daughter after school Friday for the weekend[?]" When the UC responded affirmatively and asked, "[I]s that good for you." BROWN replied, "Yes." BROWN also noted, "I look forward to meeting you and your little girl . . . I hope she is willing to partake i[n] a little fun and games." BROWN added, "Ok I look forward to hearing from you later this week to let me know if you want to meet . . . I will look for you and your daughter."

8.       During the course of this investigation, members of the FBI Child Exploitation Task Force were able to confirm through the Fauquier County Sheriff's Office that BROWN was under investigation for sexual abuse charges in Fauquier County, Virginia involving his granddaughters – K.S., now age 7 and L.S., now age 4. In a statement to Fauquier County authorities, K.S. disclosed that BROWN made her sit on his lap on multiple occasions while BROWN moved his body back and forth and side to side effectively rubbing his clothed penis on

3

her buttocks on many occasions and rubbed his hands on her unclothed buttocks on one occasion.

10.     In the course of its investigation, Fauquier County authorities also learned that, on at least one occasion, a witness walked in on L.S., age 3 at the time, straddling BROWN. Specifically, an adult eyewitness stated that she observed BROWN laying in bed with L.S. sitting on his lap straddling him. They were face-to-face and L.S., wearing a dress, was leaning on BROWN'S stomach. BROWN'S hands were on the child's buttocks.

11.     In the course of its investigation of this case, the government also learned of allegations of sexual abuse involving BROWN'S biological daughter J.W. -- age 6 at the time of the allegations (now age 14). The child alleged that this would happen when she was approximately 3-years-old.

12.     BROWN concedes that the government could prove the abuse set forth above by clear and convincing evidence.

4

26

## DEFENDANT'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have discussed it with my attorneys, Lara Quint and Shelli Peterson, Esquires. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 6/19/2013

James Wendell Brown
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 6/19/2013

Lara Quint, Esq.
Shelli Peterson, Esq.
Attorneys for James Wendell Brown

5

27

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 12-155(RJL)** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES WENDELL BROWN** | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case.  For the reasons set forth herein, the government recommends a sentence of 151 months of incarceration, based on the defendant's offense level 34 and the charged conduct as set forth below, with a term of supervised release of not less than ten years, with the conditions requested in the Presentence Investigation Report (PSR).

## PROCEDURAL BACKGROUND

1.     On January 30, 2013, the defendant James Wendell Brown pled guilty pursuant to a plea agreement to one count of distribution of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2).

2.     In the Presentence Investigation Report, dated March 22, 2013, and consistent with the parties' plea agreement in this case, the defendant's base offense level was 22.  That base offense level was increased by 2 levels because the material involved a prepubescent minor or minor below the age of 12; by an additional 2 levels because the offense involved distribution; by an additional 4 levels because the material portrayed sadistic or masochistic conduct or other

1

depictions of violence; by an additional 5 levels because the offense involved a pattern of activity involving the sexual abuse of a minor(s); and by an additional 2 levels because the offense involved the use of a computer; – for a total Adjusted Offense Level of 37.   See PSR ¶¶ 27-40.

3.    With a three-level decrease for acceptance of responsibility, the defendant's total offense level is 34.   The defendant's total criminal history score is zero.

## FACTUAL BACKGROUND

4.    Leading up to March 5, 2012, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.   In that capacity, Detective Palchak ("UC") created an online profile on a predicated social network site which is a site frequented by individuals that have a sexual interest in children.

5.    On March 5, 2012, at approximately 1:05 p.m., an individual using the screen name "justluckyjwb" initiated a private instant message chat with the UC.   During the early portion of the instant message chat, "justluckyjwb" – who was later identified as the defendant, James Wendell Brown (hereinafter "BROWN") – identified himself as a 50-year-old male from Warrenton, Virginia and asked the UC, "[W]hat age range do you like[?]"   When the UC responded that his preference was for under 12, BROWN responded, "3-8 best . . . love them flat and smooth."   When the UC inquired if BROWN had "any exp[erience]," BROWN responded, "I used to enjoy my grand daughter but she was taken from me a year ago . . . I only got her to do oral on me . . . her grandma was always to close to do anymore."   BROWN added that he "started m[]ine at 2 ½ training her . . . at 3 ½ she could deep throat me . . .she had no gag reflex . . . I used her mouth until 5 when she was taken from me."

2

6.     During the course of the March 5, 2012, online conversation, the UC indicated that he was "active with [his] 12 year-old," to which BROWN replied, "thats very sweet" and asked if the child was a boy or girl.  BROWN stated, "I'm looking for a new playmate . . .is she petite or a big girl."

7.     As the online exchange continued, the UC sent BROWN a morphed, clothed picture of the purported child, to which BROWN responded, "[V]ery pretty girl . . . does she like to receive oral or give[?]"  When the UC stated that it had been a fantasy to see the purported child perform oral sex on a "strange cock," BROWN responded, "[L]ike I said I'm only an hour away."  The UC and BROWN thereafter discussed the possibility of meeting on Friday, March 9, 2012, for purposes of engaging in sexual acts with the purported 12-year-old girl.  During the online chat, BROWN noted that it had been approximately one year since he had engaged in sexual acts with his grand-daughter.  BROWN also noted that he missed it "more han you can dream."

8.     As the online exchange continued, BROWN sent the UC three images of child pornography.  The first image sent by BROWN depicted a close-up view of a female vagina that appears to be of a child under the age of 18.  When the UC asked if the image depicted "how your grand-daughter's looked," BROWN replied, "[Y]es but that is not her."  The second image sent by BROWN depicted two prepubescent female children masturbating an adult male penis.  The third image sent by BROWN depicted two prepubescent female children, both nude with an adult male, with one performing oral sex on the adult male's penis and the other kissing the adult male on the mouth.  After sending the third image, BROWN stated, "I love that little mouth tight around that cock."

3

30

9.      In discussing his grand-daughter again, BROWN noted that "she would only suck me . . . I was never alone long enuff to do anything more." When asked if he ever ejaculated, BROWN responded, "[N]ot in her . . . her grandma was always in the next room." He also explained, "[M]y grand daughter could deep throat me . . . she had no gag reflex . . . every time I could I would pull it out and she would just run up and take it in her little mouth."

10.     Towards the end of the March 5, 2012, online chat, BROWN inquired, "Are you looking to get your daughter after school Friday for the weekend[?]" When the UC responded affirmatively and asked, "[I]s that good for you," BROWN replied, "Yes." BROWN also noted, "I look forward to meeting you and your little girl . . . I hope she is willing to partake i[n] a little fun and games." BROWN added, "Ok I look forward to hearing from you later this week to let me know if you want to meet . . . I will look for you and your daughter."

11.     During the course of this investigation, members of the FBI Child Exploitation Task Force were able to confirm through the Fauquier County Sheriff's Office that BROWN was under investigation for sexual abuse charges in Fauquier County, Virginia involving his granddaughters – K.S., now age 7 and L.S., now age 4. In a statement to Fauquier County authorities, K.S. disclosed that BROWN made her sit on his lap on multiple occasions while BROWN moved his body back and forth and side to side effectively rubbing his clothed penis on her buttocks on many occasions and rubbed his hands on her unclothed buttocks on one occasion.

12.     In the course of its investigation, Fauquier County authorities also learned that, on at least one occasion, a witness walked in on L.S., age 3 at the time, straddling BROWN. Specifically, an adult eyewitness stated that she observed BROWN laying in bed with L.S. sitting on his lap straddling him. They were face-to-face and L.S., wearing a dress, was leaning on

4

BROWN'S stomach.   BROWN'S hands were on the child's buttocks.

13.     In the course of its investigation of this case, the government also learned of allegations of sexual abuse involving BROWN'S biological daughter J.W.   – age 6 at the time of the allegations (now age 14).   The child alleged that this would happen when she was approximately 3-years-old.

14.  BROWN concedes that the government could prove the abuse set forth above by clear and convincing evidence.

<div align="center">

**GOVERNMENT'S SENTENCING RECOMMENDATION**

**A.      Application of the Federal Guidelines post-*Booker***

</div>

15.   In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).   As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 756.

16.     As the Supreme Court has stated, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.   See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").   After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in

<div align="center">5</div>

<div align="center">32</div>

Title 18, United States Code, Section 3553(a). Id. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

17.      The Guidelines themselves seek to implement – in a fair and uniform way – these factors. A sentencing court must make an "individualized assessment based on the facts presented." Id. at 49.

**B.      Basis for Government's Recommendation**

18.      The government submits that a sentence of 151 months is appropriate, warranted, and in the best interests of justice in this case. A sentence of 151 months takes into account the fact that the defendant distributed only three images of child pornography. However, the five point enhancement also takes into account that the defendant has engaged in a pattern of activity when it comes to the sexual exploitation of children.

6

### *Nature and circumstances of the offenses*

19.    The defendant's actions in this case are deeply disturbing.   The defendant engaged in a lengthy online chat relating to his desire to engage in sexual acts with children with an undercover detective, whom the defendant believed had sexual access to a fictional 12-year-old girl.   The defendant, who wrote that he preferred under 12 -- "3-8 is best . . . love them flat and smooth," – told the UC that he, " . . . used to enjoy his granddaughter, but she was taken away from me a year ago . . . I only got her to do oral on me . . . her grandma was always too close to do anymore."   The defendant continued, "I started mine at 2 ½ training her . . . at 3 ½ she could deep throat me . . . she had no gag reflex . . . I used her mouth until 5 when she was taken from me."   The defendant has acknowledged that the government could prove the sexual abuse of his granddaughters by clear and convincing evidence.

20.    The chat itself was very graphic.   The defendant was not shy about expressing his interest in having sex with either the purported child to whom the undercover claimed to have access or with his own granddaughters.   Most disturbingly we know that these desires were, in fact, carried out.

21.    During the course of the chat, the defendant sent the UC three images of child pornography.   Those images included: (1) a close-up view of a female vagina that appears to be of a child under the age of 18; (2) two prepubescent female children masturbating an adult male penis; and (3) two prepubescent female children, both nude with an adult male, with one performing oral sex on the adult male's penis and the other

7

kissing the adult male on the mouth. With respect to the child pornography itself, the

impact of this conduct cannot be underestimated in terms of its harm to the community

at-large, as well as the dangerousness that it underscores for this defendant. The

defendant's distribution of these images helped maintain an underground market for some

of the most offensive and pernicious visual content that exists in our society.

22.    The harm posed by the defendant's actions is clear. As the Supreme

Court recognized in the seminal case of New York v. Ferber:

> The use of children as subjects of pornographic materials is very harmful
> to both the children and the society as a whole. It has been found that
> sexually exploited children are unable to develop healthy relationships in
> later life, have sexual dysfunctions, and have a tendency to become sexual
> abusers as adults.
>
> Pornography poses an even greater threat to the child victim than does
> sexual abuse or prostitution. Because the child's actions are reduced to a
> recording, the pornography may haunt him in future years, long after the
> original misdeed took place.

458 U.S. 747, 758-60 nn. 9 & 10. The Court continued, "[a] child who has posed for a

camera must go through life knowing that the recording is circulating within the mass

distribution system for child pornography. . . . It is the fear of exposure and the tension of

keeping the act secret that seem to have the most profound emotion repercussions." Id.

at 759 n.10. As the Fifth Circuit similarly concluded, the crimes of a "'passive' child

pornography recipient" are not "somehow attenuated as compared to a person who

actually produces or distributes child pornography . . . victimization of a child depicted in

pornographic material flows just as directly from the crime of knowingly receiving child

8

35

pornography as it does from the arguably more culpable offenses of producing or distributing child pornography." United States v. Norris, 159 F.3d 926, 930 (5th Cir. 1998).

23.     After all, "the 'victimization' of the children involved does not end when the pornographer's camera is put away.   The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions" Id. at 929.   While the children in the images in this case have not been identified, the defendant's acts – although distinct from the actual sexual abuse of the victims itself – remains a continuing victimization of the children portrayed in those images.

### *History and characteristics of the defendant*

24.     The defendant is a 51-year old male without significant contact with the criminal justice system.

### *Punishment, deterrence, protection, and correction*

25.     As described in detail above, the offenses at issue in this case are extremely serious and the sentence imposed should reflect that fact.   The government believes that the guideline range recommended would provide a just sentence based on the defendant's conduct in this case.   A sentence below that range, particularly one of any significant amount, may send a false signal to this defendant, other defendants, and the community at large that the instant offenses do not entail any real danger.   To the contrary, the defendant's conversations with the undercover detective and his distribution

9

of child pornography pose an identifiable and significant danger to the community. The defendant's actions in this regard were egregious and justice requires that they be appropriately punished. The recommended period of incarceration would provide that punishment and simultaneously deter future criminal conduct. Additionally, incarceration would protect the community by incapacitating the defendant. Correctional treatment, as well as any necessary medical care, would be available to the defendant through the U.S. Bureau of Prisons.

### *Available sentences*

26.     The government submits that incarceration is the most appropriate sentence available for the defendant because it will incapacitate him for a determined period of time. A term of supervised release of not less than ten years, with the conditions recommended in the PSR, would also be appropriate to ensure that the defendant is monitored and the community is protected.

27.     To his credit, the defendant noted a willingness to accept responsibility at an early stage of the proceedings ultimately entering his guilty plea pre-indictment. The government is certainly taking this acceptance of responsibility into account in making its recommendation at the low end of the sentencing guideline range.

28.     For all of the reasons set forth above, the government recommends a sentence of 151 months. This sentence strikes an appropriate balance between the seriousness of the offense, the danger posed to the community, the need for just punishment, deterrence of criminal conduct, and protection of the community, with the

10

history and characteristics of the defendant.

## CONCLUSION

Wherefore, the government respectfully submits that a sentence of 151 months of

incarceration be imposed, with a period of supervised release of not less than ten years,

including the conditions recommended in the Presentence Report.

RONALD C. MACHEN JR.
United States Attorney

BY:    /s/ _____

ARI B. REDBORD
Assistant United States Attorney
D.C. Bar 476998
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7018

11

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 12-155 (RJL) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES WENDELL BROWN | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT JAMES BROWN'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

Defendant James Wendell Brown, by and through his counsel, Barbara E. Kittay, Esquire, hereby submits a supplemental memorandum in aid of sentencing, respectfully asking this Court to incorporate the prior memorandum submitted by the Federal Public Defender (FPD), on June 20, 2013, as modified and supplemented herein, and states as follows:

### I.   Background

First, we would like to assure this court that the defendant -- who pleaded guilty early, accepted responsibility, and has always cooperated fully in his prosecution -- does *not* ask for *any less* time than he knows that he fully deserves for the full range of his conduct. *He simply asks for no more* than that which the guidelines and the case law recommends.

Factually, and as the court is well-aware, the defendant pleaded guilty, on June 19, 2013, to one count of distribution

- 2 -

of child pornography.  But he was arrested long before, and has

been incarcerated continuously since March of 2012.  Because the

facts underlying his conviction have been fully set forth in the

pre-sentence report (PSR) and in the original sentencing

memorandum (filed by FPD), they are not repeated here.

As this Court is also aware, the matter is back, because on

December 15, 2015, the Court of Appeals vacated the defendant's

original sentence and remanded for resentencing.  *See United

States v. James Wendell Brown*, No. 13-3062, slip op. at 18 (D.C.

Cir., Dec. 15, 2015).

## II. The Defendant Respectfully Requests a Sentence in the Range of 97-121 Months

### A.  The Sentencing Range

At the original sentencing hearing held on June 26, 2013,

the parties, the Department of Probation, and this court agreed

that the offense level specified by the U.S. Sentencing

Guidelines (USSG) for the defendant's conduct is level 30,

which, with his zero criminal history score, sets a sentencing

range of **97 to 121 months.**  This range took into account the

following specific offense characteristics and adjustments:

| | |
|---|---|
| **Base Offense Level (USSG §2G2.2):** | **22** |
| Material involving children under 12 (USSG §2G2.2(b)(2)) | +2 |
| Distribution of child pornography (USSG §2G2.2(B)(3)(F)) | +2 |

40

| Pattern of activity involving abuse (USSG §2G2.2(b)(5)) | +5 |
| Use of a computer (USSG §2G2.2(b)(6)) | +2 |
| Acceptance of Responsibility (§3E1.1(a)+(b)) | -3 |
| **TOTAL OFFENSE LEVEL:** | **30** |

Consistent with the plea agreement, the government recommended a sentence at the low end of the 97 to 121 months range.

On June 26, 2013, this court sentenced the defendant above the advisory guideline range to 144 months, based on its concern, then, that the sentencing guidelines range did not adequately address the *combination* of factors present in this case, namely, interstate transmission of child pornography, solicitation of victims on the Internet, and a history of abuse of minor children. At the outset, therefore, we ask this court to consider anew, that the calculation of the characteristic factors, each -- addressed individually -- is significant without a multiplier addition, based only on combination. We ask the Court to conclude, instead, that the individual adjustments and enhancements provided in the guidelines do, indeed, address in combination and cumulatively, all of the various, concerning behaviors.[1]

_____

[1] We ask the court to consider, too, that nowhere else in the Guidelines does it typically impose a multiplier based on the presence of multiple specific offense characteristics. For

41

Examined individually, the factors each did, indeed, add significant time to the defendant's punishment:  for example, had the defendant appeared before this court for sentencing on the child pornography count alone (without consideration of his pattern of conduct with minor children) his adjusted advisory guideline range would have been **57-71 months** (level 25).[2]  But a five-level enhancement for that pattern of conduct nearly doubled the low end of the guideline, and extended the high end by 50 months.  This enhancement is meant to -- and does -- take into account the court's concern that the defendant has accomplished a "benefit" from the declination of the Virginia authorities for his conduct there.

Five levels, under our federal sentencing guidelines, is a significant enhancement.  The defendant, by accepting responsibility for the Virginia conduct here, saved the government significant resources; moreover, he saved the affected children the trauma and distress of coming forward to testify in an additional prosecution.  The use of his computer

example, we do not imagine that the Court regularly sees fit to further enhance a fraud sentence where the guidelines have already addressed such combined factors as high monetary loss, breach of a position of trust, and use of a computer.

[2]    Of course, the court could not impose a sentence of less than **60 months**, because the statute of conviction carries a mandatory minimum, under 18 U.S.C. §2252A(b)(1).

added an additional two levels -- or his range might have been even lower.

But more to the point, a sentence within the range is consistent with the body of case law addressing very similar conduct. In *United States v. Angle*, for example, the Seventh Circuit Court of Appeals challenged a trial court's imposition of time additional to the same five-level adjustment, which had been based on the trial court's concern, just like here, that the defendant had avoided of parallel prosecution in another jurisdiction. "This sort of double-counting is permissible under the guidelines but only if the pattern-of-activity adjustment does not adequately take account of the seriousness of the defendant's conduct." *See United States v. Angle*, 216 F. App'x 557, 561 (7th Cir. 2005), *citing* USSG §2G2.2, Application Note 7.[3] Here, we ask the court to appreciate that the imposition of the five-level §2G2.2(b)(5) adjustment nearly doubled the government's low-end range; and the court's sentence more than *doubled* the sentence he could have received without the adjustment.[4]

---

[3]   Cited in *Angle* as comment 6, the comment was re-numbered in the USSG 2009 edition as "Application Note 7."

[4]   Defendant's counsel's comparison, here, is between a sentence in the **57-71 range** (without a "pattern" enhancement), and this court's original sentence of 144 months. Of course, alternate comparisons include the difference between the adjusted guideline range accepted by the parties and the Probation

43

- 6 -

Unlike here, the type of conduct reflected in the reported cases that justify both a "pattern-of-conduct" *and* an upward departure, involve extensive or particularly depraved sexual conduct, or a breach of a position of trust beyond that of a family member. *See*, *e.g. United States v. McCaffrey*, 437 F.3d 684, 689 (7th Cir. 2006) ("unique" circumstances proven, where a priest "sexually molested dozens of children on hundreds of occasions over the course of decades, and where the abuse was aggravated by [the defendant's] exploitation of the trust families placed in him as a clergyman"); *United States v. Johnson*, 427 F.3d 423, 424 (7th Cir. 2005) (defendant had acquired an "astonishing 10,000 to 12,000 computer images [including] 174 images of sadistic sexual acts and 42 of bestiality involving children").[5] *Cf. United States v. Ohlinger*, 141 F. App'x 470, 472 (7th Cir. 2005) (upward departure appropriate where "defendant's criminal history is significantly

---

Department (which includes the pattern enhancement) of **97–121 months**, above which this court departed by nearly *four years* (at the government's recommended low-end) and by nearly two years (at the high-end).

[5]    The court's explanation, in *Johnson*, included the observations of an FBI agent and postal inspector that "the images of sadistic sexual acts included images of children under the age of ten being tied up and forced to have oral, genital and anal sex with adult males [and] images of bestiality [that] depicted young children, sometimes bound, engaging in acts of intercourse and oral sex with dogs." *Johnson, 427 F.3d at 424.* The trial judge characterized the evidence as "the most shocking he had seen in sixteen years on the bench" (*id.*).

more serious than most defendants in the Criminal V area,"
because it did not adequately reflect convictions for child
molestation in 1981 and 1983, and a complaint in 1987).

On the other end of the spectrum are cases with fact
patterns more similar to that of the defendant here, with
sentences in the range of **63 to 78** months, and no upward
departures imposed.  *See e.g., United States v. Lucero*, 747 F.3d
1242, 1251 (10th Cir. 2014) (78 months appropriate for uncle who
abused two nieces); *United States v. Gawthorp*, 310 F.3d 405, 414
(6th Cir. 2002) (70 months appropriate for a grandfather who
molested his daughter and later, his 3-year old granddaughter,
all but 55 months of which was to be served concurrent with his
81-month state sentence for abusing the granddaughter).

Which brings us back to *United States v. Angle, supra*, 216
F. App'x at 557, the case in which the enhancement was applied
for three past incidents (including at least one involving the
molestation of the defendant's nephew), and in which the Seventh
Circuit contrasted egregious cases like the priest in *McCaffrey*,
with cases involving what it called "sexual exploitation of
children generally":

> Although Angle was related to one of his victims, he
> is not comparable to a priest who uses his religious
> position to hide his activities.  The district court
> has also not suggested that there is anything unusual
> about the incidents that makes them more egregious
> than sexual exploitation of children generally.  The
> district court may not use these incidents to support

45

> an above-range sentence on remand unless it gives a
> detailed explanation of why it thinks they were not
> sufficiently accounted for by the §2G2.2(b)(5)
> adjustment.  For our part, however, we do not see
> anything in this record … to suggest that these
> incidents were so serious that they could justify both
> a §2G2.2(b)(5) adjustment and a sentence significantly
> above the guideline range.

*Id.* at 561.

We ask this Court to re-consider its earlier position, and to look with favor at the Seventh Circuit's analysis.  We believe that the five-level enhancement that the defendant accepted is significant and sufficiently harsh.  The defendant certainly does not seek to minimize his conduct involving his granddaughter; he simply and humbly asserts that serious behavior such as his merits an adjustment for "pattern of activity involving the sexual abuse or exploitation of a minor," under §2G2.2(b)(5), *and no more*.  Bad though it may be, there is little about the defendant's behavior that separates him from offenders generally; the volume or content of the three images that he transmitted does not take him above the heartland of child pornography cases; he is to be punished by a mandatory minimum of five years; and there is nothing in his past that suggests that his criminal history is underrepresented in a sentence within the advisory guidelines range of **97 to 121 months.**

### B.   **The Defendant's Accomplishments While Incarcerated**

The defendant has been a model prisoner, since his designation and transfer to the Bureau of Prisons, three years ago.  He will present, at his sentencing hearing, certificates and other records, demonstrating his continuous employment (with commendation), his participation in a Veteran's Support Group, and his completion of courses of study in Life Skills, Custodian Management, Commercial Driver's License Training, Building Construction Technology, and Industrial Safety and Health.

The defendant took this responsibility for self-improvement long before he knew he would be given an opportunity to re-address this Court.  Indeed, when told that he would be transferred out of the Rivers Correctional Institution for this re-sentencing hearing, the defendant expressed concern about the ill-effect of interrupting an employment assignment at which he has been successful, and counselling programs in which he flourishes.  The defendant assures this Court that he will continue his efforts at self-improvement, during his continued confinement and beyond; moreover, he hopes that he has earned, by his efforts during the last three years of confinement, some small measure of the Court's confidence that he can safely return to the community.

The defendant most respectfully asks this Court to sentence him within the guidelines range, so that he may complete his

sentence without any further appeal, return home to his elderly parents, and prove that he is capable of conducting himself responsibly in the community.

* * * * *

WHEREFORE, the defendant requests (without opposition) that the Court impose a sentence in the range of 97 to 121 months.

Respectfully submitted,

/s/

Barbara E. Kittay
D.C. Bar Number 414216
11140 Rockville Pike
Suite 100-284
Rockville, Maryland 20852
(301) 468-1817
bkittay@verizon.net

## Certificate of Service

I hereby certify that on May 19, 2016, a copy of the foregoing memorandum was served on counsel for the government, Asst. U.S. Attorney Ari Redbord, through the ECF filing system.

/s/

Barbara E. Kittay

AO 245B (Rev. 02/16) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JAMES WENDELL BROWN | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:  12-155  (RJL)<br>USM Number:  32054-016<br>Barbara Kittay<br>Defendant's Attorney |

**THE DEFENDANT:**

☑ pleaded guilty to count(s)    1 of the Information filed on July 6, 2012.

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

**FILED**

**JUL 0 6 2016**

~~Clerk, U.S. District & Bankruptcy~~
Courts for the District of Columbia

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:2552A(a)(2) | Distribution of Child Pornography. | 3/5/2012 | 1 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is  ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

6/8/2016
Date of Imposition of Judgment

Signature of Judge

U.S. District and Bankruptcy Courts
for the District of Columbia
A TRUE COPY
ANGELA D. CAESAR, Clerk

By _____
Deputy Clerk

Richard J. Leon                U.S. District Judge
Name and Title of Judge

7/5/16
Date

AO 245B (Rev. 02/16) Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT: JAMES WENDELL BROWN
CASE NUMBER: 12-155 (RJL)

Judgment — Page __2__ of __6__

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

ONE HUNDRED AND FORTY (144) MONTHS ON COUNT ONE (1) WITH CREDIT FOR TIME SERVED.

☐ The court makes the following recommendations to the Bureau of Prisons:

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

50

Judgment—Page  4  of  6

DEFENDANT:  JAMES WENDELL BROWN
CASE NUMBER:  12-155  (RJL)

## ADDITIONAL SUPERVISED RELEASE TERMS

1.  The defendant shall notify the Clerk of Court for the U.S. District Court within thirty (30) days of any change of address until such time as the financial obligation is paid in full.

2.  Pursuant to 42 USC Section 14135a, for all felony offenses, the defendant shall submit to the collection and use of DNA identification information while incarcerated in the Bureau of Prisons, or at the direction of the Probation Office.

3.  The defendant shall comply with the Sex Offender Registration requirements for convicted sex offenders in any state or jurisdiction where he resides, is employed, carry on a vocation, or is a student.

4.  The defendant shall have no direct contact with minors (under the age of 18) without the written approval of the Probation Officer.

5.  The defendant shall not be employed, or volunteer, in any capacity that may cause him to come in direct contact with children, except under circumstances approved in advance by the supervisory Probation Officer.

6.  Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, the defendant shall submit to a search of his person, property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning unlawful conduct or a violation of a condition of supervision.

7.  The defendant shall participate in a program of sex offender assessment and treatment, as directed by the Probation Officer, until such time as he is released from the program. This assessment and treatment may include physiological testing such as polygraph to assist in planning, case monitoring, and supervision. At the direction of the Probation Officer, the defendant shall pay for all or a portion of any treatment program.

Pursuant to Rule 32.2(a) of the Fed. Rules of Crim. Proc., the defendant is ordered to forfeit a Toshiba Satellite A-665 laptop, S/N: 9A022382K.

The Probation Office shall release the presentence investigation report to all appropriate agencies in order to execute the sentence of the Court.

AO 245B (Rev. 02/13) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page  6  of  6

DEFENDANT:  JAMES WENDELL BROWN
CASE NUMBER:  12-155  (RJL)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $  100.00  due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B (Rev. xx/xx) Judgment in a Criminal Case
Attachment (Page 2) – Statement of Reasons

DEFENDANT: JAMES WENDELL BROWN
CASE NUMBER: 12-155 (RJL)
DISTRICT: District of Columbia

## STATEMENT OF REASONS

**IV. GUIDELINE SENTENCING DETERMINATION** *(Check all that apply)*

- A. ☐ The sentence is within the guideline range and the difference between the maximum and minimum of the guideline range does not exceed 24 months.
- B. ☐ The sentence is within the guideline range and the difference between the maximum and minimum of the guideline range exceeds 24 months, and the specific sentence is imposed for these reasons: *(Use Section VIII if necessary)*
- C. ☐ The court departs from the guideline range for one or more reasons provided in the Guidelines Manual. *(Also complete Section V.)*
- D. ☑ The court imposed a sentence otherwise outside the sentencing guideline system (i.e., a variance). *(Also complete Section VI)*

**V. DEPARTURES PURSUANT TO THE GUIDELINES MANUAL** *(If applicable)*

- A. **The sentence imposed departs:** *(Check only one)*
  - ☐ above the guideline range
  - ☐ below the guideline range
- B. **Motion for departure before the court pursuant to:** *(Check all that apply and specify reason(s) in sections C and D)*
  1. **Plea Agreement**
     - ☐ binding plea agreement for departure accepted by the court
     - ☐ plea agreement for departure, which the court finds to be reasonable
     - ☐ plea agreement that states that the government will not oppose a defense departure motion.
  2. **Motion Not Addressed in a Plea Agreement**
     - ☐ government motion for departure
     - ☐ defense motion for departure to which the government did not object
     - ☐ defense motion for departure to which the government objected
     - ☐ joint motion by both parties
  3. **Other**
     - ☐ Other than a plea agreement or motion by the parties for departure
- C. **Reasons for departure:** *(Check all that apply)*

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ | 5K2.1 | Death | ☐ | 5K2.12 | Coercion and Duress |
| ☐ | 5H1.1 | Age | ☐ | 5K2.2 | Physical Injury | ☐ | 5K2.13 | Diminished Capacity |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ | 5K2.3 | Extreme Psychological Injury | ☐ | 5K2.14 | Public Welfare |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ | 5K2.4 | Abduction or Unlawful Restraint | ☐ | 5K2.16 | Voluntary Disclosure of Offense |
| ☐ | 5H1.4 | Physical Condition | ☐ | 5K2.5 | Property Damage or Loss | ☐ | 5K2.17 | High-Capacity, Semiautomatic Weapon |
| ☐ | 5H1.5 | Employment Record | ☐ | 5K2.6 | Weapon | ☐ | 5K2.18 | Violent Street Gang |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ | 5K2.7 | Disruption of Government Function | ☐ | 5K2.20 | Aberrant Behavior |
| ☐ | 5H1.11 | Military Service | ☐ | 5K2.8 | Extreme Conduct | ☐ | 5K2.21 | Dismissed and Uncharged Conduct |
| ☐ | 5H1.11 | Charitable Service/Good Works | ☐ | 5K2.9 | Criminal Purpose | ☐ | 5K2.22 | Sex Offender Characteristics |
| ☐ | 5K1.1 | Substantial Assistance | ☐ | 5K2.10 | Victim's Conduct | ☐ | 5K2.23 | Discharged Terms of Imprisonment |
| ☐ | 5K2.0 | Aggravating/Mitigating Circumstances | ☐ | 5K2.11 | Lesser Harm | ☐ | 5K2.24 | Unauthorized Insignia |
| | | | | | | ☐ | 5K3.1 | Early Disposition Program (EDP) |

- ☐ Other Guideline Reason(s) for Departure, to include departures pursuant to the commentary in the Guidelines Manual: *(see "List of Departure Provisions" following the Index in the Guidelines Manual.) (Please specify)*

- D. **State the basis for the departure.** *(Use Section VIII if necessary)*

AO 245B    (Rev 02/16) Judgment in a Criminal Case
Attachment (Page 4) -- Statement of Reasons    Not for Public Disclosure

DEFENDANT:  JAMES WENDELL BROWN
CASE NUMBER:  12-155  (RJL)
DISTRICT:    District of Columbia

# STATEMENT OF REASONS

## VII.   COURT DETERMINATIONS OF RESTITUTION

A.  ☑    Restitution Not Applicable.

B.  Total Amount of Restitution: $ _____

C.  Restitution not ordered: *(Check only one)*

1.  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

2.  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

3.  ☐  For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

4.  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. §§ 1593, 2248, 2259, 2264, 2327 or . 3663A, restitution is not ordered because the victim(s)'(s) losses were not ascertainable (18 U.S.C. § 3664(d)(5))

5.  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. §§ 1593, 2248, 2259, 2264, 2327 or 3663A, restitution is not ordered because the victim(s) elected to not participate in any phase of determining the restitution order (18 U.S.C. § 3664(g)(1)).

6.  ☐  Restitution is not ordered for other reasons. *(Explain)*

D.  ☐    **Partial restitution is ordered for these reasons** *(18 U.S.C. § 3553(c))*:

## VIII.  ADDITIONAL BASIS FOR THE SENTENCE IN THIS CASE *(If applicable)*

Please see the transcript of the sentencing for a complete discussion of the reasons for the upward variance. This defendant sexually abused his two granddaughters continuously from the ages of two and a half to five. He also sexually abused his *own* daughter continuously between the ages of three and five. He was caught by the undercover officer looking for access to another child between the ages of three to eight to engage in this same conduct with. Hands on sexual abuse of extremely young children, let alone over such a sustained period of time, is very rare and very concerning. The defendant's pattern of sexual abuse was extreme and egregious and the five-level enhancement pursuant to USSG 2G2.2 did not adequately reflect the seriousness and frequency of the sexual abuse, the young age of the victims, and the abuse of trust by someone who was supposed to be protecting his own daughters and granddaughters. Moreover, this defendant was permitted to resolve his conduct in two other jurisdictions with his plea here. Based on his own admissions the Court believes he would have received a much more severe sentence in those two districts combined than is reflected in the guideline enhancement used in the calculation here. All in all this horrific conduct must be deterred and punished more fully than the guideline range provides. Moreover the public needs to be protected from this predatory conduct for more time than the guideline range provides.

Defendant's Soc. Sec. No.:    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

Date of Imposition of Judgment
6/8/2016

Defendant's Date of Birth:    8/17/1961

Signature of Judge
Richard J. Leon    U.S. District Judge

Defendant's Residence Address:
incarcerated

Defendant's Mailing Address:
same as above

Name and Title of Judge
Date Signed    7/5/16

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 12-155 (RJL)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **JAMES WENDELL BROWN** | : | |
| | : | |
| **Defendant.** | : | |

**NOTICE OF APPEAL**

**Name and address of appellant:**          James Wendell Brown

**Name/address of appellant's attorney:**   **Barbara E. Kittay
11140 Rockville Pike
Suite 100-284
Rockville, MD  20852**

**Offense:**  18:2252A(a)(2), ACTIVITIES RE MATERIAL CONSTITUTING/
CONTAINING CHILD PORNOGRAPHY; Distribution of Child Pornography

**Concise statement of judgment or order, giving date, and any
sentence:**  Re-sentenced (on remand) to One Hundred Forty-Four
(144) months incarceration, followed by Two Hundred Forty (240)
months supervised release.

**Name of institution where now confined, if not on bail:**

**I, the above-named appellant, hereby appeal to the United States
Court of Appeals for the District of Columbia from the above-
stated judgment.**

| | |
|---|---|
|    **6/17/16**    |   **James Wendell Brown**   |
| Date | Appellant |

| | | | |
|---|---|---|---|
| **CJA, NO FEE** | **Yes** |   **/s/  Barbara E. Kittay**   | |
| **PAID USDC FEE** | **No** | Attorney for Appellant | |
| **PAID USCA FEE** | **No** | | |

Does counsel wish to appear on appeal?  Yes
Has counsel ordered transcripts?        No
Is this appeal pursuant to the 1984 Sentencing Reform Act?  Yes



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Docket No. CR12-155 |
| | : | (RJL) |
| Plaintiff, | : | |
| | : | June 19, 2013 |
| | : | |
| v. | : | 12:00 p.m. |
| | : | |
| JAMES WENDELL BROWN, | : | |
| | : | |
| Defendant. | : | |

. . . . . . . . . . . . . . . .

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          ARI REDBORD
                            U.S. Attorney's Office
                            555 4th Street, NW
                            Washington, DC 20001

For the Defendant:          LAURA QUINT
                            Federal Public Defender
                            624 Indiana Avenue, NW
                            Washington, DC 20004

Court Reporter:             PATTY ARTRIP GELS, RMR
                            Official Court Reporter
                            Room 4700-A, U.S. Courthouse
                            Washington, D.C. 20001
                            (202) 962-0200

2

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S

 2          COURTROOM DEPUTY:  Your Honor, calling criminal case

 3   number 12-155 the United States of America v James Wendell

 4   Brown.  The Defendant is present in the courtroom, your Honor.

 5   Counsel, please approach the lectern and identify yourselves for

 6   the record.

 7          MR. REDBORD:  Good afternoon, your Honor, Ari Redbord

 8   for United States.

 9          THE COURT:  Welcome back.

10          MS. QUINT:  Good afternoon, your Honor, Laura Quint on

11   behalf of Mr. Brown.

12          THE COURT:  Welcome back.  We are here, counsel, today

13   to do a redo, a do-over.  As the record would reflect certainly,

14   the parties agreed after the last plea -- after the plea was

15   taken that a particular calculation enhancement, which is a

16   substantial one, it is a four point enhancement, was not really

17   appropriate based on the facts as the parties know the facts to

18   be in the case to apply in this case.

19          So obviously the Court felt in an abundance of caution

20   that the Plea Agreement should be redrafted with that agreement

21   and understanding memorialized unlike it was in the original

22   Plea Agreement and that we go through the Rule 11 colloquy yet

23   again, just in an abundance of caution to make sure the record

24   is squint with both parties' agreement and understanding of what

25   the facts are and what the facts will support.
```

4

```
1        So this is all being done in an abundance of caution,

2   but I think in the long run, this is the safest course for every

3   one involved.  So with that preamble -- and is that your

4   understanding as well, Miss Quint?

5        MS. QUINT:  Yes, your Honor, and that this plea would

6   supercede the previous plea.

7        THE COURT:  Right.  Mr. Redbord, is that consistent

8   with your understanding as well?

9        MR. REDBORD:  Yes, your Honor.

10       THE COURT:  All right. THE COURT:  Hold on a second.

11  Let me get my plea script here  if I have it.  Hold on a second

12  everyone.

13       (Pause.)

14       THE COURT:  While I am waiting for my law clerk to

15  return, let me ask counsel this question.  The Plea Agreement

16  has been reconstituted and has been signed in a new original

17  form; is that correct?

18       MR. REDBORD:  Yes, sir.

19       MS. QUINT:  Yes, your Honor.

20       THE COURT:  And the Statement of the Offense which is

21  incorporated by reference into the Plea Agreement has been

22  resigned with today's date as well?

23       MR. REDBORD:  Yes, sir.

24       MS. QUINT:  Yes.

25       THE COURT:  And that wasn't changed though?  There was
```

1    no need to change the Statement of the Offense, was there?

2          MR. REDBORD:  Correct, no need.

3          THE COURT:  No. So that's verbatim the same as the

4    original one that we previously did a Rule 11 colloquy on.  And

5    the Plea Agreement has just simply been amended to change the

6    Guideline calculation from 34 months -- now, this is the agreed

7    upon Guideline calculation between the parties.  The Court has

8    to do its own independent evaluation as the Plea Agreement

9    obviously provides, but the parties have an agreed Guideline

10   calculation including acceptance of responsibility which is a

11   three credit reduction of a 30-month total which is a Guideline

12   sentencing range of 97 to 121 months, correct?

13         MS. QUINT:  The 30 offense level.

14         THE COURT:  The 30 offense level, right, which has a

15   range of 97 to 121 months.

16         MR. REDBORD:  Yes.

17         THE COURT:  Very good.  So that's the new version which

18   we are going to use today.  All right.  Miss Quint, is your

19   client ready to proceed?

20         MS. QUINT:  Yes.

21         THE COURT:  He can come up and be sworn.

22         (Defendant sworn.)

23         THE COURT:  Very good.  Mr. Brown, welcome back.  I

24   understand from Miss Quint that you are willing to and prepared

25   to enter a guilty plea to this new amended Plea Agreement and

1    Statement of the Offense; is that correct?

2        THE DEFENDANT: Yes, sir.

3        THE COURT: Now, I just need to ask you, as you know

4    from having done this before, I need to ask you certain

5    questions do ensure you understand your rights, to ensure that

6    your plea is a voluntary plea.  If you don't understand any of

7    my questions at any time, don't hesitate to ask me to stop.  You

8    can ask any question you would like of either Miss Quint or

9    myself or both of us, and we will do our best to get you an

10   answer to your question.  Okay?

11       THE DEFENDANT: Thank you.

12       THE COURT: Now, I remind you as I must that you are

13   under oath.  The answers you give to the Court's questions could

14   be used against you in a prosecution for perjury or making false

15   statements if you don't answer truthfully.  You understand that,

16   right?

17       THE DEFENDANT: Yes.

18       THE COURT: Does counsel for either side have any

19   question as to the Defendant's competence to enter a plea at

20   this time?

21       MS. QUINT: No.

22       MR. REDBORD: No.

23       THE COURT: Do you feel competent to go forward, Mr.

24   Brown?

25       THE DEFENDANT: Yes.

```
 1          THE COURT:  Are you the influence of any drugs or

 2   alcohol or any narcotics, anything that could cause you to have

 3   clouded judgment or fail to understand these proceedings?

 4          THE DEFENDANT:  No, sir.

 5          THE COURT:  Based on the representation of the

 6   Defendant and counsel and based on the Court's own observation

 7   of the Defendant, the Court finds him fully competent and

 8   capable of entering an informed plea.

 9          Now, as I understand it, you wish to enter a plea to

10   one count of distribution of child pornography in violation of

11   18 U.S. Code Section 2252A (a)(2).  Have you had an adequate

12   time and opportunity to discuss this case with your attorney?

13          THE DEFENDANT:  Yes, sir, I have.

14          THE COURT:  Are you satisfied with your attorney's

15   representation of you?

16          THE DEFENDANT:  Yes, sir, I am.

17          THE COURT:  Now, let me just go over quickly your

18   constitutional rights involved here.  First of all, do you

19   appreciate that under the Constitution and laws of the United

20   States you are entitled to a trial by jury on the charge

21   contained in the Information?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  And you also understand that if there were

24   a trial, you would be presumed to be innocent, the Government

25   would be required to prove you  guilty by competent evidence
```

1    beyond a reasonable doubt?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  All right.  Furthermore, if there were a

4    trial, witnesses for the Government would have to come to Court,

5    testify in your presence, and your attorney could cross-examine

6    those witnesses, object to any evidence offered by the

7    Government and offer evidence on your behalf.  Do you understand

8    that?

9            THE DEFENDANT:  Yes, sir.

10            THE COURT:  All right.  Furthermore, if there were a

11    trial, you would have a right to testify but also would have a

12    right not to testify and no inference or suggestion of guilt

13    could be drawn from the fact that you chose not to testify.  Do

14    you understand that?

15            THE DEFENDANT:  I understand.

16            THE COURT:  Furthermore, if I accept your plea, you

17    will be waiving all of these rights and there will be no trial

18    and I will enter a judgment of guilty.  Do you understand that?

19            THE DEFENDANT:  Yes, I do.

20            THE COURT:  Of course, you understand, do you not, that

21    you will also be waiving your right against self-incrimination

22    since you must acknowledge your guilt in order for me to accept

23    your plea?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT: Okay.  Now, the offense to which you are

**63**

1    pleading guilty is a felony offense.

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  If I accept your plea, you will not only be

4    found guilty of that offense, you may be deprived of certain

5    valuable civil rights such as the right to vote, the right to

6    hold public office, the right to perform certain jobs both in

7    the public and private sectors and the right to serve on a jury

8    and the right to possess any kind of a firearm.  Do you

9    understand that?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Now, where were you born, Mr. Brown?

12        THE WITNESS:  Alexandria, Virginia.

13        THE COURT: How many years of schooling did you have?

14        THE DEFENDANT:  14.

15        THE COURT: So you understand all of these rights I have

16   gone over with you?

17        THE DEFENDANT: Yes, sir.

18        THE COURT: And you still want to go forward with the

19   plea; is that correct?

20        THE DEFENDANT: Yes, sir, I do.

21        THE COURT: Now, Miss Quint, by any chance do you have a

22   copy of the Information?

23        MS. QUINT:  I do, your Honor.

24        THE COURT:  Let me ask you a few brief questions about

25   this, Mr. Brown.  Have you seen this document before?

1          THE WITNESS:  Yes, sir, I have.

2          THE COURT: Have you had a chance to review it and

3     discuss it with your counsel?

4          THE DEFENDANT: Yes, sir.

5          THE COURT: Do you waive reading of the Information,

6     Miss Quint?

7          MS. QUINT:  Yes, your Honor, we waive formal reading.

8          THE COURT: Let me just ask you this.  This is the

9     document, of course, that sets forth the charge of one count of

10    distribution of child pornography in violation of 18 U.S. Code

11    Section 2252A (a)(2).  You have reviewed it, you have discussed

12    it with your counsel.  Would it be fair to say that you

13    understand the charge against you?

14         THE DEFENDANT: Yes, sir, I do.

15         THE COURT: And would it also be fair to say that your

16    counsel has discussed with you and described for you the maximum

17    possible penalty for this particular offense?

18         THE DEFENDANT:  Yes, sir, she has.

19         THE COURT: Which is in this case 20 years? Do you

20    understand that?

21         THE DEFENDANT: Yes, sir.

22         THE COURT:  There is also a mandatory minimum of five

23    years of imprisonment for this type of offense.  Do you

24    understand that?

25         THE DEFENDANT: Yes, sir.

1      THE COURT: Miss Quint, do you agree that that's what

2  the law provides?

3      MS. QUINT:  Yes, your Honor.

4      THE COURT: And Mr. Redbord, do you agree to that?

5      MR. REDBORD:  Yes.

6      THE COURT: Very good. Now, there is also a provision of

7  a possible fine of $250,000 or twice of the pecuniary gain or

8  loss pursuant to 18 U.S. Code Section 3571 D,  an order of

9  restitution and an obligation to pay any applicable interest or

10  penalties on fines or restitution that are not timely made, and

11  a supervised release term of between five years and life

12  pursuant to 18 U.S. Code Section 3583 K.  Do you understand that

13  to be additional possible --

14      THE DEFENDANT: Yes, sir.

15      THE COURT:  -- possible punishment, okay.  Of course,

16  the Court will not be able to determine the exact sentence

17  that's applicable in your case until  a Presentence Report has

18  been completed which you and your counsel and the Government's

19  counsel will all have an opportunity to review, evaluate and

20  challenge any legal or factual conclusions.  Do you understand

21  that?

22      THE DEFENDANT: Yes, sir.  There will be an additional

23  one?

24      THE COURT:  No, this is the Presentence Report that is

25  prepared in all of these cases prior to --

66

1          THE DEFENDANT:  We have already done --

2          MS. QUINT:  I think you are asking if there will be an

3     additional I think.

4          THE DEFENDANT:  An additional Presentence Report.

5          THE COURT:  There will only be one.

6          THE DEFENDANT:  Okay.

7          THE COURT: You only have to do one.

8          THE DEFENDANT: Okay.

9          THE COURT: When we are done today, we will order it to

10    be done and it usually takes about 90 days.

11          MS. QUINT:  It was done already.

12          THE COURT:  It has already been completed?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Then we won't need an additional one.

15          THE DEFENDANT:  That's what I was referring to.

16          THE COURT: Good.  Thank you for that clarification.

17    Now, under some circumstances you may challenge a sentence by

18    the Court on the grounds of reasonableness.  You understand

19    that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT: Parole has been abolished in the Federal

22    system.  So if you are sentenced to prison, you will not be

23    released on parole.

24          THE DEFENDANT: Yes, sir.

25          THE COURT: Now, Miss Quint, I am going to hand you the

1   revised originals of the Plea Agreement and Statement of the

2   Offense.  If you could put those in front of Mr. Brown, I would

3   appreciate it.

4           MS. QUINT:   Yes, sir.

5           THE COURT:  Let's start with the Plea Agreement.  Mr.

6   Brown, have you seen this revised version of the Plea Agreement?

7           THE DEFENDANT:  Yes, sir.  I have.

8           THE COURT:  All right. And is that your signature on

9   the last page acknowledging that you accept the terms and

10  conditions of this Plea Agreement?

11          THE DEFENDANT:  Yes, sir, it is.

12          THE COURT:  And that you understand the terms and

13  conditions of it?

14          THE DEFENDANT: Yes, sir.

15          THE COURT:  And is that your signature, Miss Quint, on

16  that page as well indicating that you discussed it with him?

17          MS. QUINT:  It is, your Honor.

18          THE COURT:  Thank you very much.  Now, I am going to

19  ask -- well, while I have that in front of you, I think you also

20  have the Statement of the Offense there, Miss Quint.  Is that

21  correct?

22          MS. QUINT:  Yes, your Honor.

23          THE COURT:  And that's incorporated by reference into

24  the Plea Agreement, is it not?

25          MS. QUINT:  Yes.

1          THE COURT:  And turning to that just for a moment, Mr.

2    Brown, have you seen this document as well, the Statement of the

3    Offense?

4          THE DEFENDANT:  Yes, sir, I have.

5          THE COURT:  This one has not been changed.  It hasn't

6    been revised, isn't that correct, Miss Quint?

7          MS. QUINT:  That's correct, there are no changes.

8          THE COURT:  No changes.  And you have had a chance to

9    review that and discuss that with your counsel, right?

10         THE WITNESS:  Yes, sir, I have.

11         THE COURT: Is that your signature on the last page

12    acknowledging that is a fair and accurate description of your

13    conduct here?

14         THE DEFENDANT: Yes, sir, it is.

15         THE COURT: Miss Quint, your signature appears there as

16    well, does it not?

17         MS. QUINT:  It does.

18         THE COURT:  Now, let me ask Miss Quint to briefly

19    describe the terms of the Plea Agreement, especially the revised

20    portion and listen carefully and I will have a few brief

21    questions for you when she is done.

22         MS. QUINT:  Yes, your Honor.  As the Court indicated,

23    Mr. Brown is pleading guilty to one count of distribution of

24    child pornography in violation of 18 U.S. Code 2252A(a)(2).  He

25    understands that the mandatory minimum sentence is five years

1  and that the statutory maximum sentence is 20 years.

2          We have reviewed and revised the applicable -- what we

3  believe -- what the parties believe are the applicable and

4  appropriate Guidelines in this case and Mr. Brown understands

5  that with a criminal history category of one and an adjusted

6  offense level of 30, the parties' understanding is that the

7  Guidelines will be 97 to 121 months.

8          Mr. Brown understands that the sentence is up to the

9  Court and that the Guidelines are only one consideration that

10  the Court will take into account along with the 3553(a) factors.

11          Mr. Brown knows he can ask for a sentence below the

12  Guidelines, but that the Guideline -- in terms of appeal, he can

13  only appeal his sentence if the Court departs upward from the

14  Guidelines or imposes a sentence higher than the statutory

15  maximum.

16          Mr. Brown understands that restitution will be

17  mandatory and imposed if a victim is found to exist in these

18  cases.

19          He understands the rights he is waiving, the right to a

20  trial and all the attendant rights as well as the right to be

21  indicted.  And this is the complete agreement, your Honor. I

22  don't think there is anything particularly complicated -- sex

23  offender registration.  He understands that for a minimum of

24  25 years up to life, he will have to register under the Sex

25  Offender Registration and Notification Act anywhere he lives,

```
 1    works or studies.
 2            THE COURT:  And with regard to the Guideline
 3    calculation, it is clear in the agreement, is it not, that the
 4    Court has to do its own independent evaluation?
 5            MS. QUINT:  Absolutely, your Honor. Mr. Brown
 6    understands that.
 7            THE COURT:  All right, Mr. Brown, you have heard Miss
 8    Quint's summary of the terms of the Plea Agreement. Of course,
 9    you have already acknowledged reviewing it and discussing it
10    with her, but would it be fair to say that that's consistent
11    with your understanding of it?
12            THE DEFENDANT:  Yes, sir, it is.
13            THE COURT:  Very good.  Do you have any questions that
14    you would like to either ask her or the Court about the Plea
15    Agreement, or do you feel that you understand it and don't have
16    any questions?
17            THE DEFENDANT:  I fully understand, your Honor.
18            THE COURT:  Very good.  Has anyone threatened you or
19    forced you in any way  to enter a plea in this case?
20            THE DEFENDANT:  No, sir.
21            THE COURT: Has anyone made any specific prediction or
22    promise to you as to what your exact sentence in this case will
23    be?
24            THE DEFENDANT: No, sir.
25            THE COURT: You understand, don't you, that the sentence
```

1 will be up to the Court alone but only after a Presentence

2 Report has been completed which you and your counsel will have a

3 chance to challenge in any way as well as the Government to

4 challenge any factual or legal conclusion?  You understand that?

5    THE DEFENDANT:  Yes, sir.

6    THE COURT:  Very good.  I am going to ask the

7 Government to many come up and give a brief summary of the

8 evidence is the case had gone to trial.  You can have a seat

9 with your counsel over there and listen carefully, and I will

10 have you back up in a couple minutes.

11    THE DEFENDANT:  Thank you.

12    THE COURT:  Thank you very much.  All right.  Mr.

13 Redbord.

14    MR. REDBORD:  If this case had gone to trial, the

15 Government would have proven beyond a reasonable doubt that on

16 or about March 5, 2012, the Defendant made contact with an

17 undercover officer on a predicated social network site

18 frequented by individuals that have a sexual interest in

19 children.

20    The Defendant was -- the Defendant stated that his

21 preference was for young children quote "3 to 8 best, love them

22 flat and smooth" end quote.  Brown further stated quote "small

23 enough to pick up and do as I please.  They don't say no and if

24 they do, I can cover their mouths and do it anyway" end quote.

25    When the UC inquired if Brown had "any experience,"

1    Brown responded, "I used to enjoy my granddaughter but she was

2    taken from me a year ago. I only got her to do oral on me. Her

3    grandma was always too close to do any more."

4    Brown added that he quote "started mine at

5    two-and-a-half training her. At three and half she could deep

6    throat me, she had no gag reflection. I used her mouth until

7    five when she was taken from me."

8    At approximately 1:30 p.m. on March 5th the Defendant

9    and the UC shifted their online conversation to Yahoo Instant

10    Messenger. During the course of that online chat, Brown noted

11    that it had been approximately one year since he had engaged in

12    sexual acts with his granddaughter. Brown also noted that he

13    missed it more than you can dream.

14    As the online exchange continued, Brown sent the UC

15    three images of child pornography. The first image sent by

16    Brown depicted a close up view of a female vagina that appears

17    to be of a child under the age of 18. When the UC asked if the

18    image depicted how your granddaughters looked, Brown replied,

19    "yes, but that is not her."

20    The second image sent by Brown depicted two

21    prepubescent children masturbating an adult male penis. The

22    third image sent by Brown depicted two prepubescent children

23    both nude with an adult male with one performing oral sex on the

24    adult male's penis and the other kissing the adult male on the

25    mouth.

1    After sending the third image Brown stated quote, "I

2  loved that little mouth tight around that cock" end quote.

3    In discussing his granddaughter again, Brown noted that

4  she would only suck me.  I was never alone long enough to do

5  anything more.  When asked if he ever ejaculated, Brown

6  responded quote "not in her.  Her grandma was always in the next

7  room."  End quote.  He also explained quote "my granddaughter

8  could deep throat me.  She had no gag reflection.  Every time I

9  could, I would pull it out and she would just run up and take it

10  in her little mouth."

11    During the course of the investigation the Government

12  learned that Brown was under investigation for sexual abuse

13  charges in Fauquier County, Virginia involving his

14  granddaughters  ages 7 and 4.

15    In a statement to Fauquier County authorities, one

16  grandchild stated that the Defendant made her sit on his lap on

17  multiple occasions while Brown moved his body back and forth and

18  side to side effectively rubbing his clothed penis on her

19  buttocks on many occasions and rubbed his hands on her unclothed

20  buttocks on one occasion.

21    In the course of their investigation, Fauquier County

22  also learned that on at least one occasion an eyewitness walked

23  in on one grandchild at the time straddling Brown.  Specifically

24  an adult eyewitness stated that she observed Brown laying in a

25  bed with the child sitting on his bed straddling him.  They were

1    face-to-face and the child wearing a dress was leaning on

2    Brown's stomach. Brown's hands were on the child's buttocks.

3          In the course of the investigation of this case, the

4    Government also learned of allegations of sexual abuse involving

5    Brown's biological daughter age six at the time of the

6    allegations.

7          The child alleged that this would happen when she was

8    approximately three years old. Brown concedes that the

9    Government could prove the abuse set forth above by clear and

10    convincing evidence.

11          THE COURT: All right. And the summary you have just

12    provided to Court essentially is contained in the Statement of

13    the Offense that's incorporated by reference in the Plea

14    Agreement, is it not, counsel?

15          MR. REDBORD: That is correct.

16          THE COURT: Very good. Thank you very much.

17          MR. REDBORD: Thank you.

18          THE COURT: You can come back up, Miss Quint, with your

19    client.

20          MS. QUINT: Your Honor, if I may, I should add that

21    part of the plea that I was summarizing earlier is that Fauquier

22    County has declined prosecution for any pending cases in light

23    of the enhancements provision in this plea.

24          THE COURT: Very good. Thank you for pointing that

25    out. That's consistent with the Government's understanding as

1    well?

2         MR. REDBORD:  Yes, your Honor.

3         THE COURT:  Very good.  So focusing back on the

4    Statement of the Offense portion of the colloquy, Mr. Brown, you

5    have heard the description that's been provided by the

6    Government here and, of course, you have already acknowledged

7    reading the Statement of the Offense and signing it as a fair

8    and accurate statement; but would it be fair to also say that

9    the summaries you have just heard it is a fair and accurate

10    description of your conduct here?

11         THE DEFENDANT:  Yes, sir, it is.

12         THE COURT:  So you are pleading guilty because you are

13    in fact guilty; is that right?

14         THE DEFENDANT:  Yes, sir, I am.

15         THE COURT:  And you are doing so voluntarily; is that

16    right?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  All right.  Now, do you have any questions

19    you would like to ask either Miss Quint or myself before I

20    accept your plea recognizing that once I accept it, I am not

21    likely to allow you to withdraw it?  So if you have any

22    questions for her or for the Court or both of us, this would be

23    the time to ask them.  Do you have any questions?

24         THE DEFENDANT:  No, sir, I do not.

25         THE COURT:  All right.  Do you want to go toward with

```
 1    your plea; is that right?

 2              THE DEFENDANT:  Yes, sir, I do.

 3              THE COURT:  Very good.  Well, it is the Court's finding

 4    that you know of your rights under the Constitution and in

 5    particular your right against self-incrimination, your right to

 6    a trial by jury, and the Court finds that you have voluntarily

 7    chosen to waive those rights.  The Court finds that you are

 8    aware of the maximum possible punishment of the offense in

 9    question as well as the mandatory minimum of five years for the

10    offense in question to which you are pleading guilty.

11              The Court also finds that your plea is a knowing and

12    voluntary plea supported by an independent basis in fact as to

13    each of the essential elements of the offense.  So I will accept

14    your plea and enter a judgment of guilty to one count of

15    distribution of child pornography in violation of 18 U.S. Code

16    Section 2252  A (a)(2).

17              The written Presentence Report I believe has been

18    prepared so we will not need to have to wait for that to be

19    completed, and I think at this point the only thing left to do

20    is set a sentencing date in the near future.  I want to make

21    sure the parties have had a chance to make the appropriate

22    modifications to their Sentencing Memorandum as a result of

23    these changed circumstances since the last time we got together.

24              So let me ask counsel, have you had a chance do that

25    yet or do you need a brief period of time to do that?
```

1          MR. REDBORD:  We can do at -- least the Government can

2     do that relatively quickly.  I would defer to defense counsel in

3     terms of timing.

4          MS. QUINT:  Your Honor, I think our request would

5     remain the same so I only need a short amount of time to amend

6     certain portions of the memorandum.

7          THE COURT:  Okay.  Today is Wednesday.  When you say a

8     short time, could you get it in by the end of the week or maybe

9     Monday would be better?

10         MS. QUINT:  The end of the week is fine, your Honor.

11         THE COURT:  End of the week is fine.  Would that work

12    for the Government as well?

13         MR. REDBORD:  That's fine for the Government.

14         THE COURT:  All right. So why don't you both have your

15    amended Sentencing Memorandum in by Friday, close of business

16    this Friday which is the 21st; and then we will set the

17    sentencing for next week if that will work for counsel's

18    schedule.  I don't know if you have trials or anything going on

19    next week, but I was thinking about doing it next Thursday

20    morning if that will work.

21         MS. QUINT:  I have a sentencing at 9:30 Thursday

22    morning.

23         THE COURT:  Do you think it should be over by, say,

24    11:30?

25         MS. QUINT:  Yes, your Honor.  It will probably be over

78

24

```
 1    by 10:30.

 2              MR. REDBORD:  I have one set at 10 o'clock that

 3    morning.

 4              THE COURT:  So that -- how about in the afternoon?

 5              MS. QUINT:  That's fine.

 6              MR. REDBORD:  That would be fine.

 7              THE COURT:  Would that be okay? All right.  So how

 8    about 3 o'clock? Well, I take that back.  I just noticed the

 9    thing I have at 2:30 will take a little  longer than a half

10    hour.  I don't know -- let me go back to Wednesday morning.  How

11    about Wednesday morning at 11:30?

12              MS. QUINT:  That's fine, your Honor.

13              MR. REDBORD:  That's good.

14              THE COURT:  We will do it Wednesday the 26th 11:30 for

15    the sentencing.  All right.  And then I will get your sentencing

16    memos this Friday and that will be fine.  All right.  Any

17    questions, issues, anything that needs to be addressed at this

18    point, Miss Quint?

19              MS. QUINT:  No, your Honor.  Thank you.

20              THE COURT:  Anything for the Government?

21              MR. REDBORD:  No, your Honor.  Thank you.

22              THE COURT:  All right, counsel.  Thank you for getting

23    everything put together and revised, and we will see you next

24    week.

25              THE DEFENDANT:  Thank you.
```

1              THE COURT:  All right.

2              (Whereupon, at 12:30 p.m., the proceedings were

3       concluded.)

1                   CERTIFICATE OF REPORTER

2

3         I, Patty A. Gels, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8

9    _____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1             **IN THE UNITED STATES DISTRICT COURT**

2               **FOR THE DISTRICT OF COLUMBIA**

3    UNITED STATES OF AMERICA        .
                         Plaintiff,  .

4    vs.                             .    Docket No. CR 12-155
                                     .

5    JAMES WENDELL BROWN             .    Washington, D.C.
                                     .    Wednesday, June 26, 2013

6                 Defendant.         .

7    . . . . . . . . . . . . . . . . .

8                 TRANSCRIPT OF SENTENCING HEARING

9            BEFORE THE HONORABLE RICHARD J. LEON

10              UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Government:   Ari B. Redbord, AUSA
                           U.S. ATTORNEY'S OFFICE

13                         555 Fourth Street, NW
                           Washington, D.C. 20530

14

15   For the Defendant:    Lara Quint, AFPD
                           FEDERAL PUBLIC DEFENDER

16                          SERVICE OF THE DISTRICT OF COLUMBIA
                           625 Indiana Avenue, NW, Suite 550

17                         Washington, D.C. 20004

18

19   Court Reporter:   Cathryn J. Jones, RPR
                       Official Court Reporter

20                     Room 6521, U.S. District Court
                       333 Constitution Avenue, N.W.

21                     Washington, D.C. 20001

22

23   Proceedings recorded by machine shorthand, transcript
     produced by computer-aided transcription.

24

25

**P R O C E E D I N G S**

1

2          THE DEPUTY CLERK:  Your Honor, calling Criminal

3    Case 12-155, the United States of America versus James

4    Wendell Brown.  The defendant is present in the courtroom,

5    your Honor.  The probation officer present for these

6    proceedings is Ms. Lustig.  Counsel, please approach the

7    lectern and identify yourselves for the record.

8          MR. REDBORD:  Good morning, your Honor.  Ari

9    Redbord for the United States.

10          THE COURT:  Welcome.

11          MS. QUINT:  Good morning, your Honor.  Lara Quint

12    on behalf of Mr. Brown.

13          THE COURT:  All right, counsel, we're here for a

14    sentencing in this case as you are well aware.  The Court's

15    practice is to hear from the government first and defense

16    counsel second.  And if the defendant would like to address

17    the Court he's welcome to do so after his counsel has

18    presented her argument, so Mr. Redbord.

19          MR. REDBORD:  Thank you, your Honor.  The

20    government made a number of arguments in its various filings

21    in this case particularly the last revised memorandum in aid

22    of sentencing.  I would rely on most of those points in my

23    allocution here today.

24          The government understands that this Court takes a

25    number of factors into considering when deciding a sentence

1    for this defendant; including the nature of the offense, the

2    need to provide a just punishment, deterrence, protection of

3    the public, need for correctional treatment and the

4    sentencing guidelines.  I intend to focus on all of these

5    elements in some respects.  I will focus primarily on the

6    fact that the government believes this defendant does

7    present a danger to the community, and a period of

8    incarceration of 97 months is justified on all these

9    factors, but particularly based on that danger.

10            THE COURT:  Now there's no contest, is there,

11   between the parties as to what the appropriate guideline

12   range is here?

13            MR. REDBORD:  I do not believe so.

14            MS. QUINT:  That's correct, your Honor.

15            THE COURT:  Ninety-seven to 121, I believe is the

16   range?

17            MR. REDBORD:  Yes, sir.

18            THE COURT:  And is the government advocating for

19   the low end of the range because it's required to do so

20   under the plea agreement?

21            MR. REDBORD:  Your Honor, the government is --

22            THE COURT:  That's a pretty easy question.

23            MR. REDBORD:  Yes, sir.

24            THE COURT:  Are you required to do so under the

25   terms of the plea agreement?

1           MR. REDBORD:  I believe that the government agreed

2    under the plea agreement to not oppose a sentence at the low

3    end of the guideline.

4           THE COURT:  Not oppose?

5           MR. REDBORD:  Yes, sir.

6           THE COURT:  That was part of the deal the

7    government gave.  At the time the government entered into

8    the deal initially it was a higher guideline range, wasn't

9    it?

10          MR. REDBORD:  That is correct.

11          THE COURT:  What was the range then?

12          MR. REDBORD:  I believe it was 151 months.  It was

13   the low end of the guidelines.

14          THE COURT:  151 to --

15          MR. REDBORD:  188.

16          THE COURT:  I think that's right, but let me just

17   double check it.  This is an unusual set of circumstances I

18   think it would be fair to say.  The government made a deal

19   based on a premise, a deal where they were going to commit

20   themselves to a 151 request.  Turned out upon closer

21   reflection or closer inspection, whatever, that the

22   enhancement, five-point enhancement actually wasn't in the

23   judgment of the government as well as defense counsel, too I

24   might add, because the plea had already been accepted.  The

25   plea was accepted at the 151.

```
1            The government now all of a sudden with the five

2   credit enhancement taken away changes dramatically the

3   guideline range.  I mean a 151 to 188 range is a lot

4   different than a 97 to 121.

5            So the government had a case that it believed was

6   worth 151, which is not 13 years in jail, 13 and change, to

7   all of sudden -- and again, required to go at the low end of

8   the range by its own agreement.  So now having a guideline

9   range low end 97 roughly to 121 so low end would be probably

10  the high nineties to the low hundreds, something like that.

11           It's a very different situation.  And at the point

12  in time that that occurred, that that change occurred the

13  authorities in Virginia had already committed, had they not?

14           MR. REDBORD:  Correct.

15           THE COURT:  To foregoing prosecution for his

16  conduct in Virginia.  And that's part of the deal, too, is

17  it not?

18           MR. REDBORD:  Yes, sir.

19           THE COURT:  They're locked in as well.  You're

20  locked in and they're locked in.  Of course, the Court isn't

21  locked in.

22           How can you justify 97 months?  I mean you're

23  locked in to it under the plea agreement, but this Court

24  isn't.  There's a pattern and practice of abusing children

25  over a long period of time, and I'm talking about little
```

1    children, real little children, three years old, five years

2    old, four years old.  Government made the deal.  Protecting

3    the public is my number one responsibility.

4            You're in a hard position here, Mr. Redbord.  Your

5    office made the deal.  You're its champion.  You want to

6    explain to me how under the 3553 factor 97 months adequately

7    protects the public?

8            MR. REDBORD:  Your Honor, despite the controversy

9    that swirls around the guidelines for child pornography

10   cases.  The government --

11           THE COURT:  Controversy, I'm dealing with each

12   case as an individual.

13           MR. REDBORD:  Sure.  And the government believes

14   that the guidelines are appropriate in this case and take in

15   to account the defendant's conduct.  And at the time when we

16   were talking about the four-point enhancement which took him

17   to 151 months the government's position was that hey look,

18   if we have sadistic or masochistic photos here then that's a

19   range that would reflect that he should be sentenced at a

20   range that would reflect that.

21           And I think when the government not only dug into

22   the photos, but dug into the case law about what is sadistic

23   or masochistic and came to the conclusion that essentially

24   you needed either truly sadistic, and I know we've talked

25   with the Court about this before or masochistic conduct.  In

1   other words, dictionary definition wise or conduct that

2   would cause pain.  The government took the position that

3   oral sex no matter how terrible would not necessarily cause

4   the pain that would rise to the level of that enhancement.

5          So the government's justification in terms of what

6   the appropriate sentence is in this case is that look, when

7   he was facing that enhancement the guidelines were right

8   there and they were right to give him that range.  Without

9   that enhancement the guidelines are still right and he

10  should be sentenced under the guidelines but to a lower

11  range because he wasn't responsible for that conduct.

12          THE COURT:  What else you got?

13          MR. REDBORD:  As the Court is aware and I probably

14  don't have to make these arguments as strongly even what the

15  Court just said that this isn't just a child pornography

16  case.

17          THE COURT:  This is a very unusual case.  I've

18  been on this court 11 years.  This is not a normal case.

19  This is a case that has not only interstate transmission of

20  these images.  We get some of those.  Those carry a five

21  year mandatory minimum, as you well know.  We get some of

22  those.  Then we get some cases where there's predatory

23  conduct i.e., people looking to get access to infants,

24  children and looking for others to help them get to them.

25  We get that here, too.

88

```
 1              We've had some of those cases, too.  But here we
 2    have not only those two elements we have a third.  We have
 3    an admitted track record of molesting children by his own
 4    admission.  He's acknowledged.  Government's got the
 5    evidence.  And based upon his acknowledgment of that the
 6    authorities in Virginia both federal and state have taken a
 7    pass in this case in their state, in their jurisdiction.
 8    They have authority to bring their own prosecutions over
 9    there.  They've taken a pass.
10              So here we have all three combined.  This is a
11    very unusual case.  We don't get these cases very often,
12    thank God.  I'm not looking for them that's for sure, but we
13    have all three here.
14              MR. REDBORD:  What you have is a child pornography
15    element that the Court is well aware of.  We have the chat
16    which I know the Court referenced when they talked about
17    someone who is looking for a child, a child having, an
18    individual as a sexual interest in a child.
19              THE COURT:  I call that predatory conduct.
20              MR. REDBORD:  Yes, sir.
21              THE COURT:  I think that's a fair characterization
22    of it.  And they're out there in the Internet looking for
23    people to help you get access to minors.  That's predatory
24    conduct.
25              MR. REDBORD:  And third, obviously you have this
```

1    hands-on element.

2            THE COURT:  And that's rare actually.  We don't

3    get a lot of that, so it's all three in one place.

4            MR. REDBORD:  From the child pornography

5    standpoint, and frankly part of the reason the government

6    originally agreed and is asking today for the low end of the

7    guidelines is it was a relatively small amount from just the

8    child pornography standpoint.

9            THE COURT:  I understand.

10           MR. REDBORD:  And I'm sure you'll hear a lot more

11   about that from Ms. Quint.  That's not sort of my job here.

12   But I would say that the images that were distributed were

13   nonetheless serious.  A closeup view of a female vagina that

14   appears to be of a child under the age of 18.  Two

15   prepubescent female children masturbating an adult male

16   penis, and two prepubescent female children both nude with

17   an adult male with one performing oral on the adult male's

18   penis and the other kissing the adult male on the mouth.

19           Again, three images but relatively, relatively

20   serious and certainly showing sexual acts as opposed to just

21   --

22           THE COURT:  Prepubescent children?

23           MR. REDBORD:  Yes, sir.  And frankly those three,

24   the fact that there are only three images went into a number

25   of things; obviously, the government's consideration in

1    terms of the low end of the guidelines, the government's

2    allocution today, but it's also taken into account by the

3    guidelines.  And this is another reason the government

4    believes that the guidelines are appropriate in this case.

5           This defendant was not as many defendants are

6    enhanced by that essentially the number of images

7    enhancement.  There are -- well, certainly you have the

8    hands-on aspects of this case.  There are also victims in

9    the child pornography piece of this.  I just wanted to point

10   that out.

11          THE COURT:  That is true.

12          MR. REDBORD:  While there are no known victims in

13   this case.  Essentially, we were not able to identify the

14   children in these photos, I've spent quite a bit of time

15   reading victim impact statements in these sorts of cases.

16   And you really can't, I can't extenuate it enough how

17   victimized the children in these cases are essentially.

18          THE COURT: Many of the children in these kinds of

19   photographs, I'm not saying in this particular one because I

20   don't know, so I can't make a decision based on that.  I

21   have had cases in the past where one of the photographs the

22   government was able to determine who that person was.  And

23   once that person's image is captured and put on the Internet

24   it's there forever.  They're a victim forever.

25          MR. REDBORD:  That's right.  And what you hear

1    about is certainly these children are victims of the abuse

2    whether it was a father or brother or uncle.  But then it

3    sometimes is even worse because when they are in public they

4    are constantly thinking about hey, in a grocery store or

5    mall who has seen this image of me.  It's something that

6    really I think hurts them to live a normal life.  I would

7    just ask the Court to take into consideration of the victims

8    of the child pornography which is completely separate from

9    anything else in this case.

10         The government does believe as I mentioned early

11    that this defendant poses a danger to the community.  And I

12    think that danger is extremely evident in the chat in this

13    case.  What we see here is an individual who not only has an

14    interest in children, but brags about his own, the sexual

15    conduct with his granddaughters, and also talks about

16    wanting to meet other kids.  Essentially looking out there

17    wishing that he could find that opportunity.

18         At one point in the chat, he writes, "I used to

19    enjoy my granddaughter but she was taken from me a year ago.

20    I only got her to do oral on me.  Her grandma was always too

21    close to do anymore."  He added that he quote, "Started mine

22    at two and a half training.  At three and a half she could

23    deep throat me.  She had no gag reflex.  I used her mouth

24    until five when she was taken from me."

25         And then shortly thereafter he stated quote, "I'm

1    looking for a new playmate.  Is she petite or a big girl?"

2    Referring to the purported child that the undercover was

3    talking about.  During the chat the defendant noted there it

4    had been one year since he engaged in sexual acts with his

5    granddaughter and that he quote, "Missed it more than you

6    can dream."

7            Obviously, all the factors are important here, but

8    for the government the focus is on the fact that this

9    individual still presents a real danger to the community,

10   and believes a sentence of 97 months would put him away for

11   a long enough period of time where he may not present that

12   same danger hopefully with treatment.

13           Your Honor, I do think that in these cases and I

14   could not agree more strongly with your Honor, that these

15   cases should be viewed on a case-by-case basis.

16           THE COURT:  They are all unique.

17           MR. REDBORD:  They are all unique.

18           THE COURT:  They are all different.  And it's a

19   little distressing frankly to see some of the cases cited in

20   the pleadings that actually are just simply, they are not

21   even analogous -- they're not even remotely analogous.  One

22   of my former cases that's analogized just cited here that is

23   so different than this case that it's almost diametrically

24   opposite pole of this case.

25           MR. REDBORD:  Well, given that I will go through

93

1    this relatively quickly then.  But I do want to point out

2    that there are factors here under the guidelines that the

3    government would ask the Court to consider.  Obviously, the

4    pattern of activity would be the most important.  And I

5    believe that obviously the defendant has essentially agreed

6    to that enhancement.  But the fact that the material

7    involved a prepubescent minor, while many -- below the age

8    of 12.

9             While many of these cases involved that age range

10   and the government certainly appreciates that, the three

11   images that were distributed in this case all contained

12   prepubescent female children.  The Court mentioned the cases

13   that were cited.  And just very quickly the government

14   agrees.  I did not find a case in that group that involved

15   any kind of hands on or pattern of activity.  And I may be

16   wrong about that but I don't think so.

17             There is one case that --

18             THE COURT:  We did a search in our district.  Last

19   hands-on sentencing that Judge Robertson retired from our

20   court gave 121 months.

21             MR. REDBORD:  I had a case before Judge Bates

22   about a month or month and a half ago with the most similar

23   facts that I could at least analogize to this case.

24             THE COURT:  A sentencing?

25             MR. REDBORD:  A sentencing, yes.  And essentially

1   this was a defendant that -- the case is *United States*

2   *versus Gregory Loreng*.  And in that case the defendant had a

3   prior conviction in New Jersey, and that case involved the

4   sexual abuse of his adopted sister.

5           THE COURT:  A minor?

6           MR. REDBORD:  Minor.  And the Court applied the

7   pattern of activity enhancement in that case or at least

8   found that it was appropriate.  And I believe all the

9   parties agreed that it was appropriate.  And while I believe

10  that his guidelines were higher than Mr. Brown's the Court

11  gave him, I believe 97 -- well, 97 months in that case.  And

12  the government believes that its request is consistent.  And

13  the facts of that case are again not perfect but compared

14  to these other cases relatively close.

15          THE COURT:  Was that images over the Internet?

16          MR. REDBORD:  Images over the Internet.

17          THE COURT:  Was there predatory behavior as well?

18          MR. REDBORD:  Yes, sir.  To be clear actually he

19  pled to possession of child pornography.  Whereas, Mr. Brown

20  is pleading to distribution, so he was not facing a

21  mandatory minimum in that case.  But probably the most

22  analogous piece to that and I think the piece that troubled

23  Judge Bates the most, was that he did brag about his

24  hands-on behavior with the undercover which is very,

25  obviously very similar in this case.

```
 1              And what we you know --

 2              THE COURT:  Were there state authorities that

 3    passed on prosecuting and federal authorities passed on

 4    prosecuting in that case?

 5              MR. REDBORD:  No, sir.  He had a prior conviction

 6    in New Jersey for that in that case, so it's certainly

 7    different.  And again --

 8              THE COURT:  He wasn't level one?

 9              MR. REDBORD:  That's right.

10              THE COURT:  He was not?  That might account in

11    part for why the guidelines range was different.

12              MR. REDBORD:  The guideline was certainly

13    different.  And again, I always argue that we shouldn't

14    analogize so I apologize for doing it.  But if we're ever

15    going to analogize this is as close as this list of cases

16    that I could come up with.

17              THE COURT:  They are all very different.  Each

18    case is unique.

19              MR. REDBORD:  Your Honor, finally, I think the

20    memorandum and this argument here has given the Court

21    everything that the government has.  But I do want to be

22    clear on one thing especially given the shift in the

23    government's recommendation.  I think there are times when

24    prosecutors come before the Court and ask for the low end of

25    the guidelines knowing the Court will sort of go below that
```

1   --

2              THE COURT:  That was in the deal.

3              MR. REDBORD:  Or because that was some sort of

4   obligation.

5              THE COURT:  Yeah, that's in the deal.

6              MR. REDBORD:  I'm asking for it because it was

7   agreed to, but also frankly because the government does

8   believe it's a just sentence in this case; given the

9   conduct, given the defendant's age and given the other

10  factors that I know the Court is going to consider.  Based

11  on all that the government asks for 97 months.  Thank you.

12             THE COURT:  Thank you.  Ms. Quint.

13             MS. QUINT:  Good afternoon, your Honor.  Before I

14  start I just wanted to acknowledge -- I'm sure the Court has

15  noticed but to note for the record that Mr. Brown's family

16  members, several of his family members are here.  I don't

17  know if the Court would permit it but Connie Brown, Mr.

18  Brown's mother, has asked me if she would be allowed to say

19  a few words at the end of our allocutions.

20             Your Honor, before I go into my allocution, and

21  again as the prosecutor did I will rely largely on the

22  arguments made in my memorandum.  I would like to take a

23  minute to address our part of the deal and what in terms of

24  the state of Virginia's and the federal authorities in

25  Virginia's decline in prosecution.  That was part of the

```
1    deal, but our -- what we gave up so to speak was the right

2    to have a mini trial which was Mr. Brown's original intent.

3    The right to contest that five-point enhancement, and that

4    five-point enhancement is significant.

5              Mr. Brown, of course, did not necessarily think he

6    would win that mini trial.  I did not advise him he would.

7    But without going too much into detail into the Virginia

8    cases --

9              THE COURT:  What do you mean when you say "a mini

10   trial".

11             MS. QUINT:  In other words, he would have fought

12   that five, if we had not -- in exchange for the state of

13   Virginia promising not to prosecute him, we promised not to

14   try to bring witnesses of our own or not to object to that

15   enhancement.  Obviously, there was no guarantee at all from

16   it that we would win that battle but --

17             THE COURT:  What if that battle would have waived.

18             MS. QUINT:  Well, we have objected in that PSR and

19   we have objected in court, and we would have asked the Court

20   for permission to bring documents; the fact that the facts

21   at issue have been under the attention of Farquhar County at

22   least certainly for several years.  One initial case was

23   thrown out.  So Mr. Brown conceded that by clear and

24   convincing evidence this Court could find that the

25   enhancement applied.  But it was by no means guaranteed as a
```

```
 1   matter of law that he would not have prevailed had he fought

 2   that enhancement.

 3        So this is --

 4        THE COURT:  This is quickly becoming a case study

 5   and all the reasons why the federal sentencing guidelines

 6   are not really the great system.  Look what this is evolving

 7   in to, the lawyers fighting and arguing and settling cases

 8   based on their ability to determine, to fight over whether

 9   an enhancement applies instead of focusing on the conduct in

10   question.

11        MS. QUINT:  Well the conduct, but also your Honor,

12   whether anything would have actually happened in Virginia.

13   And I'm certainly, I'm not an expert in those facts.  I have

14   read the case file.  I know that there was an initial

15   hearing that Mr. Brown attended where the evidence was

16   thrown out because the witnesses were not found to be

17   reliable.  I'm not here to make -- he agreed to that

18   concession and to that enhancement and we're certainly not

19   fighting it.  It's a significant enhancement.  It's a

20   five-point enhancement.

21        But I merely wanted to say for the record that the

22   government certainly gave us something in the plea making

23   but we also, we also had our part that we thought we were

24   doing which was to not --

25        THE COURT:  I tell you what, I mean obviously,
```

1    obviously from the point of view of the guidelines even if

2    you put aside the enhancement issue for a moment the three

3    points that he's getting for acceptance of responsibility,

4    all right, is taking his guideline range down from 135 to

5    168 down to 97 to 121, that's a very large difference.   If

6    this case had gone to trial and he had been convicted his

7    guideline range would have been at least 135 to 168.

8              MS. QUINT:   Right.

9              THE COURT:   So that alone is a huge advantage to

10   him.

11             MS. QUINT:   It is, your Honor, but he saved all of

12   us resources.   He admitted right away his responsibility.

13   He cooperated when he was arrested and spoke to the agents

14   and admitted his responsibility, agreed to meet with them

15   later if they had questions.   So I think that is entirely

16   appropriate.   And in fact our entire system would probably

17   crumble if there were benefits to individuals pleading

18   guilty under the guidelines.

19             As far as the comparisons I made in my memorandum

20   not only do I acknowledge that each case is individual, but

21   I also hope in this case the Court will view Mr. Brown as an

22   individual.   They were merely made to make the point that

23   they all relied on 2(g)2.2 the same guideline.   And whether

24   or not the other facts were exactly analogous.   The point

25   was the guidelines in this area have been viewed with

1    skepticism.  And even the most recent case that Mr. Redbord

2    mentioned the *Loreng* case where Judge Bates sentenced the

3    individual to 97 months.

4         I believe, if I'm correct, I think that was one of

5    my colleagues that itself was a departure downward from the

6    guidelines.

7         THE COURT:  Look, I want to be very clear on this.

8    I am not making any decisions based on what happened in

9    Judge Bates' courtroom because I don't know enough about

10   that case.  I haven't studied that case.  Mr. Redbord by his

11   own admission was giving me his best recollection of things

12   that happened months ago.  You're giving me your best

13   recollection -- you weren't counsel of record I take it?

14        MS. QUINT:  I wasn't counsel of record.

15        THE COURT:  So I want to be very clear about this.

16   Whatever sentence I'm giving in this case is not going to be

17   in any way impacted by, influenced by or have anything to do

18   with what happened in Judge Bates' courtroom three months

19   ago.  I don't know anything about that case.  In fact, this

20   is the first I've ever heard of this case.  When Mr. Redbord

21   raised it I had never even heard of the case.  So I want the

22   record to be clear about that.

23        MS. QUINT:  I understand, your Honor, but for the

24   record I need to note that one purpose of sentencing from

25   our prospective is to avoid unwarranted disparity from one

1    courtroom to the next.  We don't want our clients --

2              THE COURT:  That's a 3553 factor.  That is

3    absolutely a 3553 factor.

4              MS. QUINT:  And so my only point, I hope I did not

5    mislead was not to exactly analogize, but to make the point

6    that in this community of judges the 2(g)2.2 guideline has

7    been viewed with less deference.

8              THE COURT:  It starts with disparity of sentencing

9    that starts with analogous of the judge who does the

10   sentencing.  And this judge has a track record.

11             MS. QUINT:  I'm aware, your Honor.

12             THE COURT:  Over a period of time of rejecting

13   time and time again the government's request as too low.

14   There are a number, a number of sentencings this Court has

15   done in these kinds of cases, not exactly like this kind of

16   case because this case has I mentioned earlier is unique

17   because of all three things collecting at once.  But this

18   Court on a number of occasions in the last three, 4, 5 years

19   rejected the government's request.

20             And many times the government's request was either

21   the product as Mr. Redbord's situation would have it a deal

22   which the government made which required the government to

23   not oppose the low end of the guideline range.  Or in a

24   number of instances the government was making a departure

25   request based on quote cooperation by the defendant where

102

1    the defendant brought to the government's attention drug

2    dealer, methamphetamine, I can think of in at least two

3    cases.

4              In another case it was not only a meth dealer, but

5    it was a sexual predator in a different investigation.  In

6    all three of those cases as I recall it the government's

7    request was not only not granted it wasn't even close to

8    what the Court gave.  So I have a track record that I try to

9    be consistent with.  I haven't had time nor do I micro

10   manage slash study what my colleagues are doing in this

11   courtroom.  God knows this is tough enough to do just for

12   me.  This is tough enough.

13             So I am concerned about making sure that there

14   isn't an unfair disparity of sentencing by me between and

15   among the defendants that I'm responsible for, recognizing

16   that each of these cases is unique.  Each case is unique.

17             MS. QUINT:  I think there's also, your Honor,

18   public policy argument for there not being an unwarranted

19   disparity, not any disparity but unwarranted one depending

20   on which courtroom a defendant happens to walk into and I

21   think that was obviously part of the purpose of the

22   sentencing guidelines.

23             THE COURT:  Oh, yeah, that's is what the

24   architects of the guidelines.  Justice Breyer was the chief

25   architect.  That's what he had in mind.  We're going to make

103

```
 1   sure judges in every part of the country whether it's
 2   Mississippi or Chicago Los Angeles or Boston they are going
 3   to come out with the same sentencing in the same range.
 4   That's what they thought.  It was a grand experiment.
 5   Unfortunately, the Supreme Court said it is not binding on
 6   federal judges who have the real responsibility to study the
 7   case individually and the history of the defendant
 8   individually.  Thank goodness the Supreme Court did that.
 9         MS. QUINT:  As the Court knows that was certainly
10   the position of our office.  We did not want mandatory
11   guidelines.
12         THE COURT:  When I started my career my hands were
13   tied.  Thank God for *Booker*.
14         MS. QUINT:  I can't argue with that, your Honor.
15   The question comes down to in this particular case given
16   Mr. Brown's age, his health conditions, the fact that he's
17   never had an encounter of the criminal justice system like
18   this before, what purposes of sentencing other than
19   punishment which is one very legitimate purpose would be
20   filled by a sentence of eight years as the government is
21   requesting and 72 months that we are requesting.
22         THE COURT:  Well, let me save you a lot of time.
23   There is no chance, zero, that I would vary below the
24   guideline range, none.  You can focus your argument on how a
25   low end of the guideline range sentence, how applying the
```

1   3553 factors would be a just factor.  You can straight with

2   that one.  I think you've already gotten the drift.  I don't

3   agree with Mr. Redbord's argument as to how it works, but

4   I'm willing to listen, have you take a shot at it because

5   after all that's your job.

6            MS. QUINT:  That is my job, your Honor.

7            THE COURT:  I don't see it at all at the moment.

8   Now maybe you can convince me that the low end of the range

9   applying those 3553 factors it makes sense but go ahead.

10           MS. QUINT:  I think there are several reasons.

11   Number one, it is consistent with the guidelines like them

12   or not the Supreme Court has said are reasonable, a

13   guideline sentence is reasonable.  Number two, Mr. Brown

14   pled guilty as soon as he could, as soon as there were

15   several pleas in this case.  He indicated an acceptance of

16   responsibilities immediately.

17           THE COURT:  For which he's receiving a huge

18   benefit as I just mentioned.  The difference between 135 and

19   168 range versus 97 to 121.  That is a huge difference.

20           MS. QUINT:  And it is an appropriate we would

21   submit.  There were three images.  This is the first case

22   I've had where the 600 images or more does not apply.  Three

23   to 600 is a huge difference as well, and that warrants

24   consideration.

25           THE COURT:  I don't know what cases you've been

1   getting, but I can tell you from the cases since I've been

2   getting since I've been on this court I don't think I've

3   ever had one, I don't think I've ever had one have 600

4   images.  I've had images in the 300 but I can't think of one

5   in the 600.

6           MS. QUINT:  I think I've always had it because

7   videos simply because of how long they are.  Almost all

8   videos count from my understanding for 600 or close to 600.

9   Mr. Brown did not distribute.  As the Court does not care

10  about what other judges are doing I was going to point out

11  that Judge Howell --

12          THE COURT:  Be careful now.  I didn't say that.

13          MS. QUINT:  The Court will not be bound --

14          THE COURT:  Don't misconstrue for the record what

15  I said.  I said I don't micro manage and study what they do.

16  Indeed, I don't even have a way to do that.  Do you realize

17  I don't even have a way to do that.  I don't have a

18  database.  You know what, I tried to get that data.  And

19  guess what I was told, the probation office stopped

20  accumulating that data back in ten, three years ago.  I

21  can't even get that data.  And the little data I could get

22  was very superficial.  I don't have a way of micro managing

23  slash studying what my colleagues do.  I didn't say I didn't

24  care what they did.  I mentioned that Judge Robertson had a

25  headline case and he gave 121 months.

1           Judge Robertson, you remember him, don't you?

2           MS. QUINT:  Of course?

3           THE COURT:  He's not exactly Judge Walton --

4           MS. QUINT:  No.

5           THE COURT:  -- if you get my drift.  If you get my

6    drift.

7           MS. QUINT:  I get the Court's drift, your Honor.

8    And I suppose we have an advantage because I see what my

9    colleagues are doing in being aware of what other judges are

10   doing.

11          THE COURT:  I understand the people in the Public

12   Defenders office share information when they should.  That's

13   their job.  Just like I would expect Mr. Redbord to be

14   knowledgable how this Court has dealt with prosecutorial

15   recommendations in the past, and how this Court has

16   regularly rejected in these kinds of cases.  Go ahead.

17          MS. QUINT:  I was going to mention, your Honor, in

18   terms of the commission, Judge Howell, who obviously is

19   still a commissioner recently departed from 210 to 262

20   months downs to 81 months.  There was no hands-on conduct.

21   However, I will get to how this relates to Mr. Brown.

22          An individual in France not only chatted with a 12

23   year, not a Detective Palchak character, but a 12 year old

24   had sent her pornographic images and had traveled to the

25   United States with a teddy bear to meet her.  Judge Howell

1    who is the commissioner, and is very aware of -- very

2    respectful of guidelines and very aware of the inherent

3    flaws in the base offense level itself for distribution

4    imposed a sentence of 81 months on that individual.

5         THE COURT:  Judge Howell has been on this court a

6    couple of years.  I don't know how many of these cases she's

7    had in those couple of years.  She's only been a judge for a

8    few years.

9         MS. QUINT:  I recognize that, your Honor.  We

10   found it interesting because of her role as a commissioner

11   in terms of the deference to the guidelines.

12        So I think -- and he had well over 800 images.  So

13   this goes back to Mr. Brown who had three images, who

14   ultimately did not travel.  We don't know whether he would

15   have or not.  I'm not claiming he wouldn't have, but he did

16   not.  And the crime for which he was charged and to which he

17   pled guilty was distribution.  And a 97-month sentence takes

18   into account the five-point enhancement as well as the other

19   appliable enhancements like them or not.  And we don't agree

20   with the two-point enhancement for the computer.  But that

21   takes, the 97-month sentence takes into account that

22   enhancement, so 97 months is consistent.

23        THE COURT:  You don't agree it applies?

24        MS. QUINT:  We agree it applies, your Honor.  It's

25   one of the --

```
 1              THE COURT:  You don't like it.  You just said a

 2    minute ago you don't like that, but you don't suggesting

 3    legally it doesn't apply?

 4              MS. QUINT:  No, absolutely.  But it's one of the

 5    examples why we think the guidelines in this case are --

 6    Congress had the intent to go after predators who used the

 7    speed of the Internet to distribute harmful images.  We

 8    don't see people distributing them by mail.  I think it

 9    applies, it's rather meaningless because it applies to

10    99 percent of these cases.  But sure, it applies.  And the

11    97 months takes that into account.  Mr. Brown as I mentioned

12    is older.  If the Court imposes 97 months he'll be over 60

13    when he's released from incarceration.

14              As far as the purposes of sentencing and one that

15    I heard the Court and the government focus on understandably

16    was protection of the public.  And given both the

17    registration requirements and the supervised release

18    requirements, I think a sentence over 97 months given those

19    other requirements would be more than sufficient, more than

20    necessary to comply with the purposes of sentencing.  So I

21    think the question really is what does the sentence of more

22    than 97 months accomplish other than punishment?

23              I think there can be stay away orders as part of

24    supervised release obviously if that's a concern.  I think

25    Mr. Brown has a, has chronic pulmonary disease, so the
```

1    nature of confinement for him has been more harsh than more

2    similarly situated defendants and will continue to be more

3    harsh just because of the physical struggles.

4            So for those reasons, your Honor, I was asking for

5    a lower sentence, but certainly we think 97 months would be

6    more than necessary to fulfill all the goals of punishment

7    in Mr. Brown's case.

8            THE COURT:  Okay.  I thought his mother wanted to

9    address the Court?

10           MS. QUINT:  Would the Court allow that, your

11   Honor?

12           THE COURT:  Yeah, if she wants to.

13           MRS. BROWN:  I am Connie Brown, Jim's mom.  First

14   of all, I don't hear.

15           THE COURT:  Okay.  I'll speak loudly.

16           MRS. BROWN:  My husband can't see anymore, I can't

17   hear.  Anyway, with Jimmy, I've written you a couple of

18   times so I don't want any repetitious but I don't remember

19   if I told you at the time of his arrest he'd been living

20   eight months in a rented room in his brother's house.  And

21   our family has always been close.  His siblings are close,

22   his sister.  So I know that he was angry, hurt, frustrated.

23           And when he was arrested, I guess it was about six

24   weeks he wrote to me, and he told me, "Mom, in spite of this

25   horrible place I'm glad I was arrested.  I don't know how I

1   got into the garage I was in but I hate that and it's not

2   me. I'm in church. I'm in a Bible study. I'm taking anger

3   management. And this is the best thing that could ever

4   happen to me."

5        It's been hard. We love him. He's a very

6   important part of our family. We bought a house out in the

7   middle of 5-acres of woods back in '93. And I'm not sure of

8   the year but '95, '96, he and his wife divorced and Jimmy

9   moved out. While he was there he took out a kitchen window,

10  put in a door, built us a deck all by himself. Couple years

11  later my husband went through his first colon cancer. Jimmy

12  was there. He built us a front porch, sunroom all glassed

13  in. Tiled the floor, put in a fan. Had a 6-foot wide swing

14  put in for his dad so his dad could take naps on the porch.

15       Meantime, like I said he's always been with his

16  brother, with his sister. Invite him to dinner, he'd be

17  there to help you cook. He's always been a giving person.

18  When his brother was in a near fatal accident on 66, Jimmy

19  was the one who took him to doctors. I don't how many

20  surgeries Fred's been through. Fred can tell you. I just

21  know we need him. He's always volunteered, but now with my

22  husband, six weeks ago he was -- two weeks ago he was

23  heating some oil, we had a grease fire.

24       My husband was always very active. Always a

25  fix-it man. Now I can't see. It's hard for him. He can't

111

```
 1   see his shade.  He can't cut his nails, none of that stuff,

 2   and we actually need Jimmy.  And not only do we love him,

 3   not only do we want to use him, but I think we need him more

 4   than a prison needs another inmate.

 5         I don't have Internet.  And as a matter of fact, a

 6   week ago I turned on the power strip and my computer blew

 7   up, so we don't have anything like that that he can have

 8   access to.  We can guarantee you that one of us would be

 9   with him 24, seven.  And we just as a family we're hoping

10   you'll consider and send him home.  And if he needs

11   counseling, whatever we're all for it.

12         And I thank you for your time.  Thank you.

13         THE COURT:  You're welcome, ma'am, thank you.  If

14   he'd like to address the Court he's welcome to.  Take your

15   time.

16         THE DEFENDANT:  I'd like to say again that I'm

17   sorry for what I did.  Sorry for my actions.  To my family,

18   my wife and her family, I'd like to apologize for the

19   suffering I've done, everything they've had to endure

20   because of me and my actions.  Ms. Quint, I want to thank

21   her for her guidance through all this.  Your Honor, this

22   Honorable Court and the marshal service, I thank you all for

23   your professionalism.

24         And as much as I do want to go home and help take

25   care of my parents I'm prepared for whatever sentence this
```

1    Court gives me.  Thank you.

2              THE COURT:  Well, you can stay right there,

3    Mr. Brown.  I don't know if your parents have been talking

4    to Ms. Quint or not that's frankly not my business.

5              THE DEFENDANT:  They have, your Honor.

6              THE COURT:  But obviously at some point she, I'm

7    sure told them that there's a mandatory minimum here of 60

8    months that the Court even if it wanted to couldn't get

9    around.

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  So you were going to prison for five

12    years under any scenario, any scenario.

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  And of course, the guideline range

15    which was recently amended because of the dispute that has

16    been now put aside is 97 to 121 months.  And 97, of course,

17    means eight years and change.

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  So you know, I don't know, I

20    appreciate your mother coming to speak on your behalf.  And

21    obviously, I appreciate the point she made about how your

22    family would really like you to be available to them sooner

23    rather than later and ideally right away.  And that's

24    perfectly understand, perfectly understandable under the

25    circumstances.  Perfectly understandable.

113

```
 1              But it's not of course consistent with the reality

 2      of the situation that the Court's presented with and that

 3      you're a part of under the circumstances.

 4              THE DEFENDANT:  Yes, sir.

 5              THE COURT:  There's been a lot of talk about the

 6      3553 factors that the Court is required by law, required, to

 7      look at and analyze in evaluating the sentencing guideline

 8      range and the appropriate sentence in the case.  Congress

 9      spoke years ago on this subject before the guidelines ever

10      came into existence frankly when it set 20 years as the

11      maximum, so they set a range essentially.

12              Guidelines came along, of course, at a later time

13      and came up with ranges within the 20 years based upon

14      circumstances and facts and factors that were identified by

15      the commission and provided initially as a mandatory

16      requirement for the Court and now ultimately the Supreme

17      Court has given us the discretion to consider them.  We must

18      actually consider them and evaluate them in light of the

19      3553 factors.

20              You know, I might not agree with Mr. Redbord on

21      everything, but there is no question I agree with him on one

22      thing and that is you are a danger to the public.  There's

23      just no question about that in my mind, zero.  No doubt.  My

24      highest responsibility in my mind is to protect the public.

25      It's my job to do that.
```

1          Now let's be clear about this, your pleading

2    guilty was to your benefit.  It was a smart decision on your

3    part.  I can assure you if you'd gone to trial and were

4    convicted not only would the range have been much, much

5    higher, but you know a failure to acknowledge responsibility

6    for one's conduct at least in this Court is a grounds for a

7    very high sentence over and above the guideline range here,

8    so let me be clear about that.  That was in your interest to

9    do that.  It was a smart decision on your behalf.

10          My highest concern, of course, is to protect the

11   public.  I must do that.  Punishment is also one of the

12   factors under 3553.  The conduct that you've engaged in here

13   is deserving of serious punishment, there's no question

14   about that either.  But there's another factor that wasn't

15   talked about much in the arguments before me that's also a

16   very important factor and that is deterrence.

17          And it's not just deterring you.  You're going to

18   be deterred because you're going to serve a jail time and

19   then you're going to be under a very strict supervision for

20   a long, long, long time.  Long time.  It's to deter others

21   from engaging in this kind of conduct.  And when I say "this

22   kind of conduct," let me be clear about it.

23          You heard me discuss it with Mr. Redbord and with

24   Ms. Quint this is not conduct we normally get around here.

25   We don't get a lot of cases like this.  Here we have the

1    Internet, interstate transmission of these images.  We have

2    that combined with what I've referred to as predatory

3    conduct i.e., reaching out to others to help them -- to use

4    them to help you find access to minor children.  And what

5    makes it even more unusual as a case there's actual, actual

6    abuse of children that occurred here.  And not just once,

7    over a period of time.

8            So if there ever was a case, ever among the cases

9    that I've sat.  And like I said a minute ago, I can't micro

10   manage you or do I know everything that all my colleagues

11   have done but I know the cases I've had.  There was a case

12   that required at a minimum the high end of the guideline

13   range if not a variance.  When I say variance, I mean a

14   variance upward not a variance downward.

15           There's just no chance to even from my point of

16   view that this is a case that would warrant a variance below

17   the guidelines.  It is just inconceivable.  You need to

18   understand this, Mr. Brown, your counsel was asking for the

19   moon in her sentencing memorandum and she's an advocate.

20   You know, I understand, people ask for the moon sometimes.

21   You know, your parents might not understand that, but I want

22   to make it clear to them, too.  You can ask for the moon but

23   that doesn't mean you're going to get the moon.

24           She's asking for something beyond comprehension.

25   You got such a good deal here that you've got to give

1    Ms. Quint credit for.  She got the government under the deal

2    to commit itself to not opposing a sentence at the low end

3    of the guideline range.  Now when they made the deal

4    initially they thought that was 151 months.  That was the

5    deal they thought they were getting.

6            They all talked.  Don't you think Mr. Redbord

7    hasn't been talking to those AUSAs in Virginia and those

8    Farquhar County folks.  Of course, they all talk with one

9    another.  And they ended up passing on prosecution,

10   prosecuting you in Virginia and in the state as well as

11   federal, they both passed as part of the deal here.  You got

12   the benefit of that.  And then it turned out you got another

13   benefit when the deal had to be restructured where it went

14   from a guideline range of 151 minimum to 97.  That's a huge

15   difference.

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Huge difference.  I give Ms. Quint

18   credit for that.  She got you a deal where they locked

19   themselves in to the low end of the range.  And then it

20   turned out the low end of the range was a lower range.  The

21   Court isn't bound by that nor should it be.  Nor should it

22   be.

23           Because I have to protect the public.  And I have

24   to make sure the punishment is just.  And I have to make

25   sure the deterrence not only of you and others will occur as

**117**

1    a result of the sentence.  I must also tell you I must give

2    a sentence that reflects the seriousness of the conduct.

3    This is serious conduct.

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  This is very serious conduct.  Of

6    course and other factors, you know, you get in there and get

7    the benefit of whatever assistance the prison system can

8    provide you in terms of dealing with your problem because

9    you have a problem.  There's no question about that either.

10           In my judgment, this is one of those unusual cases

11   that requires a variance upward.  In my judgment, 121 is not

12   enough.  A higher sentence is warranted here to reflect the

13   seriousness of your conduct, to punish you appropriately, to

14   protect the public and to deter others who may be similarly

15   inclined.  So I'm going to depart upward.  It's not really a

16   departure.  I've got to be careful what words I use because

17   that's the game we're playing now.

18           One forty-four, 12 years, that's eight years more

19   than the maximum.  It's 12 years that you will serve.  And

20   when you're through serving that you'll be under the

21   supervision of this Court for 20 years, 240 months.

22   Essentially you will be under this Court's supervision for

23   the rest of your life.  Because I won't live that long

24   probably, but the judge who inherits the case will.  And he

25   or she will make sure that you never do this again to any

1   child, relative or nonrelative.

2           You're going to be on a very, very close, short

3   leash.  We are not going to have children in this community

4   or anywhere in the United States victims of this kind of

5   criminal behavior.  You understand?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  It's the judgment of the Court that

8   you, James Wendell Brown, be hereby committed to the Bureau

9   of Prisons for a term of 144 months.  You're further

10  sentenced to serve 240 months of supervised release.  By the

11  way, for the benefit of your parents under the statute I

12  could have you supervised for life, but my sense is 20 years

13  is plenty, and to pay a hundred dollars special assessment.

14          Court finds you do not have the ability to pay a

15  fine, therefore waive imposition of the fine.  Special

16  assessment fee is due immediately and payable to the Clerk

17  or our court.  Within 30 days of any change of address you

18  shall notify the Clerk until such time your financial

19  obligation is paid in full.  You should make your payments,

20  special assessments and participation to the Bureau of

21  Prisons Inmate Finance Responsibility Program.

22          Within 72 hours of release from custody you shall

23  report in person to the probation office in the district to

24  which you are released.  While on supervision you shall not

25  possess a firearm or any other dangerous weapon, you shall

USCA Case #16-3076    Document #1636306    Filed: 09/09/2016    Page 124 of 178

1    not use or possess any illegally controlled substance, and

2    you shall not commit any other federal, state or local

3    crimes.  You shall also abide by the general conditions of

4    supervision adopted by U.S. probation.

5            DNA sample acquired, pursuant to 42 U.S. Code

6    Section 14135(a) for all felony offenses the defendant shall

7    submit to the collection and use of DNA identification,

8    information while incarcerated at the Bureau of Prisons or

9    at the direction of U.S. Probation.

10            Sex offender registration, you shall comply with

11   sex offender registration requirements as a convicted sex

12   offender from any state or jurisdiction where you reside or

13   employed or carry on a vocation.

14            Contact restriction, you shall have no direct

15   contact, no direct contact with minors under the age of 18

16   without the written approval of U.S. probation.

17            Employment restriction, you shall not be employed

18   or volunteer in any capacity that may cause you to come in

19   direct contact with children except under circumstances

20   approved in advance by your supervisory probation office.

21            Search, pursuant to the Adam Walsh Child

22   Protection Act of 2006, you shall submit to a search of your

23   person, property, house, residence, vehicle, papers,

24   computer or other electronic communication or data storage

25   devices or media and effects at anytime with or without a

1  warrant by any law enforcement or probation officer with

2  reasonable suspicion concerning unlawful conduct or a

3  violation of a condition of supervision.

4          Sex offender treatment assessment, you shall

5  participate in a program of sex offender assessment and

6  treatment as directed by U.S. probation until such time as

7  you're released from the program.  This assessment and

8  treatment may include; physiological testing such as

9  polygraph to assist in planning, case monitoring and

10 supervision.  At the direction of probation you shall pay

11 for all or a portion of any treatment program.  Pursuant to

12 Rule 32.2 of the Federal Rules of Criminal Procedure, you,

13 James Wendell Brown, are ordered to forfeiture a Toshiba

14 Satellite A-665 laptop SN 9A022382K.

15         Probation officer shall release the presentence

16 report to all appropriate agencies in order to execute the

17 Court's sentence.  Treatment agencies shall return the

18 presentence report to probation upon the defendant's

19 completion or termination for treatment.

20         You have a right to appeal the Court's sentence if

21 the period of imprisonment is longer than the statutory

22 maximum or the sentence departs upwards from the applicable

23 sentencing guideline range.  If you choose to appeal, you

24 must file an appeal within 14 days after the Court enters

25 judgment.  If you're unable to afford the cost of the appeal

121

```
 1    you may request permission from the Court to file an appeal
 2    without any cost to you.
 3           The Court will recommend you serve your time at a
 4    federal prison close as possible to your parents' home so
 5    that they can have the benefit of visiting with you whenever
 6    possible.
 7           Are there any questions for the government?
 8           MR. REDBORD:  No, your Honor.
 9           THE COURT:  Any questions for the defendant?
10           MS. QUINT:  No questions, your Honor, but comments
11    for the record.  Consistent with our objections the
12    presentence report we would object to the direct contact
13    provision in terms of it being too vague.  Does that means
14    if a minor is selling a ticket to an event and he wants to
15    attend -- we would object to all the language about direct
16    contact.  Because we do not want him to violate
17    unintentionally.
18           THE COURT:  I'll tell you what my recommendation
19    to you, Ms. Quint, would be this; when he gets out of prison
20    12 years from now you sit down with U.S. Probation if you're
21    still a Federal Public Defender or whoever succeeds in that
22    capacity and you work out that language with the Court.  I
23    may or may not still be a judge 12 years from now.  I don't
24    really know, but I can tell you this; at some point if
25    you've got a dispute or your office has a dispute as to how
```

1    vague this language is I'm sure it could get worked out with

2    probation and with the Court whoever is going to be the

3    judge at that time.

4          MS. QUINT:  Thank you, your Honor.

5          THE COURT:  I wouldn't, I don't think at this

6    point you know litigating language for supervision that's

7    not going to occur for 12 years I'm not so sure that makes a

8    lot of sense.  If you want to make your point for the record

9    you've made it for the record.

10          MS. QUINT:  I've made it, your Honor.  And I have

11    one more matter which is I was concerned by the Court's

12    mentioning repeatedly that Mr. Brown got a benefit by the

13    guidelines changing.  And I just wanted to know whether the,

14    in my view and I think the government's view at this point,

15    the initial guideline estimate of 151 to 188 was mistaken.

16    He did not qualify for that.  So in terms of him getting a

17    benefit, if anything, I think that the initial estimate was

18    wrong and that perhaps went into the Court's mind as him

19    having been given a benefit when in fact --

20          THE COURT:  We're going to play psychologist

21    today, Ms. Quint?

22          MS. QUINT:  Your Honor, I just, I just wanted the

23    Court to make a finding as to what the applicable guidelines

24    were.

25          THE COURT:  The Court made a finding.  The

1    guideline range is what the guideline range is agreed to

2    between the parties, 97 to 121.

3          MS. QUINT:  Thank you, your Honor.

4          THE COURT:  There's no dispute on that issue in

5    this record whatsoever.  However, for the benefit of the

6    Court of Appeals should it end up there, I was giving them

7    the benefit of the historical path that this case took,

8    starting with a deal that was made by the government where

9    the government believed that the appropriate range was 151

10   to 188, I think it was.

11         MS. QUINT:  That's right, your Honor.

12         THE COURT:  One eighty-eight.  The government made

13   that deal and so did the defense, and the Court took the

14   plea with a guideline range of 155 to 188.  And it was only

15   at the 11th hour and 58 minute when I was about to sentence

16   this defendant to a sentence within that range which the

17   government had bound itself to, in which the defense had

18   bound itself to, that I was informed that all of a sudden

19   no, no, no, there's a difference.  We've refigured it out.

20   We've got a whole new range.  And I was the one who said

21   well then we need to redo the whole plea.  We'll do the plea

22   all over again and I insisted on it.  And that's exactly

23   what we did.  Because it didn't make any sense to me to have

24   a set of pleadings inconsistent with what the new guideline

25   range was that the parties had determined was the

1    appropriate one under the circumstances.

2            Now when you made your argument today, Ms. Quint,

3    you said that you made a decision to forego you know

4    fighting that issue.

5            MS. QUINT:  Fighting the pattern of conduct issue.

6            THE COURT:  Right.  When you made the initial deal

7    you were foregoing challenging the enhancement.  That's what

8    you said.

9            MS. QUINT:  Right, and we did not challenge it.

10            THE COURT:  Right.  I didn't even know that until

11    you said that today.  Until you said that today I had no

12    idea because the Court isn't privy to plea negotiations.  I

13    didn't know that as part of your plea negotiation with

14    Mr. Redbord, you said well, we'll agree to the range 151 to

15    188, but we'll forego challenging.  We don't agree that that

16    four-point enhancement is applicable, but you know, we're

17    agree to that as the agreed upon guideline range for the

18    purposes of this plea agreement.  We'll forego it.  We won't

19    fight it.  So I mean you're the one who told me that.

20            MS. QUINT:  Right, that was the five point, the

21    pattern of conduct activity.

22            THE COURT:  So I'm getting a window into these

23    types of negotiations that I'm not privy to.  I didn't even

24    know about that.

25            MS. QUINT:  I raised it just to show the

1 | other side of --

2 | THE COURT: I don't know why you're -- obviously

3 | you're doing what you're doing for the benefit of your

4 | appellate counsel. I understand what you're doing right

5 | now, you're trying to better position your case, at least

6 | you think better position yourself for your appellate

7 | counsel. Because you now have the option to because the

8 | Court did a variance you have the option to appeal the

9 | Court's ruling. If I had given you a guideline range

10 | sentence 121, you couldn't appeal it.

11 | MS. QUINT: I'm aware of that, your Honor. I just

12 | had heard the Court say repeatedly that he had benefited

13 | from one plea to the next. And I just wanted to make clear

14 | that we believed the initial one was wrong and that would

15 | have been unfair to Mr. Brown.

16 | THE COURT: You didn't think it was wrong

17 | initially?

18 | MS. QUINT: I didn't --

19 | THE COURT: You agreed to it.

20 | MS. QUINT: I did, but we --

21 | THE COURT: You agreed to it. Your client agreed

22 | to it and I accepted the plea to it. So don't tell the

23 | record that you didn't agree to it. You agreed to that

24 | sentencing.

25 | MS. QUINT: Absolutely, your Honor. And it was my

1    mistake, but with further research and I believe after that

2    pleas have changed for other people in my office.  With

3    further research we determined that we did not believe that

4    oral sex met that requirement under the case law in

5    existence.  We absolutely agreed initially, and it was -- I

6    said it then and I'll say it now it was my mistake not to

7    realize until the last moment but it was my obligation when

8    I did realize it to make that argument to the government who

9    also agreed and has changed other pleas.

10            THE COURT:  But that dispute between the

11   government that you resolved with the government has nothing

12   to do with the guideline range, the sentencing level that I

13   pick, nothing to do with it.  I'm just stating the obvious

14   for the record here.

15            Your client got the benefit of acceptance of

16   responsibility.  And as it turned out he got the benefit at

17   least from the point of view of the arguments between the

18   counsel that you changed the guideline sentencing range by

19   virtue of further analysis of the documents here.  I'm just

20   stating the obvious.  Whether the range was 97 to 121 or 155

21   to 188, I mean he wasn't going to get a sentence from this

22   Court that was 121 or less not for this kind of conduct, too

23   serious.

24            So you've got your appellate record.

25            MS. QUINT:  I was --

1            THE COURT:  I have no doubt you're going to take

2    it upstairs.  You have any other questions, Ms. Quint?

3            MS. QUINT:  No, your Honor.

4            THE COURT:  You have any questions, Mr. Redbord?

5            MR. REDBORD:  No, your Honor.

6            THE COURT:  We stand in recess.

7            [Thereupon, the proceedings adjourned at 12:55

8            p.m.]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATE

 2         I, Cathryn J. Jones, an Official Court Reporter

 3   for the United States District Court of the District of

 4   Columbia, do hereby certify that I reported, by machine

 5   shorthand, the proceedings had and testimony adduced in the

 6   above case.

 7         I further certify that the foregoing 47 pages

 8   constitute the official transcript of said proceedings as

 9   transcribed from my machine shorthand notes.

10         In witness whereof, I have hereto subscribed my

11   name, this the 9th day of August, 2013.

12

13

14                          /s/_____
                            Cathryn J. Jones, RPR
15                          Official Court Reporter

16

17

18

19

20

21

22

23

24

25
```

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )    CR No. 12-155-RJL-1
                                 )
                                 )    Washington, D.C.
      vs.                        )    June 8, 2016
                                 )    3:00 p.m.
JAMES WENDELL BROWN,             )
                                 )
            Defendant.           )
_____)

TRANSCRIPT OF RESENTENCING HEARING
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          Ari B. Redbord
                             U.S. ATTORNEY'S OFFICE
                             555 Fourth Street, NW
                             Washington, D.C. 20530
                             (202) 252-7018
                             Ari.Redbord@usdoj.gov

For the Defendant:           Barbara E. Kittay
                             LAW OFFICES
                             OF BARBARA E. KITTAY
                             11140 Rockville Pike
                             Suite 100-284
                             Rockville, MD 20852
                             (301) 468-1817
                             bkittay@verizon.net

Court Reporter:              William P. Zaremba, RMR, CRR
                             Official Court Reporter
                             U.S. Courthouse
                             333 Constitution Avenue, NW
                             Room 6511
                             Washington, D.C. 20001
                             (202) 354-3249

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

2

```
 1               P R O C E E D I N G S
 2          DEPUTY CLERK:  All rise.  This Honorable Court is
 3  now in session.  The Honorable Judge Richard J. Leon
 4  presiding.  God save the United States and this Honorable
 5  Court.  Please be seated and come to order.
 6          (Defendant entered.)
 7          DEPUTY CLERK:  Your Honor, we have Criminal Action
 8  12-155, United States of America versus James Wendell Brown.
 9          Counsel, please approach the lectern and identify
10  yourself for the record.
11          MS. KITTAY:  Good afternoon, Your Honor.
12  Barbara Kittay for the defense, who's present.
13          THE COURT:  Welcome.
14          MR. REDBORD:  And good afternoon, Your Honor.
15  Ari Redbord for the United States.
16          THE COURT:  Welcome.
17          Well, we're here for resentencing.
18          The Court appreciates the defense's position, that
19  they get a right to argue again.  I had considered at one
20  point the possibility of just simply responding to the Court
21  of Appeals' concerns in a written opinion, but Ms. Kittay's
22  expressed the need and desire to rearticulate the appeal --
23  I mean, the argument, the sentencing arguments on behalf of
24  her client.
25          So I will treat this like a regular sentencing,
```

3

1    which my practice is to hear from Mr. Redbord first, the

2    government first, and then defense counsel, then the

3    defendant may address the Court.

4            Mr. Redbord.

5            MR. REDBORD:  Thank you, Your Honor.

6            I would ask the Court to incorporate the

7    memorandum in aid of sentencing that was filed in this case

8    when the defendant was originally sentenced, as well as the

9    record -- the extensive record at sentencing in the case,

10   and the arguments that the government made in support of its

11   request.

12           THE COURT:  You know, for reasons that I'm not

13   quite sure I understand, Mr. Redbord, maybe you don't

14   either, or maybe you do, I don't know, but we have a

15   document that's not for public disclosure called statement

16   of reasons that the Court fills out at the time of the J&C,

17   which essentially is provided to the federal Sentencing

18   Commission only and the Court of Appeals, for reasons that

19   I don't really understand, other than they may not

20   understand what the purpose of this document is, gave the

21   appearance that they weren't satisfied with the degree of

22   articulation in the statement of reasons as to why the Court

23   varied upward.

24           Of course, the easy answer to that question is

25   look at the transcript.  The Court set forth in the

4

1  transcript its reasoning.  But for reasons which

2  I'm not sure -- I still don't think I understand, they were

3  concerned about the lack of specificity in the statement of

4  reasons, so...

5      MR. REDBORD:  And, Your Honor, I really don't have

6  much to add to the original sentencing memorandum in this

7  case.

8      I would ask that, to the extent possible, the

9  Court could provide its reasoning.  I direct the Court to,

10  I think it's page 2 of the Court of Appeals decision, where

11  it asked the Court to consider the extent of the deviation

12  and ensure that justification is sufficiently compelling to

13  support the degree of the variance.  But, otherwise,

14  I really don't have anything to add to my original

15  allocution at the original sentencing in this case.

16      THE COURT:  I assume you will not disagree with

17  me, I shouldn't assume it, but I guess I owe you the

18  opportunity to disagree if you wish to.

19      We don't get a lot of cases around here where

20  there's actual touching prepubescent children, do we?

21      I've been here doing this 14 years.  I can think

22  of one other case.

23      MR. REDBORD:  Thankfully, we don't see as many of

24  those as other jurisdictions.

25      THE COURT:  I checked with Probation.  They say

5

1    it's very rare in this courthouse.  It's very rare to have a

2    pattern of touching, sexually abusing prepubescent children.

3    In this case, not only prepubescent, but five years old or

4    younger, five years old or younger.

5           Indeed, in the statement of the offense, the

6    defendant, in his own words, said, when asked by the

7    undercover officer, what he was looking for was a child

8    three to eight years old; isn't that right?

9           MR. REDBORD:  Correct.

10          THE COURT:  Three to eight.

11          I think the way he put it was, I love them flat

12   and smooth, quote; isn't that right?

13          That's what he was on the Web trolling for, a

14   three- to eight-year-old child, just like his granddaughters

15   who he sexually abused, right?  Couldn't hear you.

16          MR. REDBORD:  Correct.

17          THE COURT:  And his daughter, who he sexually

18   abused, all three of them were under the age of five, were

19   they not?

20          MR. REDBORD:  Correct.

21          THE COURT:  This is not a normal case, based on my

22   experience.  How about based on yours, is this a normal kind

23   of case?

24          MR. REDBORD:  This case certainly has different

25   aspects to it, yes, Your Honor.

6

```
 1              Your Honor, we see sort of --
 2         THE COURT:  You must be at the State Department
 3    instead of Department of Justice, Mr. Redbord.
 4         MR. REDBORD:  Your Honor, we see it.
 5         Look, I've been prosecuting these types of cases
 6    for the last three years --
 7         THE COURT:  I know you have.
 8         MR. REDBORD:  -- and we see variations on this.
 9    We see cases where individuals travel from other
10    jurisdictions into the District of Columbia to sexually
11    abuse a child.  Thankfully, most of those cases involve an
12    undercover officer at the other end.
13         THE COURT:  It's a sting.
14         MR. REDBORD:  We have cases like this one, at
15    least in part, where an individual is distributing child
16    pornography.  And then we have those cases where, and they
17    are relatively unique, where an individual is actually
18    sexually abused --
19         THE COURT:  I would say they're rare.
20         MR. REDBORD:  -- a child.
21         THE COURT:  Is that a mischaracterization to say
22    they're rare, Mr. Redbord?
23         MR. REDBORD:  The only reason I don't go that far
24    is because we do have a lot of those cases in our office in
25    which people are sexually abusing children.  Many of those
```

7

1    cases end up in Superior Court because it's a completely

2    state crime.

3            THE COURT:  I see.

4            MR. REDBORD:  And then we also have cases,

5    regrettably, where we ultimately send the case out to a

6    different jurisdiction where the actual sexual abuse

7    occurred.

8            We're a unique jurisdiction in that, thankfully,

9    the sexual abuse itself is often taking place other places,

10   and we have an excellent undercover officer who discovers

11   it --

12           THE COURT:  Oh, I know.

13           MR. REDBORD:  -- and then sends that lead out.

14           And the reason I don't want to agree completely

15   with Your Honor is that I don't want to sort of --

16           THE COURT:  I'm just talking about in this

17   courthouse.

18           MR. REDBORD:  Sure.

19           THE COURT:  I'm talking about cases in this

20   courthouse.

21           You know, the Court of Appeals seem to have some

22   question in their mind about whether this was like a

23   run-of-the-day, normal case in this courthouse, because

24   that's all they review is this courthouse.

25           MR. REDBORD:  There's no question that the conduct

8

1    in this case is egregious, and that was the position that

2    the government has taken all along, as you know from the

3    sentencing memorandum.

4            THE COURT:  There's also something else that's

5    unusual about this case, in my experience.  This is a case

6    where there was a global settlement.  This is a defendant

7    who was not only culpable in this District for what he did

8    in this District, but he was culpable in the Eastern

9    District of Virginia for potential criminal offenses there,

10   and in a county in Virginia, where he sexually abused

11   children, his grandchildren and child, in Fauquier County,

12   right?

13           MR. REDBORD:  That's correct, yes.

14           THE COURT:  So by virtue of his plea in this

15   jurisdiction, he was able to avoid prosecution and

16   punishment in two other districts.

17           MR. REDBORD:  That's correct, yes.

18           THE COURT:  That's, in my experience -- now,

19   again, it's only 14 years, but it's still a fair amount of

20   time.  That's not a common occurrence either, at least for

21   me.

22           MR. REDBORD:  And I -- this is the only case where

23   I've ever resolved a state charge in a federal criminal

24   prosecution.

25           I shouldn't say that.  From a non- -- outside of

9

```
 1   the District of Columbia.
 2            THE COURT:  Right.
 3            MR. REDBORD:  Not Superior Court.
 4            THE COURT:  Pretty unusual.
 5            Yeah.  Well, this is an unusual jurisdiction from
 6   a prosecution point of view, because it's the only
 7   jurisdiction in America where the prosecutors are both the
 8   local prosecutor and the federal prosecutors, right?
 9            MR. REDBORD:  Correct.
10            THE COURT:  I mean, that's very unusual.
11            Well, it's unique to D.C. so...
12            All right, Mr. Redbord.
13            MR. REDBORD:  Thank you, Your Honor.
14            THE COURT:  Thank you.
15            Ms. Kittay.
16            MS. KITTAY:  Good afternoon, Judge.
17            THE COURT:  Welcome.
18            MS. KITTAY:  Thank you.
19            Judge, we've had these conversations for many,
20   many years, and there's many things you and I have agreed
21   upon, there are certain things we don't agree about:  Where
22   to set the thermostat, for one thing.
23            But certainly, we have never agreed about the
24   Sentencing Guidelines.  I have always known as I appear in
25   your courtroom that you don't like them, you don't agree
```

10

```
 1   with them, and you're not in the --

 2             THE COURT:  This has nothing to do with that.

 3             MS. KITTAY:  But I think it does.

 4             THE COURT:  This has nothing to do with the

 5   guidelines.

 6             In fact, I would go so far as to say I don't know

 7   any Federal District Judge who likes them.

 8             MS. KITTAY:  Well, but see, but I come from --

 9             THE COURT:  That's irrelevant.  We're duty-bound

10   to apply them.

11             MS. KITTAY:  I understand that.

12             THE COURT:  Duty-bound.

13             MS. KITTAY:  But see -- and we're -- as you may

14   remember I come from working groups at the Justice

15   Department that were aimed at trying to fashion guidelines

16   with judges who sat on the Sentencing Commission and

17   approved them and implemented them, way back to the late

18   '80s and the early '90s.  And I think we worked hard and we

19   were proud of the notion that we could account for every

20   circumstance, every type of defendant, every type of flavor

21   of every type of crime.

22             THE COURT:  Well, keep in mind, Ms. Kittay, that

23   I'm from the generation of federal judges who came on to the

24   federal court when the guidelines were mandatory; and so,

25   therefore, unlike the new generation, I mean, we have nine
```

11

```
 1  new appointees to our court, they didn't serve in this role
 2  when the guidelines were mandatory, and because they didn't,
 3  they don't know the pain of sentencing a person to a
 4  sentence that's unjust because of mandatory guidelines.
 5          They're advisory now.  So the only time they get
 6  that kind of pain as a federal judge is when there's a
 7  mandatory minimum and they have no choice.  And it's usually
 8  because the government chose, which is its prerogative, to
 9  charge the person with an offense that carries with it a
10  mandatory minimum.
11          So there are a newer generation of federal judges,
12  they don't know what that experience was like to have
13  sentencing guidelines that were mandatory.
14          MS. KITTAY:  But I raise it, Judge, because the
15  argument in the Court of Appeals was centered around the --
16  what the guidelines had already addressed in fashioning a
17  sentence for Mr. Brown and what they hadn't adequately
18  addressed and whether they hadn't adequately addressed
19  everything, whether what Your Honor saw as inadequate for a
20  guidelines sentence was something that hadn't already been
21  contemplated by the guidelines sentence.
22          THE COURT:  You certainly aren't arguing that this
23  Court's hands are tied in that regard.
24          MS. KITTAY:  I'm not saying that.
25          THE COURT:  The law is crystal clear on this
```

12

```
 1   point, Ms. Kittay, crystal clear:  The mere fact that an
 2   enhancement has been given of the kind that you're alluding
 3   to does not preclude the Court from taking into
 4   consideration, for the purposes of a variance upward, other
 5   factors relating to the basis for that variance, I mean, for
 6   the basis of that enhancement.
 7           MS. KITTAY:  But they have to be justifications
 8   for going beyond the guidelines that are sensible and just.
 9           THE COURT:  And I think the word is "reasonable."
10   I think "reasonable" is the operative word, not "sensible"
11   or "just."  It's reasonable.  Based on reason.
12           MS. KITTAY:  But the test --
13           THE COURT:  Unless you can show me a D.C. Circuit
14   case that says sensible and just.  Do you have such a case?
15           MS. KITTAY:  No, sir.
16           THE COURT:  I've never seen such a case.  You know
17   why?  Because it doesn't exist.
18           MS. KITTAY:  But, Judge.
19           THE COURT:  Doesn't exist.
20           MS. KITTAY:  But what I'm saying is the test is
21   not whether the defendant's conduct is unusual for this
22   jurisdiction, the test is whether the defendant's conduct is
23   unusual for all jurisdictions.
24           THE COURT:  Oh, I'm supposed to know what goes on
25   in every jurisdiction in America?  You're not arguing that,
```

13

1   Ms. Kittay?  You're not seriously arguing that I have to

2   know what goes on in other districts?

3         MS. KITTAY:  Absolutely not.  Of course not,

4   Judge.  You know me better than that.

5         What I'm saying is that what the guidelines have

6   always endeavored to take into account so that there is some

7   uniformity --

8         I've provided -- I assume, I guess, for the

9   record, that the Court has reviewed the second sentencing

10  memorandum.  I've provided some cases that do show cases in

11  other jurisdictions --

12        THE COURT:  I have.

13        MS. KITTAY:  -- that include young, prepubescent

14  children; that include a daughter and a granddaughter and

15  show sentences that stayed within the guidelines.

16        The test is not whether it is unusual for the

17  District of Columbia.

18        And I understand.

19        THE COURT:  Nobody said that's the test.

20        MS. KITTAY:  Well, I understand.

21        THE COURT:  I didn't say that was the test.

22        In fact, let me be very clear.  That is not the

23  test as to whether or not something's egregious.  There,

24  I've said it.  Black and white, unequivocal terms.

25        I'm just making a point, for the benefit of our

14

1    brethren in the Court of Appeals who never sentenced

2    anybody, this is not a normal case.  This is not an everyday

3    case.  This is not a run-of-the-mill case.  Indeed, you, as

4    a former federal prosecutor, know that's true.

5              MS. KITTAY:  I actually respectfully disagree with

6    that position.

7              THE COURT:  You disagree.  Okay.  Well, then your

8    disagreement is inconsistent with our Probation Office and

9    Mr. Redbord's comments to the Court today.

10             MS. KITTAY:  I didn't understand Mr. Redbord to

11   say it was rare.  He said he took exception.  He wouldn't go

12   so far as to say that it was rare.

13             THE COURT:  Well, because, he explained, because

14   of the Superior Court cases they have.

15             MS. KITTAY:  But that's true in every

16   jurisdiction.

17             THE COURT:  I'm saying it's rare in this

18   courthouse, the federal courthouse, Ms. Kittay.

19             MS. KITTAY:  But sexual abuse of a child is not a

20   federal offense, which is why it is always handled in a

21   state court or, in our case, in the Superior Court, and not

22   brought as a companion matter, as it wasn't brought here

23   into the District of Columbia.

24             THE COURT:  This was a global settlement?

25             MS. KITTAY:  And as -- I was a federal prosecutor

15

```
 1   for nearly 30 years.  We did global settlements everywhere,

 2   all over the country all the time, and they included state

 3   charges and federal charges.  That's also not unusual.

 4          My job is difficult here, Judge, because I do wish

 5   to persuade you that this is, for what it is --

 6          THE COURT:  Start persuading.

 7          MS. KITTAY:  -- a case within the homeland of such

 8   conduct.

 9          THE COURT:  Please.

10          MS. KITTAY:  Judge --

11          THE COURT:  Please.

12          MS. KITTAY:  -- if the conduct were not abhorrent

13   and outrageous, we wouldn't be here.  We're sentencing him

14   because his conduct was abhorrent and outrageous, but not to

15   the -- which is why I provided you with the case law that

16   shows seriously more egregious cases than this, cases of

17   trust within a church involving hundreds of children, much

18   more egregious cases than this.

19          I understand how difficult my job is to persuade

20   you that there is such a thing as an ordinary child abuse

21   case, because child abuse is abhorrent.  So to say it's

22   ordinary seems not logical.  But...

23          THE COURT:  The issue is an issue of whether or

24   not a variance upward is appropriate in this case, it's as

25   simple as that; and whether my variance upward is a
```

16

1    reasonable decision on my part.

2           And I might add, the D.C. Circuit has made it very

3    clear, crystal clear in many of its cases, that the

4    justification of deterrence alone, deterrence alone is a

5    sufficient basis for an upward variance.

6           Do you know that?  Are you familiar with that

7    opinion?  Happens to be one of my cases, that's why I'm

8    particularly familiar.  *U.S.A. v. Saani*.  Do you know that

9    case?

10          MS. KITTAY:  No, sir.

11          THE COURT:  Thank you.

12          MS. KITTAY:  I understand that this conduct does

13   provoke a strong response.  But what I'm saying is the

14   guidelines did address conduct that is abhorrent.

15          THE COURT:  That is a matter of judgment,

16   Ms. Kittay; and unfortunately for you in this situation,

17   it's my judgment that has to be executed and justified.

18          So tell me why it's not reasonable for me to vary

19   upwards for the purposes of just punishment, deterrence, and

20   protecting the public.  Those are three of the 3553 factors,

21   are they not?

22          MS. KITTAY:  Yes, sir.

23          THE COURT:  Okay.  So tell me why it's not

24   reasonable for this Court to vary upwards in order to deter

25   this kind of conduct in the future, protect the public, and

17

 1   as a just punishment for his conduct.  That's where you

 2   should focus your argument.

 3           MS. KITTAY:  My argument is, Judge, that the

 4   guidelines themselves do adequately address all of those

 5   factors.

 6           His sentence was nearly doubled by the enhancement

 7   for the conduct with the younger children.  They were all

 8   acts that the guidelines enhanced his sentence for.

 9           I have provided the Court with cases -- and I

10   understand my predecessor confined herself to cases within

11   the District of Columbia where sentences were within the

12   guidelines and considered reasonable.

13           I've endeavored to provide the Court with cases

14   from throughout the country where the Court of Appeals have

15   said that these are cases within the homeland of this

16   conduct, not beyond; not such that you should extend beyond

17   the guideline-suggested range for a sentence with not just

18   the conduct but the add-ons that exist here.

19           And what I'm saying is, it is not -- this is not,

20   unfortunately, unusual conduct in this country, and it is

21   not unusual that it be settled by a global settlement.

22   And --

23           THE COURT:  You just -- Ms. Kittay, that's a silly

24   argument.  You just heard Mr. Redbord say this is the first

25   time in three years he's ever seen a global settlement of

18

```
 1    this kind --

 2            MS. KITTAY:  I respect Mr. Redbord.

 3            THE COURT:  -- of a case of this kind.

 4            When did you leave the U.S. Attorney's Office?

 5            MS. KITTAY:  On the last day of 2007.

 6            THE COURT:  Okay.

 7            MS. KITTAY:  And I was also in the unit handling

 8    these cases.

 9            THE COURT:  Okay.  2007 is eight-years-plus ago,

10    okay?

11            Now, did you handle these kind of cases?

12            MS. KITTAY:  Yes, I did.

13            THE COURT:  Okay.  And how many of those

14    do you recall having a global settlement for jurisdiction in

15    another state?  Do you have a recollection of any?

16            MS. KITTAY:  Not that --

17            THE COURT:  Because I've been doing this for

18    14 years, and this is the first time I've seen it in this

19    court, 14 years.

20            You've been away from that for eight-plus years.

21            MS. KITTAY:  I have not been a prosecutor, but

22    I wouldn't say I've been away from it for eight-plus years.

23            THE COURT:  Have you been representing people in

24    these kind of cases since then other than in this case?

25            Have you had any other representations other than
```

19

1  this case in those eight years?

2         MS. KITTAY:  In a child pornography case?  No,

3  they are handled by the Federal Defender.

4         THE COURT:  In this courthouse.

5         MS. KITTAY:  The Federal Defender handles them in

6  this courthouse.  They asked me to handle this case on

7  appeal.

8         THE COURT:  Now, wait a minute.  Hold on now.

9  People have retained counsel.

10        MS. KITTAY:  I --

11        THE COURT:  I've had child pornography cases with

12  retained counsel.

13        MS. KITTAY:  I don't do retained counsel.  I am on

14  the panel of the Court of Appeals only.  I am on the

15  Criminal Justice Act panel of the Court of Appeals.

16        And whether I handle them or not really is --

17  you know, it's really not the point whether I handle them or

18  not.

19        THE COURT:  I'm just -- the reason why I'm asking

20  you is to see whether you have any experiential basis to

21  give a comparison.  And the answer is obviously no, you do

22  not -- you have not, in the eight years you've been out of

23  the U.S. Attorney's Office, handled these kind of cases in

24  your private capacity.  That's what you just told me.

25        MS. KITTAY:  For what that's worth, Judge.

20

1    I mean, really.

2        THE COURT:  So tell me why it's not reasonable to

3    vary upwards in this case in order to protect the community,

4    deter others, and just punishment.  Go ahead.

5        MS. KITTAY:  This defendant, in settling his case

6    globally, did resolve all matters with his family members

7    and relieve those children of the trauma of having to

8    participate in further prosecution of him.  That was

9    something, I'm sure, that helped them, not hurt them.

10   He received, under the guidelines, double the number of

11   recommended months of incarceration based on that.

12       He also, since he was last here before Your Honor,

13   has taken steps to improve himself.  He didn't have any

14   reason to think he would be back here trying to impress

15   Your Honor with his acts of self-improvement, but I have --

16   if the Court's interested, I have testimonials and

17   certificates from all of the courses he's been taking while

18   a guest of the Bureau of Prisons.

19       He has been continuously employed.  He has done

20   very well.

21       He asked me to convey to the Court his wish that

22   if at all possible, he could spend some period of home

23   confinement.  His parents are elderly.  His father is ill.

24       His mother is here today and two of his siblings.

25   His father was not well enough to come to the District to be

1   here today.

2           He is not either the healthiest person on earth.

3   He has pulmonary issues that, while he's getting good care,

4   certainly, incarceration is not a healthy circumstance.

5           There is no issue in that regard of deterring him

6   from further conduct.  He --

7           THE COURT:  Why do you say that?

8           MS. KITTAY:  Because he's older.  He's ill.

9           THE COURT:  How old is he?

10          MS. KITTAY:  He's in his 50s.

11          THE COURT:  Right.

12          MS. KITTAY:  Not younger than I.

13          THE COURT:  A lot younger than the Court.

14          MS. KITTAY:  But he's --

15          THE COURT:  And if his sentence -- if he completes

16  his sentence which the Court gave him, which was 12 years,

17  that would be nine years from now, would it not?

18          Roughly, right?  I mean he served three years

19  already, hasn't he, roughly?

20          MS. KITTAY:  (Nodding head.)

21          THE COURT:  So he'd be out of prison in his early

22  60s.  He'll be under supervision thereafter for 20 years.

23  He'll be a registered sex offender.

24          And, of course, I'm sure you've already educated

25  him as to this Court's attitude about violations while he's

22

1    under supervision.

2            So I'll be keeping a close eye on him, assuming

3    I'm still alive.

4            But as long as I'm alive for --

5            MS. KITTAY:  Well, then, there's your deterrence,

6    Judge.

7            THE COURT:  Once he gets out.

8            MS. KITTAY:  I understood coming in today that

9    it would be a difficult task for me to try and persuade

10   Your Honor to do something other than you had done before.

11   I understand that, my client understands that, his family

12   understands that.

13           All I'm saying, Judge, is that the

14   Court of Appeals agreed that the justifications the Court

15   gave for going beyond the Sentencing Guidelines were

16   circumstances that had already been addressed by the

17   guidelines themselves, and the mere combination of those

18   circumstances was not sufficient either.  And --

19           THE COURT:  They were concerned about not having

20   enough detail --

21           MS. KITTAY:  And they did have --

22           THE COURT:  -- right?

23           MS. KITTAY:  The final analysis, right?

24           And they did have the transcript available.

25   They did not merely look at the four corners of the

23

```
 1   statement of reasons.
 2            THE COURT:  I hope not.
 3            MS. KITTAY:  No.
 4            So they had everything available that the Court
 5   put out into the universe for them to consider and --
 6            THE COURT:  Uh-huh.
 7            I wonder if they'd considered the possibility --
 8   they may have, they may not, their opinion does not reflect
 9   it -- that the Court may have been less specific at the time
10   of sentencing to spare his family in open court the detail
11   of his conduct being stated in open court.  I wonder if they
12   considered that.  I'm just musing here.
13            You know, sometimes Trial Judges do that, that
14   might shock you to learn.  They spare the family of the
15   defendant going into specific detail, the family, especially
16   when it's not just the family sitting in the audience, there
17   may be friends, maybe others, they spare them retrenching in
18   great detail the conduct.
19            I wonder if they thought about that.  Maybe they
20   didn't.  Well, guess what?  I don't have that luxury today.
21   I will be more specific, as painful as it might be, not only
22   to me.
23            MS. KITTAY:  Well, Judge, I've been appearing
24   before you for many years, probably among the first lawyers
25   that appeared before you 14 years ago, and I never
```

24

1    considered you to be a cruel person, and I don't think --

2            THE COURT:  I hope not.

3            MS. KITTAY:  -- and I don't think you'll do

4    anything to change that opinion today.

5            But I am here to represent Mr. Brown and to say

6    that we believe that all of the Court's concerns are met in

7    a sentence at the top of the guidelines range.

8            He would happily -- seriously, I mean that word

9    "happily" -- go back to serve the rest of that sentence

10   without further appeal, if the Court could see fit to

11   deliver some small measure of mercy based on the fact that

12   we are here, we are here again, we don't wish to be here yet

13   another two years from now again.  We just believe that a

14   sentence at the high end of the Guidelines Range could be

15   the end of this.  And that is --

16           THE COURT:  You know, sometimes, judges forget --

17   heck, there have been times I've forgotten -- that in the

18   final analysis, Congress is the one who sets the parameter

19   on punishment, Congress.

20           MS. KITTAY:  And let me say that brings me back --

21           THE COURT:  I'm not finished.  I'm not finished.

22           MS. KITTAY:  All right.

23           THE COURT:  Congress set the parameter in this

24   case at 20 years maximum, did it not?

25           MS. KITTAY:  Congress also passed the Sentencing

25

1  Guidelines, Judge.

2         THE COURT:  I understand that, but I'm just asking

3  you a very simple question.

4         Congress set the statutory range for this conduct

5  at 20 years.  That was Congress's judgment, not mine, not my

6  branch, not your branch, Congress.  They set it at 20 years.

7         And when a judge sentences a person, he or she

8  must be mindful of not only what the Guidelines Range is,

9  although it's advisory, but what the statutory range is.

10        In this case, he received a sentence eight years

11 below the statutory maximum, almost at the mid-point of the

12 statutory maximum, not quite, but almost at the mid-point.

13 Remember that.

14        MS. KITTAY:  I remember that, Judge.

15        But, you know, there is -- and you, I know, will

16 go to great pains to disagree with me on this, but there is

17 nothing about this case that suggests that it is a statutory

18 maximum case.

19        THE COURT:  I didn't say it was.

20        MS. KITTAY:  Right.

21        THE COURT:  I believe my sentence was eight years

22 below it.

23        MS. KITTAY:  Right.

24        THE COURT:  I didn't say it was.

25        MS. KITTAY:  But Congress also passed the

26

```
 1   guidelines, and judges who formed the Commission made the
 2   recommendation.
 3         The Justice Department, through working committees
 4   such as the ones I worked on, made recommendations to judges
 5   who are on the Commission, who then made recommendations to
 6   the Congress about what appropriate guidelines would be for
 7   the full range of conduct that falls within this statute,
 8   which is a broad statute.
 9         THE COURT:  So Congress also blessed the
10   application note 1 for 2G2.2(b)(5), which is the 5-point
11   enhancement that says the following: "An upward departure
12   may be warranted if the defendant received an enhancement
13   under section -- Subsection (b)(5), but that enhancement
14   does not adequately reflect the seriousness of the sexual
15   abuse or exploitation involved."
16         Did it not?  Congress blessed that one too.
17         MS. KITTAY:  Yes, Judge.
18         But honestly, Judge.  I understand that the
19   behavior is abhorrent, but there aren't cases that describe
20   abhorrent behavior so far and beyond what's present here.
21         We start from a baseline of behavior that's
22   abhorrent.  I'm not defending it, but what I'm saying,
23   Judge, is there is a certain level of garbage in the pail
24   that is ordinary garbage in the pail.  And then there's that
25   which is being referred to there that is so beastly and
```

27

1    disgusting, it doesn't even compare to the conduct we're

2    discussing here.

3          We start from a baseline of something that's

4    abhorrent.  If it weren't, we wouldn't be here.  But there's

5    conduct that's so much worse than that that's contemplated

6    in that sentence -- and there's -- there are offenders whose

7    conduct is over such a period of time involving so many

8    victims and having persisted beyond prior convictions that's

9    not even contemplated by the sentence that is reflected in

10   the guidelines.

11         That's not true here.  This is a first offender.

12   This is a limited amount of conduct, bad conduct, but a

13   limited amount.  This is not what's contemplated in that

14   departure.

15         We can --

16         THE COURT:  You wouldn't be here if I had given

17   him the high end of the Guidelines Range, would you?

18         MS. KITTAY:  No.

19         THE COURT:  Exactly.

20         MS. KITTAY:  There would have never been an

21   appeal.

22         THE COURT:  So this whole fight is over 20, was it

23   21 months?

24         MS. KITTAY:  Yes.

25         THE COURT:  21 months.  Less than two years.

28

```
1              MS. KITTAY:  I think it's 23 months.

2              THE COURT:  Less than two years.

3              MS. KITTAY:  Yes.

4              THE COURT:  That's what this is all about.

5         This is what this three-year odyssey is all about.

6              MS. KITTAY:  Correct.

7              THE COURT:  And about today's -- the need for

8    today's resentencing.

9              MS. KITTAY:  Judge --

10             THE COURT:  You're fighting over the two years.

11   Okay, fine.  Just tell me why it's not reasonable.

12             MS. KITTAY:  You know, when -- a sentence at the

13   high end of the guidelines, not only would we not be here,

14   I wouldn't have work to do.  There wouldn't -- an appeal

15   would not lie if there were a Guidelines Range.

16             THE COURT:  What, because he gave up his appellate

17   rights.  He gave up his appellate rights.

18             MS. KITTAY:  He pleaded guilty.  He had limited

19   appellate rights to begin with as a guilty plea.

20             THE COURT:  Well, hold on now.  He gave up his

21   appellate rights, did he not?

22             And, by the way, yes --

23             MS. KITTAY:  I don't know if that's true.

24             THE COURT:  -- it's a standard operating procedure

25   in these cases.
```

29

```
 1              MS. KITTAY:  No.  Actually, I remember the
 2   U.S. Attorney's Office's -- well, maybe only in front of
 3   certain judges of this courthouse, but they don't ask the
 4   defendants -- at least in my day, they didn't ask defendants
 5   to give up appellate rights.
 6              THE COURT:  I got the sentencing -- I got the
 7   plea agreement right here.  We can look.
 8              Waiver of rights.
 9              MS. KITTAY:  I know --
10              THE COURT:  Let's take a look here.
11              MS. KITTAY:  -- at least five judges I was never
12   allowed to put a waiver of appellate rights into a
13   plea agreement.
14              THE COURT:  Yeah.  You must have been in front of
15   Emmet.
16              MS. KITTAY:  It was actually in front of
17   Judge Friedman, Kollar-Kotelly, Judge Kessler.
18              THE COURT:  Uh-huh.
19              MS. KITTAY:  But, Judge, you're absolutely correct
20   that if the guidelines -- if the sentence had been at the
21   very tippy top of the Guidelines Range, there would have
22   been no appeal.
23              And it weren't a fall that way today, there would
24   also be no appeal, no further appeal.  It's just as simple
25   as that.  That is what we're fighting over.
```

1          And at the end of this man's life and at the end

2     his parents' life, that will make a difference.

3          THE COURT:  It's paragraph 17 of the

4     plea agreement.  "Knowing that your client waives the right

5     to appeal his sentence to this further matter in which it

6     was determined, pursuant to 18 U.S. Code Section 3742,

7     except to the extent that, A, the Court sentences your

8     client to a period of imprisonment longer than the statutory

9     maximum."  Obviously, that didn't apply here.  "Or, B, the

10    Court departs upward from the applicable sentencing

11    Guidelines Range, pursuant to the provision of U.S.

12    Sentencing Guidelines Section 5K2, or based on the

13    consideration of the sentencing factors set forth in 3553.

14          MS. KITTAY:  That gets us back to where we are.

15          THE COURT:  So that's why there was --

16          MS. KITTAY:  That's why there's an appeal here.

17    Right.

18          THE COURT:  That's why we're here.

19          You might also, of course, know that on the --

20    that's not withstanding the fact that the defendant was

21    prepared to plead guilty to a Guidelines Range of 151 months

22    to 188 months when it was brought to the Court's attention

23    on the eve of the plea agreement being executed that the

24    government didn't have certain facts that it needed to prove

25    the enhancement to bring it up to 151 to 188; that the Court

31

```
 1    said, well, then, you need to redo the plea agreement
 2    accordingly.
 3              MS. KITTAY:  It's a nuance to that
 4    characterization I could quarrel with, but I won't.
 5              THE COURT:  Well, there's no question that this
 6    Court was bought -- that was brought to this Court's
 7    attention and that the Court affirmatively then said, well,
 8    then go ahead and redo it and we'll recalculate the
 9    guidelines.
10              MS. KITTAY:  I don't think it's because the
11    government didn't have what it needed to prove that
12    enhancement.  I think it's because the conduct didn't fit
13    that enhancement.
14              We all agreed what the conduct was and it didn't
15    fit the legal definition of that enhancement.
16              THE COURT:  I don't want to quibble.
17              MS. KITTAY:  That's why I say it's a nuance.
18    I won't quarrel with you.
19              THE COURT:  I don't want to quarrel on that one.
20              MS. KITTAY:  Judge, as I have argued in the
21    written pleadings, we are simply asking now for a
22    Guidelines Range sentence.
23              And I don't know if the defendant has changed his
24    mind, but he was going to decline to address the Court, and
25    he asked me simply to ask this Court if the Court might be
```

WilliamPZaremba@gmail.com

160

32

```
 1   willing to allow him to substitute some portion of his
 2   sentence for home confinement so that he could be with his
 3   parents at the end of their life, and he would be confined
 4   in a situation where he would have no opportunity to
 5   re-offend.
 6              THE COURT:  Okay.
 7              Does he wish to address the Court or not?
 8   Otherwise, he can come up and be sentenced.
 9              MS. KITTAY:  No.  He says he's fine, Your Honor.
10              THE COURT:  Well, he can come up.
11              Well, Mr. Brown, the Court of Appeals wasn't,
12   apparently, satisfied with the level of detail of this
13   Court's prior sentencing hearing with you for its thinking
14   with regard to an upward variance in your particular case.
15              Having rereviewed all the material, having read
16   the supplemental pleading by Ms. Kittay, I have no reason
17   whatever to change my sentence whatsoever in this case, nor
18   will I.
19              But in order to satisfy the Court of Appeals,
20   because undoubtedly, there'll probably be another appeal of
21   this, the Court will state, with a greater specificity, the
22   reasons, which are multitude, why this case is more harmful
23   and egregious than the typical case in this Court's
24   judgment.
25              Indeed, the D.C. Circuit itself has acknowledged
```

```
1   it's not error for a District Court to enter sentencing
2   variances based on factors already taken into account by the
3   Advisory Committee and by the advisory guidelines.  That's
4   U.S. v. Ransom.
5            And as I already pointed out in 2G2.2(b)(5), which
6   provided the 5-point enhancement that you had in your
7   sentencing calculation with regard to a pattern of activity
8   involving the sexual abuse or exploitation of a minor, the
9   application note itself points out, in relevant part, that
10  an upward departure may be warranted if the defendant
11  received an enhancement under Subsection (b)(5).  But that
12  enhancement does not adequately reflect the seriousness of
13  the sexual abuse or exploitation involved.  That, indeed, is
14  the judgment of this Court; that that enhancement does not
15  adequately reflect the seriousness of the sexual abuse or
16  exploitation involved.
17           Indeed, as I will state now or state in fuller
18  detail, in this Court's judgment, applying the 3553 factors,
19  it is necessary in order to protect the community, in order
20  to deter others -- not just you, but others too -- but also
21  to mete out a just punishment in this case; that a
22  guidelines -- that a sentence above the guidelines range, in
23  this case, a matter of 20-something months, is an adequate
24  sentence for your conduct.
25           Here, the pattern of activity of prior sexual
```

34

1  abuse is, by any standard, egregious, and that pattern and

2  what it reveals about you is not at all fully accounted for

3  by the enhancement, in my opinion.

4          As detailed in the Statement of Offense, during

5  your online conversation that provides the basis for the

6  charged offense, you went into great detail in the chat room

7  where you were seeking to find a child to sexually abuse.

8  You stated -- you stated specifically, "I used to enjoy my

9  granddaughter, but she was taken from me a year ago.  I only

10  got her to do oral on me.  Her grandma was always too close

11  to do any more."

12          He added that he "started training her at two and

13  a half years old.  At three and a half, she could

14  deep-throat me.  She had no gag reflex.  I used her mouth

15  until 5 when she was taken from me."

16          He bragged about his three-and-a-half-year-old

17  daughter's lack -- granddaughter's lack of gag reflex while

18  he forced her to perform oral sex on him repeatedly.

19  "My granddaughter could deep-throat me.  She had no gag

20  reflex."  As I said before, "Every time I could, I would

21  pull it out, and she would just run up and take it in her

22  little mouth."

23          Not only do these horrific abuses occur multiple

24  times over many years, but you acknowledge that the abuses

25  would have been more serious and more frequent but for

35

1    outside forces.

2            As stated in the Statement of Offense, when asked

3    if you ever ejaculated with your granddaughter, your

4    response: "Not in her.  Her grandmother was always in the

5    next room."

6            Given the acts that you perpetrated with your

7    granddaughter and her grandmother in the next room, it's

8    horrific to think what would have occurred had she not been

9    there.

10            In addition, you appear to have abused your

11    granddaughter until the age of five.  Again, it's horrifying

12    to think, to me, what more could have occurred if there

13    weren't other reasons to restrict you.

14            The Statement of Offense also provides that the

15    government learned of allegations from your daughter that

16    you had sexually abused her when she was three years old.

17            You concede that the government could prove the

18    abuse set forth by clear and convincing evidence.

19            And while I do not know the extent of the

20    frequency and the seriousness of the abuse, you conceded

21    additional abuse of your own daughter at such a young age.

22    Your concession of additional abuse of your own daughter at

23    such a young age makes this pattern of activity even more

24    troubling.

25            The Statement of Offense also demonstrates -- and

WilliamPZaremba@gmail.com

1    I have no reason to question it, you gave it under oath --

2    that during the conversation, not only did you send three

3    images of child pornography to the undercover agent, but

4    inquired about and discussed logistics of engaging in sexual

5    acts with the undercover's purported 12-year-old child, who

6    the undercover purported to be sexually active with.

7         Indeed, you stated that occasion that you were

8    looking for a child three to eight years old.  You said,

9    "I love them flat and smooth."  "I'm looking for a new

10   playmate."  "Is she petite or a big girl?"

11        After being sent a morphed, clothed picture of the

12   purported child, you responded, "Very pretty girl.  Does she

13   like to receive oral or give?"

14        When the undercover stated it had been a fantasy

15   to see the purported child perform oral sex on someone else,

16   you responded, "Like I said, I'm only an hour away."

17        The Undercover Brown and you, therefore, discussed

18   the possibility of meeting on that particular date, Friday,

19   March 9th, 2012, for the purpose of engaging in sexual acts

20   with the purported 12-year-old girl.

21        The young ages of these victims is shocking, and

22   frequent abuse of them, the abuse over such a period of

23   time, this betrayal and abuse of trust of someone who was

24   supposed to be protecting his own daughters and

25   granddaughters, and that these abuses have been more

37

1    serious -- would have been more serious and more frequent

2    but for intervening events makes this, in my judgment, a

3    pattern of activity particularly egregious and weighs

4    heavily in favor of the 3553 factors for an upward variance

5    that reflects the seriousness of the offense, deters others

6    who may engage in such conduct, and protects the public from

7    further crimes of this kind.

8            The Court of Appeals stated at one point in its

9    opinion that the comment that the Court had made on the

10   earlier sentencing that the combination of behaviors to

11   which Brown pled guilty was not conduct we normally get

12   around here does not explain why Brown's conduct was more

13   egregious or harmful.

14           I think that which I've just outlined certainly

15   covers that particular criticism by the Court of Appeals.

16           As to its criticism that there weren't specific

17   findings with respect to Brown's victims that the Court

18   might have used to explain why Brown's behavior was not

19   fully accounted for by the recommended Guidelines Range,

20   I think going through those points certainly should cover

21   that for the purposes of a follow-up appeal, if there is

22   one.

23           Let's see here.

24           The Court of Appeals also raised a concern about

25   the lack of discussion with regard to the declination of

38

 1  prosecution of Virginia or the change in the

 2  Guidelines Range within the framework of 3553(a) factors.

 3  Those considerations were not in the written statement and

 4  only referenced at the sentencing in the context of

 5  explaining to Brown what a good deal he was getting.

 6       As I explained in the Statement of Offense, during

 7  the course of the investigation in this case -- I should

 8  say, as it's explained in the Statement of Offense, during

 9  the investigation of this case, members of the FBI Child

10  Exploitation Task Force were able to confirm, through the

11  Fauquier Sheriff's Office, that you, in an undercover

12  investigation for sexual abuse charge in that county

13  involving your grandchildren as of the date of the Statement

14  of Offense, ages seven and four, that you were the subject

15  of that investigation.

16       In a statement to Fauquier authorities, one of

17  your grandchildren disclosed that you made her sit on your

18  lap on multiple occasions while you moved your body back and

19  forth, side to side, effectively rubbing your clothed penis

20  on her buttocks on many occasions, and you rubbed your hands

21  on her unclothed buttocks on one occasion.

22       Fauquier authorities also learned, on at least one

23  occasion, a witness walked in when you were with one of your

24  granddaughters, age three, and she was straddling you.

25  Specifically an adult eyewitnesses stated that she observed

39

1    you laying in bed with your granddaughter sitting in your

2    lap straddling you.  They were apparently face to face at

3    the time.  She was wearing a dress and was leaning on your

4    stomach.

5            In the course of its investigation, the government

6    also learned of allegations of sexual abuse involving your

7    biological daughter.  Your daughter alleged that this would

8    happen when she was approximately three years old.

9            As detailed in the presentence report, in exchange

10   for the defendant's guilty plea, the U.S. Attorney's Office

11   for the Eastern District of Virginia agreed not to prosecute

12   you for the offenses of possession and/or receipt of child

13   pornography.  While it does not preclude them from

14   prosecuting you for the offense of production of child

15   pornography, should evidence of that be uncovered.

16           The commonwealth's attorney for Fauquier County

17   also agreed not to prosecute you for the offenses of

18   possession or receipt of child pornography in connection

19   with the materials found during the search of your seized

20   computer, and agreed not to prosecute you based on

21   allegations of child sex abuse by your daughter or

22   granddaughters.

23           In essence, this Court sits in the position of

24   those courts, effectively speaking, and needs to fashion a

25   sentence, in this Court's judgment, that it justly punishes

40

 1   you for your conduct over a sustained period of time, deters

 2   you and others from engaging in this kind of conduct in the

 3   future, and protects the community from predatory,

 4   prepubescent child molestation.  In the Court's judgment,

 5   I have fashioned such a sentence.

 6          And so therefore, in the opinion of the Court,

 7   it's the judgment of the Court, James Wendell Brown must be

 8   committed to the custody of the Bureau of Prisons for a term

 9   of 144 months.

10          You're further sentenced to serve 240 months of

11   supervised release and pay a $100 special assessment fee.

12          The Court finds you do not have the ability to pay

13   a fine and therefore waives imposition of a fine in this

14   case.

15          The special assessment is due immediately and

16   payable to the Clerk of our Court.

17          Within 30 days of any change of address, you shall

18   notify the Clerk of the Court till such time as the

19   financial obligation is paid in full.

20          Within 72 hours of release of custody, you shall

21   report in person to the Probation Office in the district to

22   which you are released.

23          While on supervision, you shall not possess a

24   firearm or any other dangerous weapon.

25          You shall not use or possess any illegally

41

1    controlled substance.

2         You shall not commit any other federal, state, or
3    local crime.

4         You shall also abide by the general condition of
5    supervision adopted by U.S. Probation.

6         And, in particular, the following special
7    conditions:

8         DNA sample requirement pursuant to 42 U.S. Code
9    Section 14135a for all felony offenses.

10        Defendant shall submit to the collection and use
11   of DNA identification information while incarcerated in the
12   Bureau of Prisons at the direction of U.S. Probation.

13        Sex offender registration:  You shall comply with
14   the sex offender registration requirement for convicted sex
15   offenders for any stated jurisdiction where you reside, are
16   employed or carry on a vocation or are a student.

17        Contact restriction:  You shall have no direct
18   contact with minors under the age of 18 without the written
19   approval in advance of the U.S. Probation Office.

20        Employment restriction:  You shall not be employed
21   or volunteer in any capacity that may cause you to come in
22   direct contact with children, except under circumstances
23   approved in advance by the supervisor or Probation Officer.

24        Search:  Pursuant to the Adam Walsh Child
25   Protection and Safety Act of 2006, you shall submit to a

42

```
 1   search of your person, property, house, residence, vehicle,
 2   papers, computer, other electronic communications or
 3   data-storage devices or media and effects at any time with
 4   or without a warrant by any law enforcement or
 5   Probation Officer with reasonable suspicion concerning
 6   unlawful conduct or violation of a condition of supervision.
 7          Sex offender treatment assessment:  You shall
 8   participate in a program of sex offender assessment and
 9   treatment as directed by U.S. Probation until such time as
10   you are released from the program.
11          The assessment and treatment may include
12   psychological testing such as polygraph to assist you in
13   planning case monitoring supervision.
14          At the direction of Probation, you shall pay for
15   all or a portion of any treatment program.
16          Psychological testing:  You shall submit -- no,
17   I'm not going to do that.
18          Pursuant to Rule 32(a) of the Federal Rule of
19   Criminal Procedure, you're ordered to forfeit a Toshiba
20   Satellite A655 laptop, SN 9A022382K.
21          Probation shall release the presentence
22   investigation report to all appropriate agencies in order to
23   execute the sentence of this Court.
24          Treatment agencies shall return the presentence
25   report to the Probation Office upon defendant's completion
```

43

1     or termination from treatment.

2           You have a right to appeal the sentence imposed by

3     the Court if the period of imprisonment is longer than the

4     statutory maximum or the sentence departs upward from the

5     applicable sentencing Guidelines Range, which it does in

6     this case.

7           If you choose to appeal, you must file an appeal

8     within 14 days after the Court enters judgment.

9           If you're unable to afford the cost of an appeal,

10    you may request permission from the Court to file an appeal

11    without any cost to you.

12          This is the sentence of the Court.

13          You obviously will get credit completely for all

14    time you have served to date.

15          Ms. Kittay, do you have any questions?

16          MS. KITTAY:  No, Your Honor.

17          But I do wish to preserve two objections.  One,

18    that we do still believe that the conduct was not so

19    egregious as to take it outside the heartland of offenses

20    contemplated by the Guidelines.  And, second, that the

21    5-point enhancement for a pattern of conduct we believe was

22    sufficient to cover the conduct in the state of Virginia,

23    and we just wish to preserve those objections for the

24    record, Your Honor.

25          THE COURT:  That's fine.

44

1          Mr. Redbord, do you have any questions?

2          MR. REDBORD:  No, Your Honor.

3          THE COURT:  Stand in recess.

4          DEPUTY CLERK:  All rise.

5          This Honorable Court will stand in recess until

6   the return of court.

7          (Proceedings concluded at 3:57 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

45

# C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date: August 8, 2016_____    /S/__William P. Zaremba_____

William P. Zaremba, RMR, CRR